# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* TINA HAIGHT | § § § § | |
| v. | § § | CIVIL ACTION NO. 3:16-CV-1975-S |
| RRSA (COMMERCIAL DIVISION), LLC et al. | § § § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses: (1) Defendant Ronald Scott Nichols' ("Nichols") Motion to Dismiss Qui Tam Complaint ("Nichols Motion to Dismiss") [ECF No. 36]; and (2) Defendants RRSA (Commercial Division), LLC; Roofing & Restoration Services of America, LLC; RRSA Commercial Roofing, Inc.; Haight Construction Management Services, Inc.; Turco Construction Inc.; Andrew's Roofing & Restoration, Inc.; Corey S. Sanchez; Jon R. Seymore; and Jennifer N. Seymore's (collectively, "RRSA Defendants") Rule 12(b)(6) Motion to Dismiss Complaint ("RRSA Motion to Dismiss") [ECF No. 37]. Nichols and the RRSA Defendants are referred to collectively as "Defendants."

Relator brings four claims against all Defendants pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*:

- Count I: Violation of 31 U.S.C. § 3729(a)(1)(A) for knowingly submitting or causing to be submitted false or fraudulent claims for set-aside small business subcontracts to the United States Government;

- Count II: Violation of 31 U.S.C. § 3729(a)(1)(B) for knowingly using false records or statements to get false or fraudulent claims paid or approved by the United States Government;

- Count III: Violation of 31 U.S.C. § 3729(a)(1)(C) for conspiracy to violate § 3729(a)(1); and

- Count IV: Violation of 31 U.S.C. § 3729(a)(1)(G) for knowingly avoiding or decreasing an obligation to pay or transmit money to the United States Government.

As a predicate for FCA liability, Relator also alleges that the RRSA Affiliated Defendants violated the Anti-Kickback Act of 1986, 41 U.S.C. § 8701 *et seq.* by paying a bribe. Compl. ¶ 241.[1]

## I. BACKGROUND

Relator Tina Haight claims to be an "original source" of the allegations, which she states are not based on publicly disclosed information. *Id.* ¶ 22. An "original source" is:

> an individual who either (i) prior to public disclosure . . . has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (ii) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action . . . .

31 U.S.C.A. § 3730(e)(4)(B) (Westlaw current through Pub. L. 116-69). The parties do not dispute that Relator is an original source. Relator also states that she provided the Government with information prior to filing the Complaint in accordance with 31 U.S.C. § 3730(b)(2). *Id.* ¶ 22.

Relator brings this *qui tam* action against the following groups: (1) RRSA Affiliated Defendants;[2] (2) RRSA Affiliated Defendants senior management;[3] (3) Prime Contractor

---

[1] Relator also states that she is bringing the Complaint for violation of FCA "state law counterparts." Compl. ¶ 1. Relator, however, does not identify any state law counterparts or assert claims pursuant to state law. Therefore, this Opinion only addresses the claims clearly articulated in the Complaint and addressed in the Motions to Dismiss.

[2] The "RRSA Affiliated Defendants" are identified in the Complaint as: RRSA (Commercial Division), LLC; Roofing & Restoration Services of America, LLC; RRSA Commercial Roofing, Inc.; Haight Construction Management Services, Inc.; Turco Construction, Inc.; and Andrew's Roofing & Restoration, Inc. *Id.* ¶¶ 34-39, 127. Although Relator defines MH Consulting and Construction, Inc. ("MH Consulting") as one of the RRSA Affiliated Defendants, *id.* ¶ 127, Relator did not list MH Consulting in the caption of the Complaint, Relator has not served MH Consulting, and MH Consulting is not listed as a party.

[3] The "RRSA Affiliated Defendants senior management" are identified in the Complaint as: Corey S. Sanchez, Jon R. Seymore, Jennifer N. Seymore, and Ronald Scott Nichols. *Id.* ¶¶ 40-43, 144.

