IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* TINA HAIGHT, | § § § | |
| Plaintiffs, | § § | |
| V. | § § § | Civil Action No. 3:16-CV1975-S |
| RRSA (COMMERCIAL DIVISION), LLC; ROOFING & RESTORATION SERVICES OF AMERICA, LLC; RRSA COMMERCIAL ROOFING, INC.; HAIGHT CONSTRUCTION MANAGEMENT SERVICES, INC.; COREY S. SANCHEZ; JON R. SEYMORE; JENNIFER N. SEYMORE and RONALD SCOTT NICHOLS, | § § § § § § § § § § | |
| Defendants. | § § § | |

**DEFENDANTS RRSA (COMMERCIAL DIVISION), LLC; ROOFING & RESTORATION SERVICES OF AMERICA, LLC; RRSA COMMERCIAL ROOFING, INC.; HAIGHT CONSTRUCTION MANAGEMENT SERVICES, INC.; COREY S. SANCHEZ; JON R. SEYMORE; JENNIFER N. SEYMORE AND RONALD SCOTT NICHOLS'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| **TABLE OF CONTENTS** | | i |
| **TABLE OF AUTHORITIES** | | ii |
| I. | INTRODUCTION | 1 |
| II. | RELEVANT PROCEDURAL HISTORY | 1 |
| III. | STATEMENT OF FACTS | 2 |
| IV. | APPLICABLE LEGAL STANDARDS | 3 |
| V. | ARGUMENT | 4 |
| | A. The Court Lacks Subject Matter Jurisdiction Over Relator's *Qui Tam* Action Because Relator's Claims Were Previously Released. | 5 |
| |    1. The Release and the Covenant Prohibiting Other Actions Encompass the FCA Claims. | 7 |
| |    2. Public Policy Does Not Outweigh Enforcement of the Release. | 7 |
| | B. Relator's Claims Alleging Regulatory Noncompliance Do Not Constitute a False Claim. | 10 |
| VI. | CONCLUSION | 11 |

## TABLE OF AUTHORITIES

Page

**Cases**

*Green v. Forney Eng'g Co.*, 589 F.2d 243 (5th Cir. 1979) .......................................................... 5

*Haight v. Koley Jessen PC, LLO*, No. 10-18-00057-CV, 2019 WL 2479953, at *4 (Tex. App.—Waco June 12, 2019, pet. denied) ................................................................. 1, 8

*In re: Natural Gas Royalties Qui Tam Litigation*, 2002 WL 35651694, at *2 (D. Wy. Oct. 9, 2002) ........................................................................................................................ 9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................................. 3

*McKinney v. United States*, 950 F. Supp. 2d 923 (N.D. Tex. 2013) ............................................ 5

*Outlaw Lab., LP v. Shenoor Enter., Inc.*, 371 F. Supp. 3d 355 (N.D. Tex. 2019) ....................... 4

*Patterson v. Rawlings*, 287 F. Supp. 3d 632 (N.D. Tex. 2018) ............................................... 4, 5

*Patterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981) ......................................................... 4, 5

*U.S. ex rel. Longhi v. United States*, 575 F.3d 458 (5th Cir. 2009) ............................................. 9

*U.S. ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033 (C.D. Cal. 2012) .............................. 9

*United States ex rel. Campie v. Gilead Sciences, Inc.*, 862 F.3d 890 (9th Cir. 2017) ............... 10

*United States ex rel. Gebert v. Transport Admin. Servs.*, 260 F.3d 909 (8th Cir. 2001) ............ 4

*United States ex rel. Radcliffe v. Purdue Pharma L.P.*, 600 F.3d 319 (4th Cir. 2010) ........... 4, 6

*United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161 (10th Cir. 2009) ...... 5, 6

*United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994) ...... 8

*United States ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709 (N.D. Tex. 2011) ..................................................................................................................................... 10

*United States v. Cotton*, 535 U.S. 625, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002) ................... 4

*United States v. Northrop Corp.*, 59 F.3d 953 (9th Cir. 1995) ................................................ 8, 9

