IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | § | |
| TINA HAIGHT, | § | |
| | § | |
| Plaintiff-Relator, | § | |
| | § | Civil Action No. 3:16-CV-1975-S |
| v. | § | |
| | § | |
| RRSA (COMMERCIAL DIVISION), LLC; *et al.,* | § | |
| | § | |
| Defendants. | § | |

**APPENDIX TO DEFENDANTS RRSA (COMMERCIAL DIVISION), LLC; ROOFING & RESTORATION SERVICES OF AMERICA, LLC; RRSA COMMERCIAL ROOFING, INC.; HAIGHT CONSTRUCTION MANAGEMENT SERVICES, INC.; COREY S. SANCHEZ; JON R. SEYMORE; JENNIFER N. SEYMORE AND RONALD SCOTT NICHOLS'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

| Description | Pages |
|---|---|
| Declaration of Gretchen L. McGill, with Exhibits A, B and C | APP'X_0001 – APP'X_0151 |

Dated:  February 1, 2021

Respectfully submitted,

**DVORAK LAW GROUP, LLC**

By: */s/ Gretchen L. McGill*
      Heather S. Anson (*pro hac vice*)
      hvoegele@ddlawgroup.com
      Gretchen L. McGill (*pro hac vice*)
      gmcgill@ddlawgroup.com

9500 W. Dodge Rd., Ste. 100
Omaha, NE 68132
Telephone:  (402) 934-4770
Telecopier:  (402) 933-9630

and

**BELL NUNNALLY & MARTIN LLP**

> Christopher B. Trowbridge
> Texas State Bar No. 24008182
> christophert@bellnunnally.com
> Benjamin L. Riemer
> Texas State Bar No. 24065976
> briemer@bellnunnally.com
>
> 3232 McKinney Avenue
> Dallas, Texas  75204
> Telephone:  (214) 740-1400
> Telecopier:  (214) 740-1499
>
> **ATTORNEYS FOR DEFENDANTS RRSA (COMMERCIAL DIVISION), LLC; ROOFING & RESTORATION SERVICES OF AMERICA, LLC; RRSA COMMERCIAL ROOFING, INC.; HAIGHT CONSTRUCTION MANAGEMENT SERVICES, INC.; COREY S. SANCHEZ; JON R. SEYMORE; JENNIFER N. SEYMORE AND RONALD SCOTT NICHOLS.**

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2021, a true and correct copy of the foregoing document was served upon all counsel of record via the Court's CM/ECF filing system as indicated below:

Darren P. Nicholson
Mallory Biblo
Burns Charest, LLP
900 Jackson Street, Suite 500
Dallas, TX  75202
dnicholson@burnscharest.com
mbiblo@burnscharest.com

Christopher A. Payne
Christina Alstrin
Payne Alstrin, PLLC
9101 LBJ Freeway, Suite 760
Dallas, TX  75243
Chris.Payne@Payne-Alstrin.com
Christina.Alstrin@Payne-Alstrin.com

Gene R. Besen
Samuel T. Acker
Bradley Arant Boult Cummings LLP
4400 Renaissance Tower
1201 Elm Street
Dallas, TX  75270
gbesen@bradley.com
sacker@bradley.com

> */s/ Gretchen L. McGill*
> Gretchen L. McGill

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel*. | § | |
| TINA HAIGHT, | § | |
| | § | |
| Plaintiff-Relator, | § | |
| | § | Civil Action No. 3:16-CV-1975-S |
| v. | § | |
| | § | |
| RRSA (COMMERCIAL DIVISION), LLC; *et al.*, | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF GRETCHEN L. MCGILL

Gretchen L. McGill, under penalty of perjury, declares as follows:

1.      I am a citizen and resident of Omaha, Nebraska.  I am over the age of eighteen and am competent to make this Declaration.  I have actual knowledge of the matters and facts set forth herein.

2.      I am an attorney at Dvorak Law Group, LLC, which represents RRSA (Commercial Division), LLC; Roofing & Restoration Services of America, LLC; RRSA Commercial Roofing, Inc.; Haight Construction Management Services, Inc.; Corey S. Sanchez; Jon R. Seymore; Jennifer N. Seymore and Ronald Scott Nichols in the above-captioned matter.