Defendants;[4] and (4) John Does #1-50.[5] Relator alleges that the RRSA Affiliated Defendants violated the FCA by falsely certifying that RRSA (Commercial Division), LLC ("RRSA Commercial") is a small business, conspiring with the Prime Contractor Defendants to obtain small business subcontracts, and paying a kickback. Compl. ¶¶ 4, 237.

According to the Complaint, Roofing and Restoration Services of America, LLC ("RRSA Residential")[6] is a large, national roofing company. *Id.* ¶ 109. In 2010 and 2011, Relator alleges that RRSA Residential generated nearly $80 million in annual sales in the private sector. *Id.* ¶¶ 108, 110. To expand business, Relator claims that the RRSA Affiliated Defendants devised a scheme to obtain subcontracting opportunities that are reserved for small businesses under the Small Business Act ("SBA"). *Id.* ¶ 111. According to Relator, RRSA Residential was not eligible to pursue these opportunities as its annual sales allegedly exceeded the income threshold to qualify as a small business under the relevant industry codes described in the North American Industry Classification System ("NAICS"). *Id.* ¶ 110.[7] Relator asserts that as an alternative way to obtain small business subcontracts, the RRSA Affiliated Defendants (and specifically Corey S. Sanchez and John R. Seymore) decided to falsely certify that an affiliated entity, RRSA Commercial, was

---

[4] The "Prime Contractor Defendants" are: Clark Builders Group, LLC ("Clark"); Hunt Companies, Inc. ("Hunt"); Harper Construction Company, Inc.; Lend Lease (US) Construction, Inc.; Lend Lease (US) Public Partnerships, LLC ("Lend Lease"); Lincoln Property Company; and Walsh Construction Company. *Id.* ¶¶ 24-33. On March 13, 2020, the Court dismissed the Prime Contractor Defendants because they were not timely served. ECF No. 42.

[5] "John Does #1-50" are identified in the Complaint as: "individuals, corporations, limited liability companies, partnerships, trusts, or other lawful business entities through which Defendants do business, and who are unknown co-conspirators who conspired with the Defendants to perpetuate the scheme described" in the Complaint. Compl. ¶ 44.

[6] In her Complaint, Relator refers to "RRSA Residential" without defining the term or identifying any Defendants this term may include. *See, e.g., id.* ¶ 108. However, in her Response to the RRSA Defendants Motion to Dismiss, Relator clarifies that RRSA Residential refers to Roofing and Restoration Services of America, LLC. Pl.-Relator's Opposition to RRSA Defs.' Mot. to Dismiss ("Pl.'s RRSA Resp.") 1.

[7] The three applicable NAICS industry codes are 238150 (glass and glazing contractors), 238160 (roofing contractors), and 238170 (siding contractors). *Id.* ¶ 110. The threshold for these industry codes from 2011 through 2012 was $14 million in average annual receipts over a three-year period and was subsequently increased to $15 million. *Id.* ¶¶ 110, 176.

an eligible small business. *Id.* ¶¶ 111, 119. Relator claims that RRSA Commercial is not a small business under SBA rules because it shares common ownership, common management, and identity of interests with the RRSA Affiliated Defendants (i.e., both are in the roofing and siding business), which Defendants do not dispute. *Id.* ¶¶ 127-41. Further, under the SBA "totality of the circumstances test," Relator alleges that these entities are affiliated because, among other things, they share the same place of business, email domain name, and phone number. *Id.* ¶¶ 142-50.

Relator claims that by utilizing an affiliated entity, the RRSA Affiliated Defendants determined that they would have a "distinct advantage" over competition from legitimate small businesses. *Id.* ¶ 112. For example, RRSA Commercial would be able to leverage the RRSA Affiliated Defendants' combined resources, materials, industry connections, and "bondability"—resources that most legitimate small businesses do not have. *See id.* ¶¶ 112, 114. "Bondability" was especially important because a contractor must be "bondable" to be considered for government contracts, meaning it qualifies for surety bonds on any given project. *Id.* ¶ 113. Relator maintains that the RRSA Affiliated Defendants have significant bondability—near $100 million—compared to actual small businesses with limited revenue streams and collateral sources and for whom it would be "essentially impossible" to secure bonding near $100 million. *Id.* ¶¶ 113-14.