*Universal Health Servs., Inc.*, 136 S.Ct. 1989 (2016) ............................................................... 10

*Vermont Agency of Nat'l Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000) ............................ 3, 4

*Vinmar Overseas, Ltd v. OceanConnect, LLC*, 2012 WL 3599486, at *4 (S.D. Tex. Aug. 20, 2012) ................................................................................................................................4

*Vinnichenko v. Barrows*, No. 3:07-CV-0794-P, 2007 WL 9717505, at *1 (N.D. Tex. Oct. 22, 2007) ................................................................................................................................5

**Statutes**

31 U.S.C. § 3730(b)(1)..................................................................................................................3, 7

31 U.S.C. § 3730(c)(1)......................................................................................................................3

31 U.S.C. § 3730(c)(2)......................................................................................................................3

**Rules**

Fed. R. Civ. P. 12(b)(1).......................................................................................................... 1, 4, 5, 11

Fed. R. Civ. P. 12(b)(2)......................................................................................................................4

Fed. R. Civ. P. 12(b)(3)......................................................................................................................4

Fed. R. Civ. P. 12(b)(4)......................................................................................................................4

Fed. R. Civ. P. 12(b)(5)......................................................................................................................4

Fed. R. Civ. P. 12(b)(6)...................................................................................................................1, 5

Fed. R. Civ. P. 12(c).........................................................................................................................5

Fed. R. Civ. P. 12(d) ........................................................................................................................5

Fed. R. Civ. P. 12(h)(1)......................................................................................................................4

Fed. R. Civ. P. 12(h)(3)......................................................................................................................4

Fed. R. Civ. P. 56............................................................................................................................5

Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and the Local Rules of this Court, Defendants RRSA (Commercial Division), LLC; Roofing & Restoration Services of America, LLC; RRSA Commercial Roofing, Inc.; Haight Construction Management Services, Inc.; Corey S. Sanchez; Jon R. Seymore; Jennifer N. Seymore and Ronald Scott Nichols (collectively, the "RRSA Defendants") hereby move to dismiss Relator Tina Haight's ("Relator") First Amended Complaint.

## I.    INTRODUCTION

This action should be dismissed because Relator previously settled these claims with the RRSA Defendants.  More specifically, Relator's claims are jurisdictionally barred because she released all claims against the RRSA Defendants and therefore lacks standing as a *qui tam* relator. Accordingly, this case must be dismissed for lack of subject matter jurisdiction.

## II.   RELEVANT PROCEDURAL HISTORY

On July 16, 2016, Relator filed this action under seal pursuant to the *qui tam* provisions of the False Claims Act ("FCA").  On June 6, 2014, however, Relator entered into a Settlement and Mutual Release (the "Settlement Agreement") whereby Relator agreed to release the RRSA Defendants from any and all claims related to the matters therein settled, which includes the claims asserted in Relator's First Amended Complaint.  In addition, pursuant to the terms of the Settlement Agreement, Relator agreed not to institute, promote, participate in, assist with, submit, file or permit to be filed on her behalf, any lawsuit charge, claim, complaint, grievance arising out of or in any way related to the Companies, which includes RRSA (Commercial Division), LLC; Roofing & Restoration Service of America, LLC; RRSA Commercial Roofing, Inc. and Haight Construction Management Services, Inc. (collectively, the "Business Defendants").  On multiple occasions, the Settlement Agreement has been upheld as valid and enforceable by Texas Courts, including by the Texas Tenth Court of Appeals, Waco, Texas.. *See Haight v. Koley Jessen PC,*

*LLO*, No. 10-18-00057-CV, 2019 WL 2479953, at *4 (Tex. App.—Waco June 12, 2019, pet. denied).