3.      Attached to this Declaration as Exhibit A is a true and correct copy of the Settlement and Mutual Release Agreement between Corey Sanchez, Jennifer Haight Seymore and Jon Seymore, on the one hand, and Tina L. Haight, on the other hand, dated June 6, 2014.

4.      Attached to this Declaration as Exhibit B is a true and correct copy of the Equity Purchase Agreement between Corey Sanchez, on the one hand, and Tina L. Haight, on the other hand, dated June 6, 2014.

5.      Attached to this Declaration as Exhibit C is a true and correct copy of Memorandum Rulings entered in Cause No. 94402, *Tina Haight, et al. v. Corey Stanton Sanchez, Jennifer Seymore, Five Points Bank, et al.*, in the District Court of the 40th Judicial District, Ellis County, Texas.

I declare under penalty of perjury in accordance with 28 U.S.C. § 1746 that the foregoing is true and correct and that this Declaration was executed on this ___1st___ day of February, 2021, in Omaha, Nebraska.

Gretchen L. McGill

# EXHIBIT A FILED UNDER SEAL
# [APP'X_0003 - APP'X_0025]

# EXHIBIT B FILED UNDER SEAL
# [APP'X_0026 – APP'X_0136]

# ORIGINAL

Cause No. 94402

FILED FOR RECORD
2017 SEP 25 PM 2:35

MELANIE REED
DISTRICT CLERK
ELLIS COUNTY, TX

TINA L. HAIGHT, et al

§
§
§

IN THE DISTRICT

_____

Plaintiff(s)

§
§
§
§

vs.

§
§

40TH JUDICIAL DISTRICT

COREY STANTON SANCHEZ,
JENNIFER SEYMORE,
FIVE POINTS BANK, et al

§
§
§
§

_____

Defendant(s)

§
§

ELLIS COUNTY, TEXAS

---

## MEMORANDUM RULINGS
### (September 25, 2017)

---

This document constitutes the trial court's memorandum rulings regarding various summary judgment matters contemplated by the Summary Judgment Briefing Schedule currently in effect. These rulings are the result of the trial court's effort to rigorously apply relevant summary judgment standards. The comments contained in Section I below are presented for general informational purposes only to assist the reader in appreciating the case context, and are presented for no other purpose.

## I.
## General Comments

### A. From what type of context did this lawsuit arise?

The history among many of the participants and litigants, many of whom were extended family members, friends, co-workers, and business associates, is lengthy and involved. In simplistic terms, what is indisputable is that all parties, including numerous attorneys with extensive family law, corporate, business, banking, and probate experience all understood that

1



Marty and Tina Haight were involved in protracted and contentious divorce litigation – and then Mr. Haight committed suicide.

Also indisputable are the following matters:

1. Marty Haight was the key figure in developing numerous emerging businesses in the roofing industry with features of regional and national presence.

2. Significant banking loans and lines of credit relating to various Haight entities and assets existed at the time of his suicide.

3. Over ten million dollars of life insurance proceeds were the subject matter of legal controversy in federal court shortly after Mr. Haight's death.

4. The sale and disposition of the Haight businesses occurred post-death.

5. Later, after the sale of the business entities was concluded, Tina Haight (the surviving spouse) and the Estate of Marty Haight filed suit against several attorneys for legal malpractice in District Court Cause No. 91058, generally complaining the attorneys were to blame for Ms. Haight and the Estate receiving insufficient value/consideration/compensation for the sale of the business entities ("the legal malpractice case").

6. In a second separate lawsuit filed after the sale was concluded, Tina Haight (the surviving spouse) and the Estate filed suit in County Court at Law No. 1 against all the purchasers of the business entities, including certain attorneys and a creditor financial institution. Upon transfer to District Court, the lawsuit was docketed as Cause No. 94402, generally complaining the purchasers, certain attorneys, and a creditor financial institution were to blame for Ms. Haight and the Estate receiving insufficient value/consideration/compensation for the sale of the business entities due to fraud, misrepresentation, conspiracy, etc. ("the fraud case").