According to Relator, on March 6, 2013, the RRSA Affiliated Defendants falsely certified on the System for Award Management ("SAM") database that RRSA Commercial was an eligible small business under the SBA. *Id.* ¶¶ 120, 123. The SAM database is the official registration system for businesses who work with the Federal Government. *Id.* ¶ 120. According to Relator, RRSA Commercial repeatedly certified that it was an eligible small business on annual updates. *Id.* ¶¶ 121, 124, 176. When questions were raised internally about the legality of these

misrepresentations, Relator alleges that "Jon Seymore and Sanchez both responded that the Government was welcome to try and uncover the intentional misrepresentations and, if the Government ever uncovered the fraud, enough time would have elapsed that the RRSA Affiliated Defendants would no longer need the small business classification in order to secure government contracts." *Id.* ¶ 123.

After registering on SAM, the Prime Contractor Defendants awarded RRSA Commercial dozens of small business subcontracts, even though, Relator claims, the Prime Contractor Defendants knew that RRSA Commercial was in reality a large business. *Id.* ¶¶ 158-235. The Complaint also alleges that some of the Prime Contractor Defendants intentionally claimed credit for subcontracting with a "small business," while enjoying the benefits of working with RRSA Commercial, a large business with vast resources. *Id.* ¶¶ 162, 178. For this reason, Relator alleges that Clark made a "secret arrangement" with RRSA Commercial—through Nichols—pursuant to which RRSA Commercial was guaranteed to win bids for subcontracts if RRSA Commercial bid within Clark's designated range. *Id.* ¶¶ 167-69.

As a condition of receiving Government contracts, each Prime Contractor Defendant was required to prepare a small business subcontracting plan. *See, e.g., id.* ¶ 158. In a subcontracting plan, a prime contractor establishes subcontracting goals for small businesses, represents that a portion of the work will be awarded to small businesses, and certifies compliance. *See, e.g., id.* ¶¶ 158-59. When a prime contractor bids on a contract, the prime contractor submits the subcontracting plan to the Government, which becomes a material part of the contract if the prime contractor wins the bid. *Id.* ¶¶ 159-60. Because the Prime Contractor Defendants awarded subcontracts to RRSA Commercial, for which RRSA Commercial was not eligible, Relator alleges that their subcontracting plan certifications were false. *Id.* ¶¶ 2, 6-8.

To receive payment for the subcontracting work performed by RRSA Commercial, Relator asserts that the Prime Contractor Defendants submitted monthly invoices to the Government for services they claimed were performed by small businesses, resulting in "tens of millions of dollars in improper payments." *See id.* ¶¶ 8, 10-11, 252-53, 258, 267, 280. Relator also alleges that the Government paid contractually mandated bonuses to the Prime Contractor Defendants for subcontracting to purported small businesses. *Id.* ¶¶ 2, 6, 157, 162, 170, 181, 193, 207, 223, 235, 260, 265.

Relator also contends that the RRSA Affiliated Defendants paid an illegal kickback. *Id.* ¶¶ 236-39. At Marty Haight's home in late 2013, Haight allegedly gave Nichols $40,000-50,000 to bribe Clark project managers in exchange for subcontracts. *Id.* ¶¶ 237-39. As a result of these efforts, Relator maintains that RRSA Commercial grew by at least 400% from 2013 to 2016, with annual sales reaching $56 million. *Id.* ¶ 126.