### III. STATEMENT OF FACTS

Relator is the widow of Grady Martin Haight ("Mr. Haight"), who, during his lifetime, established, built and operated the Business Defendants. (App'x 003). Following Mr. Haight's death in early 2014, Relator acquired an ownership interest in the Business Defendants. (App'x 0004, 0026). Disputes and differences arose between Relator and the Business Defendants' management, including Defendant Corey Sanchez. (App'x 0004). Accordingly, after months of negotiations, on June 6, 2014, Relator sold her interest in the Business Defendants to Defendant Corey S. Sanchez (the "Sale") for benefits worth more than $30 million. (App'x 0003-0027). As a part of the Sale, Relator executed a Settlement and Mutual Release Agreement (the "Settlement Agreement") relating to the settlement of disputes over the operation and ownership of the Business Defendants. (App'x 0003-0025). Relator and Mr. Sanchez also executed an Equity Purchase Agreement (the "Purchase Agreement"), memorializing the terms of the Sale. (App'x 0026-0136).

Due to the disputes and differences that had arisen between Relator and the Business Defendants' management, both the Settlement Agreement and the Purchase Agreement has strict confidentiality and non-disclosures provisions, which forbid Relator from using or disclosing information belonging to the Business Defendants, including, but not limited to, the Business Defendants' business model, existing and potential business opportunities, marketing strategies, financial matters, operational and business affairs, customer lists, plans and proposals. (App'x 0014, 0032-33). In addition, the Settlement Agreement contained a broad release, wherein Relator agreed to release Mr. Sanchez and the other RRSA Defendants from all claims related to the operation of the Business Defendants. (App'x 0012-13). In addition, Relator agreed not to

2

institute any other type of action against Mr. Sanchez or the other RRSA Defendants relating to the operation of the Business Defendants. (App'x 0016).

Instead of abiding by the explicit terms of the Settlement Agreement and the Purchase Agreement, for which Relator received valuable consideration, Relator violated both agreements by filing the *qui tam* action. However, because the Settlement Agreement has been upheld by the Texas Court of Appeals, Relator lacks standing as a *qui tam* plaintiff in this matter.

## IV. APPLICABLE LEGAL STANDARDS

The *qui tam* provision of the FCA provides that "[a] person may bring a civil action for a violation of section 3729 for the person and for the United States Government." 31 U.S.C. § 3730(b)(1). The FCA further gives the relator the "right to continue as a party to the action" even when the Government has assumed primary responsibility for prosecuting the case. *Id.* at § 3730(c)(1). Further, the FCA gives the relator a right to a hearing before the Government's voluntary dismissal of the lawsuit and prohibits the Government from settling the lawsuit over the relator's objection without a judicial determination of "fair[ness], adequa[cy] and reasonable[ness]." *Id.* at §§ 3730(c)(2)(A); 3730(c)(2)(B).

The *qui* tam provisions of the FCA impart statutory standing on the relator in that "a *qui tam* relator has a 'concrete private interest in the outcome of [the] suit.'" *Vermont Agency of Nat'l Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773-74 (2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 (1992)). This is because the FCA "gives the relator [her]self an interest *in the lawsuit* and not merely the right to retain a fee out of the recovery." *Vermont Agency*, 529 U.S. at 772 (emphasis in original). However, a relator who has previously released all claims against the defendant lacks Article III standing to bring a *qui tam* claim. *See United States ex rel. Radcliffe v. Purdue Pharma L.P.*, 600 F.3d 319, 326 (4th Cir. 2010); *United States ex rel. Gebert v. Transport Admin. Servs.*, 260 F.3d 909, 914 (8th Cir. 2001).

3

## V.  ARGUMENT

"Standing is an issue of subject matter jurisdiction, and thus can be contested by a Rule 12(b)(1) motion to dismiss." *Outlaw Lab., LP v. Shenoor Enter., Inc.*, 371 F. Supp. 3d 355, 360 (N.D. Tex. 2019) (internal citations omitted).  Pursuant to Rule 12(h)(3), the court may "at any time" determine that it lacks subject matter jurisdiction and dismiss the action.  Unlike the defenses enumerated in 12(b)(2)-(5), the defense of lack of subject matter jurisdiction cannot be waived by the parties.  *See* Fed. R. Civ. P. 12(h)(1); *see also United States v. Cotton*, 535 U.S. 625, 630, 122 S. Ct. 1781, 1785, 152 L. Ed. 2d 860 (2002) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.").