### B. What kind of dynamics are we dealing with?

The law and the factual history involved with both lawsuits (both the fraud case and the legal malpractice case) are heavily disputed, significantly involved, and legally complex, and yet when you sue your numerous attorneys who provided you with legal advice, all the purchasers of the business entities, and a creditor financial institution including certain other attorneys – it is reasonable to ask, *What kind of dynamics are we dealing with?*

2

Perhaps some insight into addressing the preceding question is gained from reading the following excerpt from the *Order on Motion for Sanctions* dated January 10, 2017 in Cause No. 91058 (the legal malpractice case), containing an important ***spoliation instruction*** to be included within the charge to the jury:

> **"Tina Lea Haight destroyed or failed to preserve audio recordings of conversations, meetings, and other communications between her and the Palter Defendants. You must consider that this evidence would have been unfavorable to Ms. Haight on the issues of whether the Palter Defendants adequately advised or informed her regarding: the sale of the Haight Companies; the release of certain parties as part of the sale transaction; her fiduciary responsibilities as executrix; and other matters as to which she complains that she was not adequately advised or informed by the Palter Defendants."[1]**

Counsel for Plaintiffs may be quick to spot concerns with referencing within the fraud case, the spoliation instruction legally determined by court order in the legal malpractice case; however, the facts underlying the spoliation instruction are part of the overall general case context and therefore reasonable to include within this section.

In Mr. Haight's estate administration pending in Cause No. 14-E-2094 (Ellis County Court at Law No. 1), U.S. Bank filed suit in regard to a probate claim alleged to exceed $2,572,946.00. It is important to observe that the IRS refund checks are highly significant to this probate claim, as well as being highly significant to Section 5.a. of the Settlement and Mutual Release Agreement, which is a part of the subject matter of the current lawsuit (see Section II. below).

---

[1] See Page-2 of the Order on Motion for Sanctions. This significant spoliation instruction was based upon numerous evidentiary exhibits, and detailed findings of fact and conclusions of law.

3

Interestingly, we find Tina Haight at center stage with respect to the 2010 income tax refund, with the Annual Account of Administrator with Will Annexed (e-filed on July 7, 2017):

> **"The 2010 Federal income tax refund claim listed as Section 1.C.1.b. has been received by check in the amount of $1,170,337.72 payable to '… Tina L. Haight …' <u>Tina Haight declined to sign the refund claim which was signed and filed only by the Administrator, and it is unclear whether Ms. Haight will sign the refund check to allow the check to be deposited.</u>"[2]**

The same Ms. Haight who was previously removed as Administrator by the probate Judge is now, for some undisclosed reason, declining to sign for deposit a million dollar IRS refund check.

In a pleading e-filed on August 10, 2017 relating to a severance matter in Cause No. 91058 (the legal malpractice case), Counsel expresses some degree of frustration, stating:

> **"This Court granted the Koley Defendant's Motion for Summary Judgment almost a year ago. <u>That judgment has not become final because Tina Haight has done it again. She backed out of her settlement with the only remaining defendants – John Palter and his law firm – that she executed in front of a notary after consultation with her lawyers.</u>"[3]**

## C. <u>Enforcing the Release Provisions</u>

It is within this case context and among such dynamics that we find ourselves wrestling through the thicket of summary judgment matters, focusing in part upon the nature, scope, and extent of the legal protection afforded to parties by the various release provisions.

The releases were negotiated, drafted, and signed within this unique legal, financial, and interpersonal environment – an environment obviously placing all attorneys on the highest degree of awareness concerning the distrust and hostility among parties. Looking from the position of

---

[2] See Annual Account, Page-27, Paragraph – d.d. (Emphasis supplied)

[3] See Defendants Koley Jessen, P.C., Dave Dvorak, and David Mayer's Amended Motion to Sever and Enter Final Judgment, Page-1, Paragraph-2. (Emphasis supplied)

APP'X_0140

hindsight, a better financial/legal bargain may (or may not) have been achievable by the attorneys representing the sellers, but what was is clear is that the alleged transactional shortcomings/mistakes/inadequacies (if any), including the use and inclusion of strategically targeted release provisions – are the subject matter of the legal malpractice case in Cause No. 91058 (see Section I.A.5. above).

Outside the arena of major corporations and large corporate transactions, it is hard to imagine a business, corporate, and family law context better served by the use of comprehensive release provisions, calling for finality as to all possible litigation and future legal embattlement.