## II.   LEGAL STANDARD

### A.   *Rule 12(b)(6) Standard*

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). The court, however, does not accept as true "conclusory allegations, unwarranted factual

inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the Complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The ultimate question is whether the Complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### B. Rule 9(b) Standard

When a Complaint alleges fraud, the plaintiff must plead the elements of its claims with the heightened particularity required by Rule 9(b). *See, e.g., Coates v. Heartland Wireless Commc'ns, Inc.*, 26 F. Supp. 2d 910, 914 (N.D. Tex. 1998). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The rule acts "as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). Put simply, Rule 9(b) requires the "who, what, when, where, and how" of the fraud. *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th

Cir. 2005) (quoting *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). However, "the 'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)." *Grubbs*, 565 F.3d at 190. Depending on the claim, the Fifth Circuit has explained that Rule 9(b) is "context specific and flexible," and a plaintiff may sufficiently state a claim "without including all the details of any single court-articulated standard." *Id.* at 188.[8]

### III. ANALYSIS

Defendants move to dismiss all four counts of the Complaint, arguing that Relator has failed to satisfy the pleading standards of Rules 8(a),[9] 12(b)(6), and 9(b).

### A. *"Lumped" Defendants*

The Court finds that Relator's allegations against Roofing & Restoration Services of America, LLC; Haight Construction Management Services, Inc. ("Haight"); Andrew's Roofing & Restoration, Inc.; RRSA Commercial Roofing, Inc.; and Turco Construction, Inc. are insufficiently pleaded. Relator lumps these Defendants together—along with RRSA Commercial—under the defined term "RRSA Affiliated Defendants." Compl. ¶ 127. To state a claim against these Defendants, Relator must make particular claims as to each individual Defendant. *In re Parkcentral Glob. Litig.*, 884 F. Supp. 2d at 471. Accordingly, "[i]t is impermissible to make general allegations that lump all defendants together; rather, the complaint must segregate the alleged wrongdoing of one from another." *Id.*

Although Relator states each entity's principal place of business, makes inconsequential references to various corporate and financial documents, and notes that Jennifer N. Seymore

---

[8] Rule 9(b)'s particularity requirements must be met as to each defendant. *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986) (citations omitted); *In re Parkcentral Glob. Litig.*, 884 F. Supp. 2d 464, 470-71 (N.D. Tex. 2012) (citations omitted).

[9] Specifically, Defendants argue that Relator failed to state a plausible claim for relief pursuant to Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 555 (quoting Rule 8(a)(2)).

testified that Haight is the "parent umbrella"[10] of the RRSA Affiliated Defendants, she does not allege specific wrongdoing attributable to these Defendants individually. Compl. ¶¶ 35, 38-39, 129-31, 146-48, 164. Grouping these Defendants into the definition of "RRSA Affiliated Defendants" does not establish "more than a sheer possibility" that they acted unlawfully. *Iqbal*, 556 U.S. at 678. Therefore, the Court dismisses Relator's claims against these Defendants.

Similarly, Relator's allegations against Jennifer N. Seymore are insufficiently pleaded. The Complaint states that Ms. Seymore was an owner and officer of certain RRSA Affiliated Defendants "in percentages sufficient to exercise control over each of the other companies," was a manager and CFO of RRSA Commercial, was an indemnitor for one of RRSA Commercial's surety bonds, and was involved "in all aspects of the business," but does not make any specific allegation of wrongdoing. Compl. ¶¶ 41-42, 128, 135-37, 148, 164. Therefore, the Court dismisses Relator's claims against this Defendant.

### B. *Anti-Kickback Act*

The Anti-Kickback Act ("AKA"), 41 U.S.C. § 8701 *et seq.*, prohibits kickback payments involving subcontractors under negotiated federal contracts.[11] The statute prohibits any person from: (1) providing, attempting to provide, or offering to provide a kickback; (2) soliciting, accepting, or attempting to accept a kickback; or (3) including the amount of a kickback in the contract price that a subcontractor charges a prime contractor, or a prime contractor charges the Federal Government. 41 U.S.C.A. § 8702 (Westlaw current through Pub. L. 111-350).

---

[10] It is unclear whether Relator attempts to attribute liability to Haight based on its parent relationship with RRSA Commercial. Although it is a "bedrock principle" of corporate law that a parent corporation is not liable for actions taken by its subsidiaries, courts will "pierce the corporate veil" under the "alter ego doctrine" in "exceptional cases." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006). Given that Relator has not asserted the alter ego doctrine, the Court will not consider whether Haight may be held liable on this basis.