When a party challenges subject matter jurisdiction, a party can make a facial attack or a factual attack.  *See Patterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  A factual attack on the subject matter jurisdiction of the court . . . challenges the facts on which jurisdiction depends and matters outside of the pleadings, such as affidavits and testimony, are considered." *Patterson v. Rawlings*, 287 F. Supp. 3d 632, 637 (N.D. Tex. 2018) (citing *Vinmar Overseas, Ltd v. OceanConnect, LLC*, 2012 WL 3599486, at *4 (S.D. Tex. Aug. 20, 2012)).  "The plaintiff in a factual challenge, as the party seeking to invoke jurisdiction, must 'submit facts through some evidentiary method and . . . prov[e] by a preponderance of the evidence that the trial court does have subject matter jurisdiction.'" *Rawlings*, 287 F. Supp. 3d at 638 (citing *Weinberger*, 644 F.2d at 523).

The Fifth Circuit has held that "[a] Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction cannot be converted into a motion for summary judgment." *Green v. Forney Eng'g Co.*, 589 F.2d 243, 246 (5th Cir. 1979) (stating that Rule 12(b)(6) motions—not 12(b)(1) motions—must be converted into a motion for summary judgment if matters outside the pleadings

4

are considered)[1]; *see also McKinney v. United States*, 950 F. Supp. 2d 923, 925, fn. 1 (N.D. Tex. 2013) ("[T]he court may consider evidence outside the complaint and decide factual issues that determine jurisdiction, without converting the motion to dismiss into a motion for summary judgment."); *see also Vinnichenko v. Barrows*, No. 3:07-CV-0794-P, 2007 WL 9717505, at *1 (N.D. Tex. Oct. 22, 2007) ("Although a court cannot convert a Rule 12(b)(1) motion into a motion for summary judgment, the court can consider material outside the pleadings, such as evidence attached to the motion to dismiss, when determining whether or not jurisdiction exists."). As the Settlement Agreement and Purchase Agreement strip Relator of standing in this matter, the RRSA Defendants' Motion to Dismiss must be sustained.

### A. The Court Lacks Subject Matter Jurisdiction Over Relator's *Qui Tam* Action Because Relator's Claims Were Previously Released.

Although the FCA prohibits a relator from unilaterally releasing her right to bring a *qui tam* complaint after the relator files suit, it does not prohibit a release that a would-be relator executes before filing the *qui tam* action. *See United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1168 (10th Cir. 2009) ("[The FCA] only governs the enforceability of settlement agreements made after the filing of a *qui tam*."). A release executed pre-filing of a *qui tam* action bars subsequent *qui tam* claims if (1) the release can be fairly interpreted to encompass *qui tam* claims and (2) public policy does not otherwise outweigh enforcement of the release. *Radcliffe*, 600 F.3d at 329; *Ritchie*, 558 F.3d at 1167-68. Section fifteen (15) of the Settlement Agreement executed by Relator (as "Seller") states, in pertinent part:

> Seller's Release. Effective upon payment to Seller pursuant to the Closing Statement (Exhibit B-3) and Closing of the Transaction, Seller, on her behalf and on behalf of the Estate, present and former spouses, dependents, agents,

---

[1] Fed. R. Civ. P. 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) [failure to state a claim] or 12(c) [motion for judgment on the pleadings], matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Accordingly, it follows that motions brought under Rule 12(b)(1) would not be converted into summary judgment motions, even if outside evidence is presented.