The sales agreement called for the exchange of materially significant consideration. Purchasers performed in all material respects and sellers enjoyed receiving the material benefit of their bargain in the form of significant consideration. In one area only involving certain U.S. Bank indebtedness (see Section II. below), the performance by both sellers and purchasers was/is ongoing, with the full enjoyment by both sides of the benefit of their bargain corresponding to and dependent upon the ongoing and reciprocal performance by both sides, in accordance with relevant provisions of the underlying contract.

Precluding any litigant from jury trial is a serious matter and should never be taken lightly. Consequently, in order to protect the right to trial by jury, we are guided by a careful and critical application of the summary judgment rules. We scrutinize the application of the summary judgment rules in favor of the non-movant, and require the movant to meet a rigorous standard.

We will not rehash the extensive and complicated case details. After reviewing several thousand pages of pleadings, exhibits, and case law I am reminded of the proverbial legal expression.....*there must be a fact issue within this voluminous summary judgment record.* Undoubtedly this trial court has identified issues of fact in the general sense, but <u>not</u> relevant fact

5

issues with respect to the specific and applicable summary judgment standards. In the final analysis, this trial court concludes that the comprehensive release provisions afford purchasers legal protection consistent with the rule of law in Texas, and should be enforced.

## II.
### U.S. Bank Indebtedness

**A.  U.S. Bank's Lawsuit in the Probate Proceeding in Relation to U.S. Bank Indebtedness**

U.S. Bank's Original Petition was e-filed within the underlying probate Cause No. 14-E-2094 pending in County Court at Law No. 1 on January 2, 2015.  By its lawsuit U.S. Bank seeks a judgment against the Estate's Administrator establishing and enforcing its "Claim" of approximately $2,572,946.08 (plus accruing interest, costs of collection, and attorneys' fees) as a matured secured claim against the Estate.[4]

The claim against the Estate arises:

1. Partly by virtue of a Continuing Guarantee (Unlimited) executed by Mr. Haight on March 30, 2012;

2. Partly by subsequent Amendment effective April 30, 2013 to the Revolving Line of Credit wherein U.S. Bank, among other matters, perfected a first-priority security interest in Mr. Haight's 2010, 2011, and 2012 income tax refunds; and

3. Partly due to an alleged default under applicable loan documents, among other matters being a failure to file Mr. Haight's 2012 federal income tax return by the October 15, 2013 double extended due date and the failure to pay the underlying note at maturity on April 30, 2014.[5]

---

[4] See U.S. Bank's Original Petition – Page 5, Paragraph 14 and Page 6, Paragraph 1.

[5] See U.S. Bank's Original Petition -- Page 3 (Paragraph 8), Page 3 (Paragraph 9), and Page 4 (Paragraph 11).

APP'X_0142

**B.** **Plaintiffs' Lawsuit Against Defendants in Relation to U.S. Bank Indebtedness**

As a part of the current lawsuit brought by Plaintiffs against Defendants, Plaintiffs sue for material breach of contract in general, and specifically for material breach of key provisions contained within the following contractual documents[6]:

1.      RRSA/Haight Settlement and Mutual Release Binding Term Sheet;

2.      Buyers' Release;

3.      Equity Purchase Agreement; and

4.      Closing Statement.

Among the various claims asserted by Plaintiffs for breach of contract, one category of claim involves breach of contract with respect to the U.S. Bank indebtedness.  Although the U.S. Bank Indebtedness is addressed in provisions contained in each of the preceding four documents, for simplicity we will focus on the Settlement and Mutual Release Agreement entered into by Tina Haight, the Estate, the Seymores, and Mr. and Mrs. Sanchez wherein the subject matter of U.S. Bank indebtedness was/is addressed *(see Settlement and Mutual Release Agreement, Section 5.a., Assumption of U.S. Bank Indebtedness)*.

This provision, which we will refer to as the *Assumption of U.S. Bank Indebtedness provision*, is complicated, but generally addresses three major points:

1.      First, it is clear that contemporaneously with the closing of the transaction the purchasers and subject companies assumed the entire U.S. Bank indebtedness.

2.      Second, the total assumed U.S. Bank indebtedness was/is subject to "reduction" in favor of purchasers and companies, with respect to certain IRS refunds for tax years 2010 and 2012.  The so-called "reduction" contemplated by the parties generally involved a post-closing transfer or payment to U.S. Bank of IRS refund proceeds, in reduction of the total outstanding indebtedness due and owing to U.S. Bank.