[11] In her Complaint, Relator refers to the AKA as being codified at 41 U.S.C. § 51 *et seq.*, which was where the AKA was previously codified. Compl. ¶ 5. As of January 4, 2011, the AKA is codified at 41 U.S.C. § 8702. *U.S. v. Peterson*, No. CV-11-5137-EFS, 2012 WL 315443, *4 n.2 (E.D. Wa. Feb. 1, 2012).

Without citing any authority, Relator states that violation of the AKA is a "proper predicate" to an FCA claim on the grounds that: (1) Clark and the RRSA Affiliated Defendants expressly undertook to comply with the AKA as a condition of payment under the Government prime contracts (and incorporated into the subcontract flow-down provisions); and/or (2) AKA violations render the claims submitted to the government "factually false" because AKA compliance is a condition of payment. *Id.* ¶ 241. Although a violation of a different statute—the Anti-Kickback Statute—may serve as a basis for an FCA claim in the healthcare context,[12] Relator has not cited, and the Court is not aware of, a case in this Circuit that addresses whether violations of the AKA can serve as a basis for an FCA claim. Therefore, the Court declines to decide whether violation of the AKA can serve as a basis for an FCA claim.

### C. *FCA Claims*

#### (1) *Presentment Claims*

The FCA imposes civil liability and treble damages on any person who, inter alia, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the Federal government. 31 U.S.C.A. § 3729(a)(1)(A) (Westlaw current through Pub. L. 111-21). Claims under § 3729(a)(1)(A) are referred to as "presentment claims." *United States ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 511 (N.D. Tex. 2012).

False claims can take several forms. Courts in this Circuit have recognized that FCA liability can be imposed when the contract under which payment is made was originally obtained through false statements or fraudulent conduct. *See, e.g., United States ex rel. Dekort v. Integrated Coast Guard Sys.*, 705 F. Supp. 2d 519, 535-36 (N.D. Tex. 2010); *see also United States ex rel.*

---

[12] The Anti-Kickback Act, 41 U.S.C. § 8702 *et seq.*, must be distinguished from the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a *et seq.*, which can form the basis of an FCA claim in the healthcare context. *United States v. Medoc Health Servs. LLC*, No. 3:17-cv-2977-M, 2020 WL 3892453, *3, 8 (N.D. Tex. July 2, 2020).

10

*Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384 (5th Cir. 2003). Claims brought under this theory are referred to as "fraudulent inducement claims." *Dekort*, 705 F. Supp. 2d at 535. Even though the payment claims are not literally false, because they derive from fraudulent misrepresentation, they are actionable false claims. *Longhi*, 575 F.3d at 468 (citing *United States ex rel. Laird v. Lockheed Martin Eng'g & Science Servs. Co.*, 491 F.3d 254, 259 (5th Cir.2007)).

FCA liability can also attach under the "false certification theory," which can be express or implied. *United States ex rel. Campbell v. KIC Dev., LLC*, EP-18-cv-193-KC, 2019 WL 6884485, *7 (W.D. Tex. 2019). The express false certification theory is based on misrepresentations made to the Government on a payment claim. *Id.*

The implied false certification theory is based on fraudulent omissions from such claims. *Id.* Under this theory, liability attaches when two conditions are met: (1) "the claim does not merely request payment, but also makes specific representations about the goods and services provided;" and (2) "the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, --- U.S. ---, 136 S.Ct. 1989, 2001 (2016). Liability does not turn on whether such requirements were expressly designated as conditions of payment. *Id.* at 1996. Rather, liability turns on "whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision." *Id.* "Whether a provision is labeled a condition of payment is relevant to but not dispositive of the materiality inquiry." *Id.* at 2001.

### a.  *Elements*

Under each theory, the essential elements of FCA liability are the same. Relator must demonstrate: "(1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money

11

or to forfeit moneys due (i.e., that involved a claim)." *United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F.App'x. 237, 240 (5th Cir. 2020) (citing *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 387) (5th Cir. 2017)).