> representatives, heirs, executors, administrators, trustees, partners, successors, assigns, attorneys, accountants, insurers, lenders and all persons acting by, through, under, or in concert with her, past or present (collectively, the "Seller's Releasors"), fully and finally releases and forever discharges Buyers and their present and former spouses, dependents, agents, representatives, heirs, executors, administrators, trustees, partners, successors, assigns, attorneys, accountants, insurers, lenders and all persons acting by, through, under, or in concert with them, past or present, and the Companies and their respective parents, entities, subsidiaries, and affiliates, past and present, as well as their former and present directors, officers, managers, owners, shareholders, members, managers, partners, associates, employees, contractors, customers, predecessors, successors, agents, representatives, insurers, successors, assigns, attorneys, including but not limited to the law firms Koley Jessen, P.C., L.L.O. and Wray, Willett, & Stoffer, PLLC, accountants, including but not limited to the accounting firm Nosal Professional Group, insurers, lenders and sureties, (collectively, the "Seller's Releasees"), of any and from any and all manner of actions, causes of action, claims for relief, in law or in equity, statutory relief, statutory claims, statutory violations, suits, liens, administrative remedies, injunctions, debts, torts, remuneration for services, breach of covenant of good faith and fair dealing, reports, applications, licensing, practices and procedures, frauds, contracts, promissory notes, agreements, promises, breaches of fiduciary duties, tortious interference with contracts, fraudulent inducement, defamation, violation of a law now or hereafter recognized, conversion, mismanagement, liabilities, claims, demands, wages, commission and expense claims, damages, interest, losses, charges, liabilities, invoices, penalties, liens, costs, fees or expenses, of any nature whatsoever, known or unknown, fixed or contingent . . . which the Seller's Releasors or any of them now have or have ever had against the Seller's Releasees or any of them that arise out of or are in anyway related to the Disputes, the Relationship, the Equity, any matter discussed herein or by reason of any and all acts, omissions, events or facts occurring or existing as of the date hereof.

(the "Release") (App'x 0012-13).  Further, section 21 of the Settlement Agreement states:

> <u>Covenant Prohibiting Other Actions</u>. No party to this Agreement shall institute, promote, participate in, assist with, submit, file or permit to be filed on their behalf, any lawsuit charge, claim, complaint, grievance (e.g. media, criminal, Better Business Bureau, licensing and certification authorities, commissions, etc.), or any other proceeding whether judicial, administrative, arbitration or otherwise arising out of or any way relating to the allegations and/or claims previously made between the Parties or relating to any matters released herein regarding the Disputes, the Relationship, the Equity or the Companies (collectively, a "Complaint"), except only as to those rights and obligations specifically reserved or set forth in this Agreement. To the extent any party to this Agreement has already made, submitted, participated in or is aware of any Complaint, such party shall immediately, withdraw and/or dismiss any such Complaint. For the avoidance of doubt, the parties specifically acknowledge and agree that the other reserves the right to enforce

6

the terms and obligations set forth in this Agreement and the Transaction Documents, as applicable.

(the "Covenant Prohibiting Other Actions") (App'x 0016).

### 1. The Release and the Covenant Prohibiting Other Actions Encompass the FCA Claims.

The language of the Release in the Settlement Agreement is sufficient to include Relator's *qui tam* claims. The Release included "any and all manner of actions" that "arise out of or are in anyway related to the Disputes, the Relationship, the Equity." (App'x 0013). The "Disputes" include anything relating to the operation of the Companies, including the Business Defendants. (App'x 0004). As the claims asserted by Relator in the First Amended Complaint directly relate to the operation of the Business Defendants, those claims are encompassed within the Release validly executed by Relator prior to the filing of the *qui tam* action.

Further the language of the Covenant Prohibiting Other Actions is sufficient to include Relator's *qui tam* claims. The Covenant Prohibiting Other Actions forbade Relator from "participat[ing] in, assist[ing] with, submit[ing], fil[ing] or permit[ing] to be filed on their behalf any claim or lawsuit related to the Disputes." (App'x 0016). As Relator filed this action on behalf of herself as well as the United States Government, *see* 31 U.S.C. § 3730(b)(1), the First Amended Complaint violates the validly executed and binding Settlement Agreement.