---

[6] Plaintiffs' Second Amended Petition – see for example Paragraph 95.

APP'X_0143

3.    Third, the parties agreed to work together in "good faith" on a post-closing basis to secure from U.S. Bank a second so-called "reduction" of indebtedness (albeit a different type of "reduction" as compared to the "reduction" described in the immediately preceding paragraph). This "reduction" of indebtedness relates to an anticipated negotiation with U.S. Bank to remove an amount of accrued default interest. In accordance with a formula described in Section 5.a. of the Assumption of U.S. Bank Indebtedness, both sides would share in the reduction of any indebtedness related to any decrease in accrued default interest.

### C. Portion of Plaintiffs' Lawsuit Involving U.S. Bank Indebtedness; Assumption of U.S. Bank Indebtedness by Purchasers; Material Breach and Summary Judgment

Integrating together Sections II.A. and II.B. above, what is indisputable is that the companies and purchasers[7] are _fully_ bound on their assumption of U.S. Bank indebtedness. Thus, when Plaintiffs assert a material breach of contract for _failure to assume_ the U.S. Bank indebtedness such as in: (i) Paragraph-72 within Plaintiffs' Second Amended Petition referencing by implication breach of all four contract documents identified in Paragraph-71 _[the same four contract documents identified in Sections II.B.1, II.B.2., II.B.3., and II.B.4 above]_; or (ii) Paragraph-99 referencing breach of the Binding Term Sheet; or (iii) Paragraph-105 referencing breach of the Buyers' Release; or (iv) Paragraph-109 referencing breach of the Purchase Agreement — — all such claims for the failure to assume U.S. Bank indebtedness are without merit, since by operation of the contractual terms itself, and as a matter of law, those certain Defendants have assumed such indebtedness and are fully bound on their assumption of U.S. Bank indebtedness.

---

[7] Within these Memorandum Rulings the term "purchasers" is sometimes used interchangeably on an informal basis with reference to those Defendants who are a part of the current Summary Judgment Briefing Schedule and who participated in the purchase of business entities from Plaintiffs/Sellers.

The lines of attack are varied, with Plaintiffs apparently seeking a general rescission of all contractual documents/agreements, including a specific targeted remedy requesting judgment from the trial court declaring the underlying buyer's release ineffective (essentially null and void) as the excerpt below from the Declaratory Judgment section of Plaintiffs' Second Amended Petition demonstrates:

> **"The Purported Buyers Release is subject to the condition precedent that the Buyer(s) assume certain indebtedness owed to U.S. Bank, the condition precedent was not met, and therefore the Purported Buyers Release does not effectively release any claims."[8]**

To the extent Ms. Haight and the Estate seek to set aside, revoke, or declare ineffective: (i) the release provision; and/or (ii) the contractual documents and agreements – by alleging material breach to-wit, failure to meet or comply with the condition precedent with respect to the assumption of U.S. Bank Indebtedness – summary judgment in favor of defendants is appropriate. In such instances the summary judgment standard has been met by Defendants.

### D.  Upon Implementation of the U.S. Bank Indebtedness Provision – What is the Actual Dollar Amount of Indebtedness Owed by Defendants to U.S. Bank?

What is problematic and unclear, and a possible subject matter for litigation between Plaintiffs and Defendants is the following:   what is the actual dollar amount of U.S. Bank Indebtedness owed by Defendants to U.S. Bank upon implementation (full or partial) of the Assumption of U.S. Bank Indebtedness provision?[9]

---

[8] See Declaratory Judgment section of Plaintiff's Second Amended Petition, Paragraph-119(viii) on Page-31.

[9] See Section II.B. above, especially with respect to major points #2 and #3 addressed within the section concerning the *Assumption of U.S. Bank Indebtedness provision.*

9

Ms. Haight and the Estate do <u>not</u> appear to specifically complain in their Second Amended Petition of post-closing breaches of contract with respect to the <u>implementation</u> of the Assumption of U.S. Bank Indebtedness provision, such as in connection with the so-called "good faith" efforts of both sides to work together following closing to negotiate with U.S. Bank a "reduction" of indebtedness relating to accrued default interest.