### i. *False Statement or Fraudulent Course of Conduct*

"Fraudulent presentment requires proof only of the claim's falsity, not of its exact contents." *Grubbs*, 565 F.3d at 189. Accepting Relator's alleged facts as true and viewed in the light most favorable to Relator, the Court finds that Relator has adequately pleaded the falsity requirement under the fraudulent inducement and/or false certification theories with respect to Corey S. Sanchez, Jon R. Seymore, Ronald Nichols,[13] and RRSA Commercial.

### ii. *Scienter*

To meet the scienter requirement, a relator must plead that a defendant: (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C.A. § 3729(b)(1). "Allegations of scienter may be averred generally, but simple allegations of fraudulent intent will not suffice, and plaintiffs must set forth *specific facts* supporting an inference of fraud." *In re Parkcentral Glob. Litig.*, 884 F. Supp. 2d at 471 (citation and internal quotations omitted). The FCA applies to "any person" who knowingly causes a false claim to be made, and a "person" may include a business entity, such as a limited liability company like RRSA Commercial. *See United States ex rel. Wheeler v. Union Treatment Ctrs., LLC*, Civil Action No. SA-13-CA-004-XR, 2019 WL 5026934, *1 (W.D. Tex. July 1, 2019). However, a company such as RRSA Commercial can act only through individuals and "cannot act or have a

---

[13] In her Response to the Nichols Motion to Dismiss, Relator states that at this point, she "seeks to hold Nichols liable only for the bribery scheme involving Clark." Pl.-Relator's Opp. to Ronald Scott Nichols' Mot. to Dismiss 8 n.2. However, based on the arguments included in her Response, it does not appear that Relator is dropping any of the alleged Counts set forth in the Complaint against Nichols.

mental state by itself." *Id.* (citing *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 848 F.3d 366, 372 (5th Cir. 2017)). For purposes of evaluating scienter under the FCA, courts in this Circuit have imputed an officer's knowledge to a company when the officer was acting within the scope of the officer's authority and for the purpose of benefitting the company. *See id.* (citing *United States v. Hangar One, Inc.*, 563 F.2d 1155, 1158 (5th Cir. 1977)).

Accepting Relator's alleged facts as true and viewed in the light most favorable to Relator, the Court finds that Relator has sufficiently pleaded the scienter element for Corey S. Sanchez, Jon R. Seymore, and Ronald Nichols. Furthermore, the Court finds scienter may be imputed to RRSA Commercial because Relator has pleaded sufficient facts alleging that Corey S. Sanchez, Jon R. Seymore, and Ronald Nichols were owners, officers, managers, or agents of RRSA Commercial, acting within the scope of their authority, for the purpose of benefitting RRSA Commercial, which is undisputed by the parties. *Id.* ¶¶ 40-41, 119-26, 128-29, 132, 135.

### iii. *Materiality*

A false statement or fraudulent course of conduct is material if it has a "natural tendency to influence," or is "capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4); *Escobar*, 136 S.Ct. at 2002 (citation omitted). The materiality standard is "demanding" and "rigorous." *Id.* at 2002-03. The Supreme Court has explained how to evaluate materiality:

> [W]hen evaluating materiality under the False Claims Act, the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive. Likewise, proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement. Conversely, if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were

violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

*Id.* at 2003-04. The Supreme Court has further clarified that materiality "cannot be found where noncompliance is minor or insubstantial." *Id.* at 2003 (citation omitted). Accepting Relator's alleged facts as true and viewed in the light most favorable to Relator, the Court finds that Relator has sufficiently pleaded the materiality element with respect to Corey S. Sanchez, Jon R. Seymore, Ronald Nichols, and RRSA Commercial.