### 2. Public Policy Does Not Outweigh Enforcement of the Release.

The public policy analysis involves balancing the law's encouragement of settling disputes and the public's interest in encouraging private parties to bring fraud to the government's attention. *See United States v. Northrop Corp.*, 59 F.3d 953, 968-69 (9th Cir. 1995). Here, no public interest justifies declining to enforce the Settlement Agreement executed by Relator, which has been upheld by the Texas Court of Appeals as valid and enforceable agreement. *See Haight*, No. 10-18-00057-CV, 2019 WL 2479953, at *4. At the time the Settlement Agreement and Purchase

7

Agreement were executed, Relator possessed an ownership interest in the Companies, and was fully aware of the business operations of the Business Defendants.

"It is commonly recognized that the central purpose of the *qui tam* provisions of the FCA is to 'set up incentives to supplement government enforcement' of the Act." *Northrop Corp.*, 59 F.3d at 963 (citing *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994)). However, creating incentives for those with knowledge of fraud to come forward is balanced against the "discouragement of opportunistic plaintiffs[.]" *Quinn*, 14 F.3d at 649. The Relator in this case falls squarely within the category of opportunistic plaintiffs. On June 6, 2014, Relator, having access to, and knowledge of, the facts that give rise to her *qui tam* claims, entered into a Purchase Agreement with Defendant Corey Sanchez, whereby she sold her interest in Business Defendants to Sanchez for benefits worth more than $30 million. As a part of that transaction, through the Settlement Agreement, she released Mr. Sanchez, and the other RRSA Defendants, from all claims related to the operation of the Business Defendants. After having received her $30 million in benefits, she then turned around and, taking advantage of her position as prior owner with access to confidential and proprietary information, filed this *qui tam* action against the unknowing buyer.

The cases where courts refuse to uphold the release in violation of public policy are instances where a company is trying to silence a departing employee who is aware of fraud on the government. *See, e.g., U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 474 (5th Cir. 2009) (stating that the enforcement of release clauses, in part, would "encourage individuals guilty of defrauding the United States to insulate themselves from the reach of the FCA by simply *forcing* potential relators to sign general agreements invoking release and indemnification from future suit") (emphasis added); *see also U.S. ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1039

8

(C.D. Cal. 2012) (stating that public policy would be thwarted if defendant company could "*silence whistleblowers and compel them to be complicit in potentially fraudulent conduct*") (emphasis added). Relator, in contrast, was not a former employee whose employer forced her to sign a release – she was the owner of the Business Defendants. "The FCA's *qui tam* provisions are designed to induce those with knowledge of fraud to break the code of silence that often exists due to loyalty, fear or complicity." *In re: Natural Gas Royalties Qui Tam Litigation*, 2002 WL 35651694, at *2 (D. Wy. Oct. 9, 2002). The *qui tam* provisions are not meant to protect someone like the Relator who, instead of coming forward with knowledge of alleged fraud, took advantage of the opportunity to profit in an amount more than $30 million.[2]

The "law strongly favors settlement of disputes, and there is a compelling public interest and policy in upholding and enforcing settlement agreements voluntarily entered into[.]" *Northrop Corp.*, 59 F.3d at 968 (internal citations omitted). Mr. Sanchez and the other RRSA Defendants relied on the covenants and obligations Relator made in the Settlement Agreement and Purchase Agreement. Moreover, Mr. Sanchez paid substantial consideration to the Relator in exchange for her promises to comply with the terms of the Settlement Agreement and Purchase Agreement. Instead of abiding by her covenants and obligations, the Relator kept her $30 million in benefits and pursued the claims she now makes in the First Amended Complaint. Public policy does not favor protecting such opportunistic behavior and the *qui tam* provisions of FCA are not meant to protect such plaintiffs. Defendants' Motion to Dismiss must be granted.

---

[2] In addition to the *qui tam* suit, Relator has engaged in a systematic campaign of lawsuits against various RRSA Defendants over the last seven years. (App'x 0137-151).