Within the Second Amended Petition, there appear to be no allegations concerning when/why certain IRS tax refund checks should (or should not) be provided to U.S. Bank in reduction of the indebtedness.[10]

With respect to the important legal subject matter of IRS refund checks and related financial significance, the trial court observes:

> **"The 2010 Federal income tax refund claim listed as Section 1.C.1.b. has been received by check in the amount of $1,170,337.72 payable to '... Tina L. Haight ...' <u>Tina Haight declined to sign the refund claim which was signed and filed only by the Administrator, and it is unclear whether Ms. Haight will sign the refund check to allow the check to be deposited.</u>"[11]**

Some of these matters, if contested by sellers and/or purchasers, by their very nature may tend to present fact issues, but such matters appear not to have been specifically pled by Plaintiffs. Perhaps this is because Plaintiffs have opted for what could possibly be termed an all-or-nothing approach, on the basis their goal was to set aside the releases based upon alleged material breaches of contract (see portions of Sections II.B. and II.C. above, and portions of Section II.E. below).

---

[10] See Sections II.A. and II.B. above.

[11] See Annual Account, Page-27, Paragraph – d.d. [Emphasis supplied] which was e-filed on July 7, 2017 by the Administrator within Mr. Haight's estate administration pending in Ellis County Court at Law No. 1, Cause No. 14-E-2094.

APP'X_0146

### E. **Authority to Supplement for Post-Signing/Post-Closing Contractual Claims With Respect to Implementation or Non-Implementation of U.S. Bank Indebtedness Provision Subject to Further Court Hearing; Summary Judgment Granted as to Material Breach Vis-à-vis Assumption of U.S. Bank Indebtedness by Purchasers**

With such important questions as those identified in Section II.D. above remaining open and unanswered, and in view of the lawsuit pending against the Estate in the probate proceeding (see Section II.A. above), it is a straightforward matter of judicial economy to pose the question as to whether it is legally appropriate for the trial court to authorize Administrator to exercise a thirty (30) day opportunity to supplement only their most recent petition to clearly articulate/assert all contractual claims (if any) alleged to have resulted from a breach of contract involving the implementation and/or non-implementation of the *Assumption of U.S. Bank Indebtedness provision* on a post-signing/post-closing contractual basis as discussed generally in portions of Section II.B. above and all of Section II.D. above.[12]

Conversely, the same authority would extend to Defendants as well to assert all contractual claims (if any) alleged to have resulted from a breach of contract involving the implementation and/or non-implementation of the *Assumption of U.S. Bank Indebtedness provision* on a post-signing/post-closing contractual basis.[13]

As to the legal status of the post-signing/post-closing contractual claims (if any) which are the subject matter of the preceding two paragraphs, and as to whether the trial court should grant authority to both sides to supplement – a hearing will be held within the next forty-five (45) days to consider such matters, with the hearing being separately noticed by way of document titled, *Order Setting Hearing.*

---

[12] In view of the trial court's summary judgment rulings in Section III, such post-signing/post-closing contractual claims (if any) involving the *Assumption of U.S. Bank indebtedness provision* may at some point in time be the subject of a severance.

[13] These claims too (if any) may at some point be the subject matter of a severance as expressed in Footnote-12 above.

11

As to the material breach of contract claims and associated remedies identified in portions of Section II.B. and all of Section II.C. above, including without limitation pleadings by the Estate seeking to set aside, revoke, or declare ineffective purchasers' releases and/or the various sale and purchase agreements and contractual documents – by alleging material breach to-wit, failure to meet or comply with the condition precedent with respect to the assumption of U.S. Bank Indebtedness – summary judgment is **_granted_** in favor of Defendants as against the Administrator/Estate.

The preceding summary judgment ruling is considered by the trial court to be included within the umbrella of the broader summary judgment rulings contained within Sections III.A.1.a., III.A.2.a., and III.A.3.a. below.  The trial court has set forth this ruling as a stand-alone ruling for reader convenience for two reasons.  First, the ruling is intended to complete the trial court's legal analysis developed within portions of Section II.B. above and all of Section II.C. above.  Second, the ruling helps explain/differentiate the material breach of contract claims as pled by Plaintiffs, with the post-signing/post-closing breach of contract claims (if any) discussed within Section II.D. above and the first three paragraphs within this Section II.E.  To the extent there is any conflict between this stand-alone ruling and the broader rulings contained within Sections III.A.1.a., III.A.2.a., and III.A.3.a., the broader rulings control.  Moreover, to the extent there is any conflict with the trial court's legal analysis in support of this stand-alone ruling (as presented anywhere throughout these Memorandum Rulings) and the legal analysis set forth within the Defendants' live summary judgment motions and any supplements, the legal analysis presented by the Defendants control.