### iv. *Caused the Government to Pay Out Money*

Under this element, subcontractors are held liable when, as is alleged here, they cause a prime contractor to submit a false claim to the Government. *United States v. Bornstein*, 423 U.S. 303, 309 (1976); *see also United States ex rel. Tran v. Computer Sciences Corp.*, 53 F. Supp. 3d 104, 126-27 (D.D.C. 2014) (finding a subcontractor may be liable for false claims if they submit a false statement to the prime contractor). Accepting Relator's alleged facts as true and viewed in the light most favorable to Relator, the Court finds that Relator has sufficiently pleaded this element with respect to Corey S. Sanchez, Jon R. Seymore, Ronald Nichols, and RRSA Commercial, and, therefore, has sufficiently stated a presentment claim under each theory of liability.

### (2) *False Records Claim*

The FCA imposes liability on anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C.A. § 3729(a)(1)(B); *see also United States ex rel. King v. Solvay Pharm., Inc.*, 871 F.3d 318, 323-24 (5th Cir. 2017). Claims under § 3729(a)(1)(B) are referred to as "false records claims." *United States ex rel. Jamison v. Career Opportunities, Inc.*, Civil Action No. 3:16-cv-3248-S, 2020 WL 520590, *5 (N.D. Tex. Jan. 31, 2020). Like a presentment claim under § 3729(a)(1)(A), a false

records claim under § 3729(a)(1)(B) requires a relator to "show that the claim presented for payment . . . was false." *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 476-77 (5th Cir. 2015), *aff'd*, 137 S. Ct. 436 (2016); *see also Longhi*, 575 F.3d at 467 (applying the same elements to a presentment claim and a false records claim). "[T]he recording of a false record, when it is made with the requisite intent, is enough to satisfy the [FCA]," *Grubbs*, 565 F.3d at 193, so long as the false record is material to the payment—i.e., the record would affect whether the Government would pay the claim. *United States ex rel. Patel v. Catholic Health Initiatives*, 792 F.App'x. 296, 301 (5th Cir. 2019) (quoting *United States ex rel. Patel v. Catholic Health Initiatives (Patel II)*, 312 F. Supp. 3d 584, 605 (S.D. Tex. 2018)). Accepting Relator's alleged facts as true and viewed in the light most favorable to Relator, the Court finds that Relator has adequately pleaded that Corey S. Sanchez, Jon R. Seymore, and RRSA Commercial knowingly made or caused to be made false records that were material to payment.

### (3) *Conspiracy Claim*

A conspiracy claim under § 3729(a)(1)(C) attaches when a person "conspires to commit a violation" under § 3729(a)(1). 31 U.S.C.A. § 3729(a)(1)(C). To allege a conspiracy, a relator must show the existence of an unlawful agreement to get a false or fraudulent claim paid or allowed and at least one act performed in furtherance of the agreement. *Grubbs*, 565 F.3d at 193 (citations omitted). The purported conspirators must share a specific intent to defraud the Government. *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008). "The particularity requirements of Rule 9(b) apply to the [FCA's] conspiracy provision with equal force as to its 'presentment' and 'record' provisions." *Grubbs*, 565 F.3d at 193. Relator "must plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy." *Id.* (citation and internal quotation marks omitted). The Complaint must "at least describe 'particular circumstances' from which agreement may be 'naturally inferred.'" *Campbell*,

2019 WL 6884485, *7 (quoting *Grubbs*, 565 F.3d at 194). Accepting Relator's alleged facts as true and viewed in the light most favorable to Relator, the Court finds that Relator has adequately pleaded a conspiracy between Corey S. Sanchez, Jon R. Seymore, Ronald Nichols, and RRSA Commercial and the Prime Contractor Defendants.[14]

### (4) *Reverse False Claim*

The FCA also imposes civil liability for "reverse false claims" in which any person "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C.A. § 3729(a)(1)(G); *United States ex rel. Hendrickson v. Bank of America, N.A.*, 343 F. Supp. 3d 610, 618 (N.D. Tex. 2018). "In a reverse false claims suit, the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated." *United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 653 (5th Cir. 2004). "[U]nassessed regulatory penalties are not obligations under the FCA." *United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1039 (5th Cir. 2016).