### B. Relator's Claims Alleging Regulatory Noncompliance Do Not Constitute a False Claim.

In Relator's First Amended Complaint, Relator places great emphasis on Defendants' purported noncompliance with the Small Business Administration ("SBA") rules and regulations (collectively, the "Regulations"). *See, e.g.*, First Amended Complaint, ¶¶9-10, 115, 119, 154-155. Similarly, Relator discusses the System for Award Management ("SAM") database, and states that "[e]ach time a small business files its annual SAM self-certification or submits its FAR certifications, it becomes subject to a stiff sanctions regime intended to deter small business contracting fraud." *Id.* at ¶97. Along with certain purported violations of the SBA, Relator also alleges fraudulent representations and certifications by Defendants using the SAM database. *See, e.g.*, *id.* at ¶¶116, 119-120, 268. However, to assert a claim pursuant to the FCA, the Fifth Circuit requires: "(1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due." *United States ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709, 717 (N.D. Tex. 2011). Further "[i]t is not enough to allege regulatory violations." *United States ex rel. Campie v. Gilead Sciences, Inc.*, 862 F.3d 890, 899 (9th Cir. 2017); *see also Universal Health Servs., Inc.*, 136 S.Ct. 1989, 2003 (2016) ("The False Claims Act is not 'an all-purpose antifraud statute' or a vehicle for punishing garden-variety breaches of contract or regulatory violations.") (internal citations omitted). Accordingly, even if Relator had standing to assert claims related to the Regulations and/or SAM, these allegations do not support a False Claims Act violation under 31 U.S.C. §§ 3729(a)(1)(A), 3729(a)(1)(B) and 3729(a)(1)(C), and Defendants' Motion to Dismiss must be granted.

## VI. CONCLUSION

Based on the foregoing, Defendants RRSA (Commercial Division), LLC; Roofing & Restoration Services of America, LLC; RRSA Commercial Roofing, Inc.; Haight Construction Management Services, Inc.; Corey S. Sanchez; Jon R. Seymore; Jennifer N. Seymore and Ronald Scott Nichols' Motion to Dismiss Relator Tina Haight's Complaint, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and the Local Rules of this Court, should be granted.

Dated:  February 1, 2021

                                            Respectfully submitted,

**DVORAK LAW GROUP, LLC**

By: */s/ Gretchen L. McGill*
    Heather S. Anson (*pro hac vice*)
    hvoegele@ddlawgroup.com
    Gretchen L. McGill (*pro hac vice*)
    gmcgill@ddlawgroup.com

9500 W. Dodge Rd., Ste. 100
Omaha, NE 68132
Telephone:  (402) 934-4770
Telecopier:  (402) 933-9630

and

**BELL NUNNALLY & MARTIN LLP**

    Christopher B. Trowbridge
    Texas State Bar No. 24008182
    christophert@bellnunnally.com
    Benjamin L. Riemer
    Texas State Bar No. 24065976
    briemer@bellnunnally.com

3232 McKinney Avenue
Dallas, Texas  75204
Telephone:  (214) 740-1400
Telecopier:  (214) 740-1499

**ATTORNEYS FOR DEFENDANTS RRSA (COMMERCIAL DIVISION), LLC; ROOFING & RESTORATION SERVICES OF AMERICA, LLC; RRSA COMMERCIAL ROOFING, INC.; HAIGHT CONSTRUCTION MANAGEMENT SERVICES, INC.; COREY S. SANCHEZ; JON R. SEYMORE; JENNIFER N. SEYMORE AND RONALD SCOTT NICHOLS.**

CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2021, a true and correct copy of the foregoing document was served upon all counsel of record via the Court's CM/ECF filing system as indicated below:

| | |
|---|---|
| Darren P. Nicholson | Christopher A. Payne |
| Mallory Biblo | Christina Alstrin |
| Burns Charest, LLP | Payne Alstrin, PLLC |
| 900 Jackson Street, Suite 500 | 9101 LBJ Freeway, Suite 760 |
| Dallas, TX 75202 | Dallas, TX 75243 |
| dnicholson@burnscharest.com | Chris.Payne@Payne-Alstrin.com |
| mbiblo@burnscharest.com | Christina.Alstrin@Payne-Alstrin.com |

Gene R. Besen
Samuel T. Acker
Bradley Arant Boult Cummings LLP
4400 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
gbesen@bradley.com
sacker@bradley.com

*/s/ Gretchen L. McGill*
Gretchen L. McGill