12

## III.
## Primary Rulings

The trial court hereby rules in memorandum format:

### A.  Administrator vs. Corey Sanchez, the Seymores, and Five Points Bank

1.  Corey Sanchez's most current live summary judgment motion along with any supplement are *granted* as to:

    a.  All claims and causes of action asserted by the Administrator on behalf of the Estate and currently pending against Corey Sanchez.

2.  The Seymores' most current live summary judgment motion along with any supplement are *granted* as to:

    a.  All claims and causes of action asserted by the Administrator on behalf of the Estate and currently pending against the Seymores.

3.  Five Points most current live summary judgment motion along with any supplement are *granted* as to:

    a.  All claims and causes of action asserted by the Administrator on behalf of the Estate and currently pending against Five Points Bank.

4.  Regarding all pending objections to evidence and motions to strike evidence, the trial court hereby:

    a.  *Grants* all of Defendants' pending objections to evidence and motions to strike evidence as against the Administrator[14]; and

    b.  *Denies* all of the Administrator's pending objections to evidence and motions to strike evidence as against the Corey Sanchez, the Seymores, and Five Points Bank.

5.  For good cause identified and acting sua sponte – the trial court *orders* a "freeze" against the Administrator filing further amended/supplemental pleadings without leave of court, subject to the upcoming in-court hearing referenced in Section II.E. above.[15]

---

[14] Those of Corey Sanchez, the Seymores, and/or Five Points Bank.

[15] Compare to the "freeze" set forth in Section III.B.4.

13

**B.  Tina Haight vs. Corey Sanchez, the Seymores, and Five Points Bank**

1.    Subsequent to the various Defendants filing their current live summary judgment motions, the newly substituted Counsel for Tina Haight filed multiple amended petitions.  The trial court hereby *grants* the Motion of Five Points Bank for Leave to File Supplemental Summary Judgment Motion to Address Plaintiff Tina Haight's **Third** Amended Petition.

2.    For good cause identified and acting sua sponte – the trial court revises in part the preceding Section III.B.1. ruling, and *more specifically grants leave* to Five Points Bank to address Tina Haight's **Fourth** Amended Petition e-filed on June 1, 2017.

3.    For good cause identified and acting sua sponte – the trial court hereby grants leave of court and authorizes Defendants, Corey Sanchez and the Seymores, to file a supplemental summary judgment motion to address Plaintiff Tina Haight's **Fourth** Amended Petition.

4.    For good cause identified and acting sua sponte – the trial court *orders* a "freeze" against Plaintiff Tina Haight filing further amended/supplemental pleadings without leave of court.

**C.  Summary Judgment Orders and Hearing to Enter**

The trial court requires that Counsel for Corey Sanchez, the Seymores, and Five Points Bank jointly prepare all necessary summary judgment orders as is appropriate to reflect these Memorandum Rulings.[16]

Entry of the summary judgment orders will be scheduled for in-court hearing to be held within the next forty-five (45) days, with the hearing being separately noticed by way of document titled, *Order Setting Hearing*, and shall occur on the same date and at the same time as the hearing referenced in Section II.E. above.

---

[16] Due to the extensive number of causes of action and damages asserted by Plaintiff, as well as the number pleadings and summary judgment motions/supplements filed, the trial court requests an appropriate degree of specificity with respect to the summary judgment orders.  The trial court also requests an appropriate degree of specificity with respect to all objections to evidence and motions to strike.  For organizational purposes, Counsel for Defendants are encouraged to consider the propriety of either: (i) a single summary judgment document containing all relevant summary judgment orders; or (ii) multiple summary judgment documents containing all relevant summary judgment orders, but in substantially identical form.

14

## IV.
## <u>Closing Comment</u>

In closing, please allow the undersigned to express that the trial court continues to be impressed by the high quality of professionalism and excellence in legal writing, research, and advocacy on the part of all Counsel on all sides of the docket, including those who prevailed thus far and those who have not.

Signed on _____ SEP 2 5 2017 _____.

_____
Judge Presiding

15