Other than a formulaic recitation of the elements, Relator has not pleaded facts sufficient to show that Defendants were obligated to pay the Government. Compl. ¶ 288; *Ferrer*, 484 F.3d 776 at 780. The Court grants the RRSA Motion to Dismiss and the Nichols Motion to Dismiss with respect to Relator's reverse false claim.

---

[14] It is unclear from the Complaint whether Relator is alleging a conspiracy among the RRSA Affiliated Defendants, Jon R. Seymore, Corey S. Sanchez, Jennifer N. Seymore, and Ronald Nichols *and* the Prime Contractor Defendants, or solely among the RRSA Affiliated Defendants, Jon R. Seymore, Corey S. Sanchez, Jennifer N. Seymore, and Ronald Nichols. The Court only addresses the former as the Complaint does not address whether allegations of intracompany conspiracy would be barred by the intracompany conspiracy doctrine. *See Parikh*, 977 F. Supp. 2d at 662.

### D. *Rule 9(b) Particularity*

Defendants argue that the Complaint fails to plead fraud with particularity as required by Rule 9(b)'s heightened pleading standard. Specifically, Defendants argue that Relator has not identified claims that the Defendants submitted to the Government. Nichols Mot. to Dismiss 1, 13-15; RRSA Defs. Mot. to Dismiss 1, 10, 14. Under the *Grubbs* standard, if a relator "cannot allege the details of an actually submitted false claim," a relator can survive a motion to dismiss "by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190. Accepting Relator's alleged facts as true and viewed in the light most favorable to Relator, the Court finds that Relator has sufficiently alleged the "who, what, when, where, and how" of the fraud to meet the *Grubbs* standard.

### E. *Statute of Limitations*

To the extent not dismissed on other grounds, Nichols moves for dismissal of all claims arising more than six years before Relator filed her Complaint on July 6, 2016, pursuant to 31 U.S.C. § 3731(b). Nichols Mot. to Dismiss 1 n.1. As the party asserting the statute of limitations defense, Nichols bears the burden of proof. *See Frame v. City of Arlington*, 657 F.3d 215, 239 (5th Cir. 2011). Although Relator notes that an earlier version of the FCA would apply to wrongdoing occurring prior to May 20, 2009, *see* Compl. ¶ 68 nn.1-4, none of the specifically alleged wrongdoing occurred prior to 2011, which is within the six-year limitations period under 31 U.S.C. § 3731(b)(1).[15] Therefore, the Court finds that dismissal of Relator's claims on statute of limitations grounds is improper.

---

[15] Moreover, the Supreme Court recently found that the § 3731(b)(2) extended limitations period applies to private relators in nonintervened actions. *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S.Ct. 1507, 1511-13 (2019); *see also United States ex rel. Hernandez v. Team Finance, L.L.C.*, Civil Action No. 2:16-cv-00432-JRG, 2020 WL 731446, *11 (E.D. Tex. Feb. 13, 2020).

17

## IV.     CONCLUSION

For the reasons discussed above, the Court:

- **GRANTS** the RRSA Motion to Dismiss with respect to Roofing & Restoration Services of America, LLC; RRSA Commercial Roofing, Inc.; Haight Construction Management Services, Inc.; Turco Construction, Inc.; Andrew's Roofing & Restoration, Inc.; and Jennifer N. Seymore;

- **DENIES** the Nichols Motion to Dismiss as to Counts I and III;

- **GRANTS** the Nichols Motion to Dismiss as to Counts II and IV;

- **DENIES** the RRSA Motion to Dismiss as to Counts I, II, and III with respect to Corey S. Sanchez, Jon R. Seymore, and RRSA Commercial; and

- **GRANTS** the RRSA Motion to Dismiss as to Count IV.

Relator is granted leave to amend her Complaint with respect to the Defendants and claims that have been dismissed. Relator must file an amended complaint within 30 days from the date of this Order. If an amended complaint is not filed within 30 days, the Defendants and claims dismissed above will be dismissed with prejudice.

**SO ORDERED.**

SIGNED October 20, 2020.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**