IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* TINA HAIGHT, | § § § | |
| Plaintiffs, | § § | Civil Action No. 3:16-CV1975-S |
| V. | § § | |
| RRSA (COMMERCIAL DIVISION), LLC; ROOFING & RESTORATION SERVICES OF AMERICA, LLC; RRSA COMMERCIAL ROOFING, INC.; HAIGHT CONSTRUCTION MANAGEMENT SERVICES, INC.; COREY S. SANCHEZ; JON R. SEYMORE; JENNIFER N. SEYMORE and RONALD SCOTT NICHOLS, | § § § § § § § § § | |
| Defendants. | § § § | |

**DEFENDANTS RRSA (COMMERCIAL DIVISION), LLC; ROOFING & RESTORATION SERVICES OF AMERICA, LLC; RRSA COMMERCIAL ROOFING, INC.; HAIGHT CONSTRUCTION MANAGEMENT SERVICES, INC.; COREY S. SANCHEZ; JON R. SEYMORE; JENNIFER N. SEYMORE AND RONALD SCOTT NICHOLS'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

I.  INTRODUCTION .................................................................................................................1

II. ARGUMENT AND AUTHORITIES ...................................................................................2

    A.  Public Policy Supports Enforcing the Release ........................................................3

    B.  The Ninth Circuit's Opinions in Northrop and Hall do not Apply to the Facts of this Case ..........................................................................................................................6

    C.  The Alleged *Qui Tam* Claims are Not Future Claims .............................................8

    D.  The Alleged Regulatory Non-Compliance and Fraudulent Conduct all Occurred Prior to the Execution of the Release .......................................................................9

III. CONCLUSION ....................................................................................................................10

## TABLE OF AUTHORITIES

Page

Cases

*Dallas Gas Partners, L.P. v. Prospect Energy Corp.*,
  733 F.3d 148 (5th Cir. 2013) .................................................................................................. 9
*Fairfield Ins. Co. v. Stephens Martin Paving, LP*,
  246 S.W.3d 653 (Tex. Sup. Ct. 2008) ..................................................................................... 4
*Ford v. NYLCare Health Plans of Gulf Coast, Inc.*,
  301 F.3d 329 (5th Cir. 2002) .................................................................................................. 2
*Haight v. Koley Jessen PC, LLO*,
  No. 10-18-00057-CV, 2019 WL 2479953 (Tex. App.—Waco June 12, 2019, pet. denied) ...... 2
*Lochner v. N.Y.*,
  198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905) ..................................................................... 3
*Longhi*,
  481 F.Supp. ............................................................................................................................. 8
*Longhi*,
  481 F.Supp.2d .................................................................................................................... 5, 7
*Parker v. ClubCorp USA, Inc.*,
  No. 3:08-CV-1887-P, 2010 WL 11618392 (N.D. Tex. Oct. 25, 2010) ...................................... 9
*U.S. ex rel. Gebert v. Transp. Admin. Servs.*,
  260 F.3d 909 (8th Cir. 2001) .............................................................................................. 3, 7
*U.S. ex rel. Rabushka v. Crane Co.*,
  40 F.3d 1509 (8th Cir. 1994) .................................................................................................. 3
*U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*,
  14 F.3d 645 (D.C. Cir. 1994) .................................................................................................. 3
*United States ex rel. Bahrani v. Conagra*,
  183 F.Supp.2d 1272 (D. Colo 2002) ....................................................................................... 5
*United States ex rel. Class v. Bayada Home Health Care, Inc.*,
  CV 16-680, 2018 WL 4566157 (E.D. Pa. Sept. 24, 2018) ...................................................... 5
*United States ex rel. Hall v. Teledyne Wah Chang Albany*,
  104 F.3d 230 (9th Cir. 1997) ........................................................................................ 5, 6, 7, 8
*United States ex rel. Poteet v. Medtronic, Inc.*,
  552 F.3d 503 (6th Cir. 2009) .............................................................................................. 8, 9
*United States ex rel. Radcliffe v. Purdue Pharma L.P.*,
  600 F.3d 319 (4th Cir. 2010) .............................................................................................. 2, 5
*United States ex rel. Ritchie v. Lockheed Martin Corp.*,
  558 F.3d 1161 (10th Cir. 2009) ........................................................................................... 2, 5
*United States v. Health Possibilities, P.S.C.*,
  207 F.3d 335 (6th Cir. 2000) .................................................................................................. 5
*United States v. Northrop Corporation*,
  59 F.3d 953 (9th Cir. 1995) ............................................................................................ 5, 6, 7
*Weeks v. Green Tree Servs. LLC*,
  No. 4:15-cv-00588, 2017 WL 4325797 (N.D. Tex. Sept. 11, 2017) ........................................ 4

The RRSA Defendants[1] file this Reply to Relator's Response to Defendants' Motion to Dismiss First Amended Complaint ("Relator's Response"), and would respectfully show the Court as follows.

## I. INTRODUCTION

Stripped down, Relator's argument is that an owner of a company, who is aware of alleged *qui tam* violations, and who owns the company while the alleged *qui tam* violations take place, and profits from the alleged *qui tam* violations, can turn around and sell the company and then subsequently assert a *qui tam* claim against the new owners.[2] As illogical as this may seem, there is more. In this case, not only did the Relator own the company when the alleged violations took place, she expressly agreed not to assert any claims against the purchasers. Permitting this action to proceed would be a gross injustice and the Court should, therefore, grant this Motion to Dismiss.

In Relator's Response, she entirely ignores the undisputed fact that she owned the Business Defendants at the time these companies were supposedly committing the alleged wrongdoings she alleges in her First Amended Complaint. (App'x_000007-08, ¶¶29-30, Plaintiff Tina L. Haight's Fourth Amended Petition). Put simply, but for the sale of the Business Defendants to Corey Sanchez, Jennifer Seymore and Jon Seymore, Relator would be the defendant in this *qui tam* action. As a part of the sale of the Business Defendants, Relator released the RRSA Defendants from the very claims asserted in her *qui tam* action. Despite Relator's assertion that the validity of the operative documents is a matter "that remain pending in other courts," the Settlement

---

[1] Unless otherwise specified herein, all defined terms will have the same meaning as defined in Defendants RRSA (Commercial Division), LLC; Roofing & Restoration Services of America, LLC; RRSA Commercial Roofing, Inc.; Haight Construction Management Services, Inc.; Turco Construction, Inc.; Andrew's Roofing & Restoration; Corey S. Sanchez; Jon R. Seymore; Jennifer N. Seymore and Ronald Scott Nichols's Motion to Dismiss First Amended Complaint and Memorandum of Law in Support of Motion to Dismiss (Doc. 115).

[2] The RRSA Defendants vehemently deny all allegations in Plaintiff-Relator Tina Haight's First Amended Complaint, and any discussion contained herein related to liability for Relator's asserted claims are merely for purposes of illustration, and do not constitute an admission on behalf of the RRSA Defendants that liability does, in fact, exist under any of the claims asserted in the First Amended Complaint.

Agreement has recently been upheld as valid and enforceable by the Texas Tenth Court of Appeals, Waco, Texas, and there is no other avenue for Relator to appeal that decision. *See Haight v. Koley Jessen PC, LLO*, No. 10-18-00057-CV, 2019 WL 2479953, at *4 (Tex. App.—Waco June 12, 2019, pet. denied). As a result, Relator does not have standing as a *qui tam* plaintiff.

Relator questions the timing of the RRSA Defendants' Motion to Dismiss Relator's First Amended Complaint in both Relator's Response (Doc. 132, at 5) and Relator's Motion for Temporary Stay (Doc. 138, at 2 ¶6). As an initial matter, standing is a jurisdictional requirement and can be raised at any time, *see Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 334 (5th Cir. 2002), the Final Mandate affirming the validity of the Release was issued on April 7, 2020. (App'x_000001). At that time, the parties were awaiting the Court's ruling on the RRSA Defendants' Motion to Dismiss the Original Complaint. The Court's ruling was issued on October 20, 2020, which gave Relator the right to amend her Complaint. (Doc. 80). Plaintiff's First Amended Complaint was filed on December 18, 2020, giving the RRSA Defendants the first opportunity to raise the standing issue affirmed by the Texas Tenth Circuit of Appeals in April of 2020.

**II.    ARGUMENT AND AUTHORITIES**

Relator acknowledges that the applicable standard to determine the enforceability of a release executed pre-filing of a *qui tam* action bars subsequent *qui tam* claims is whether (1) the release can be fairly interpreted to encompass *qui tam* claims and (2) public policy does not otherwise outweigh enforcement of the release. (Doc. 132, at 8); *see also United States ex rel. Radcliffe v. Purdue Pharma L.P.*, 600 F.3d 319, 329 (4th Cir. 2010); *United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1167–68 (10th Cir. 2009). In addition, Relator concedes that the first prong has been established here – namely, that the Settlement Agreement does, in fact, fairly encompass *qui tam* claims. Instead, Relator argues the second prong is not met because

the government was unaware of potential FCA claims before Relator executed the release. (Doc. 132, at 8-10). However, the case law cited by Relator is not applicable to the facts present in this case. Further, noticeably absent from Relator's argument is the fact that case law additionally indicates that "[t]he history of the *qui tam* provisions has largely been one of '[s]eeking the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and *discouragement of opportunistic plaintiffs*[.]'" *U.S. ex rel. Rabushka v. Crane Co.*, 40 F.3d 1509, 1519 (8th Cir. 1994) (emphasis added) (citing *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994)). Public policy is not meant to protect someone like the Relator who, prior to coming forward with knowledge of alleged fraud, first sold the Business Defendants to an unsuspecting buyer and profited in an amount nearing $30 million. In sum, Relator does not deserve the protections of the FCA and the Release should be enforced.

      A.      **Public Policy Supports Enforcing the Release.**

The RRSA Defendants agree that, when evaluating whether public policy merits enforcing the Settlement Agreement and Release in this case, this Court must consider not only the effect of enforcement on Relator's case, but on that of all future relators, as well as would-be purchasers of businesses who execute and rely upon representations and releases such as the ones executed by the parties in this case, which contractually prohibit Relator from bringing the claims asserted in this matter. "The right of parties to contract is fundamental, *see, e.g.*, *Lochner v. N.Y.*, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905), and the agreement therefore carries with it a strong presumption of enforceability." *U.S. ex rel. Gebert v. Transp. Admin. Servs.*, 260 F.3d 909, 916–17 (8th Cir. 2001) (affirming decision barring *qui tam* claim pursuant to principles of standing, settlement and release, and judicial estoppel). In addition, Texas has a strong public policy in

favor of the freedom to contract.[3] *See Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 664 (Tex. Sup. Ct. 2008). Likewise, the "indispensable partner" to the freedom to contract is contract enforcement. *See id.*

Relator's representations and warranties that there were no further encumbrances or charges against the Company that existed at the time she signed the Settlement and Purchase Agreements were a material term of the Purchase Agreement. (App'x_000036, Declaration of Corey S. Sanchez, ¶¶ 9, 12, 14; Doc. 122-1, App'x_0026-28). Further, two additional material terms to the Settlement Agreement were that Mr. Sanchez, Ms. Seymore, Mr. Seymore and the other RRSA Defendants would be released from any and all claims related to the matters settled, and Relator would not participate in any further litigation involving the Business Defendants. (App'x_000037, Declaration of Corey S. Sanchez, ¶¶ 11-12; Doc. 122, App'x_0016). The Settlement Agreement and Purchase Agreement clearly indicate that the Parties wished to go their separate ways forever. (App'x_000037, Declaration of Corey S. Sanchez, ¶ 9). Instead, the RRSA Defendants have been the victims of a seven-year campaign of systematic protracted litigation perpetrated by the Relator. Not enforcing the Settlement Agreement in this case would strip the RRSA Defendants of the entire benefit of the contract, while allowing Relator to keep the millions of dollars she received as a result of the contract and at the same time, escape her contractual obligations. (App'x_000037, Declaration of Corey S. Sanchez, ¶ 14). Such result would constitute a material breach of the Settlement Agreement. *See Weeks v. Green Tree Servs. LLC*, No. 4:15-cv-00588, 2017 WL 4325797, at *7 (N.D. Tex. Sept. 11, 2017) ("A breach is material if the injured party does not receive the substantial benefit of the bargain under the contract.").

---

[3] Texas law governs the Settlement Agreement. (Doc. 122, App'x_0118).

4

Nearly all the cases relied upon in Relator's Reply involve a former employee of the defendant who signed a release as a part of his or her termination after disclosing the fraud against his or her employer. *See United States v. Purdue Pharma L.P.*, 600 F.3d 319, 322 (4th Cir. 2010); *United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1164 (10th Cir. 2009); *United States ex rel. Bahrani v. Conagra*, 183 F.Supp.2d 1272, 1274 (D. Colo 2002); *United States ex rel. Hall v. Teledyne Wah Chang Albany*, 104 F.3d 230, 231 (9th Cir. 1997); *United States v. Northrop Corporation*, 59 F.3d 953, 956 (9th Cir. 1995); *United States ex rel. Class v. Bayada Home Health Care, Inc.*, CV 16-680, 2018 WL 4566157, at *1 (E.D. Pa. Sept. 24, 2018). Those are not the facts present here, and accordingly, different public policy considerations should be applied. Indeed, in Relator's reply she states, "[i]t is in the public interest to protect the federal treasury and ensure the integrity and honesty of those receiving government funds." (Doc. 132, at 10 (citing *Longhi*, 481 F.Supp.2d at 818)). Pursuant to the undisputed facts, it was Relator who was receiving the government funds at the time the alleged fraud occurred. (App'x_000007-08, ¶¶29-30, Plaintiff Tina L. Haight's Fourth Amended Petition; *see* First Amended Complaint, ¶185 (Ex.J)). Therefore, in order to "protect the federal treasury from fraud," the release must be enforced against the party who received the government funds – in this case, the Relator. Such result is consistent with the case law cited by Relator, which enforce the settlement agreement against the party who received the government funds. *See Conagra*, 183 F.Supp.2d at 1278; *Northrop Corp.*, 59 F.3d at 963; *Bayada Home Health Care, Inc.*, 2018 WL 4566157, at *11.

The underlying purpose of the FCA is to "vindicate civic interests in avoiding fraud against public monies," not to serve the "parochial" or economic interests of relators. *See United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 340–42 (6th Cir. 2000). Failing to enforce a release entered into by the owner of a company at the time the alleged "fraud against public monies"

5

occurred does not "vindicate civic interests," but instead promotes the "economic interests of relators" by allowing those potentially guilty of fraud on the United States to insulate themselves from the reach of the FCA by duping unsuspecting buyers. Such result would directly contradict the purpose of the FCA. When considering the specific facts of this case, public policy does not outweigh enforcement of the Release. Defendants' Motion to Dismiss must be granted.

### B. The Ninth Circuit's Opinions in *Northrop* and *Hall* do not Apply to the Facts of this Case.

Relator argues that a "contrasting pair of Ninth Circuit cases clearly explain why the purported Release is unenforceable." (Doc. 132, at 12). Both of these cases fall squarely within the fact scenario cited above, involving a former employee of the defendant who signed a release as a part of his or her termination after disclosing the fraud against his or her employer. *See Northrop Corp.*, 59 F.3d at 956; *Hall*, 104 F.3d at 231. *Northrop* involved employee Michael Green ("Green") who, while employed at Northrop, discovered that Northrop had double-charged the U.S. Air Force for equipment purchased for the B-2 Bomber program. *See Northrop Corp.*, 59 F.3d at 956. Green filed a complaint in the California Superior Court against Northrop alleging he was discharged for having brought this information to the attention of certain Northrop officials. *See id.* Northrop and Green eventually settled the lawsuit, and entered into a "Settlement Agreement and General Release," in which Green agreed to release and forever discharge Northrop for all claims "arising out of or relating to the [lawsuit] and/or Green's employment with and separation from Northrop." *Id.*

Subsequent to the lawsuit being settled, Green filed a complaint under the *qui tam* provisions of the False Claims Act. *See id.* The District Court entered summary judgment in favor of Northrop, and others, on the basis Green did not have standing. The Ninth Circuit reversed, but focused on the fact a would-be relator would be more incentivized to settle the claim prior to filing

6

a *qui tam* suit, in which case the government would "retain the lion's share of the proceeds." *Id.* at 965-66. *Hall* is based upon similar facts. Christopher Hall ("Hall") worked as an engineer for Teledyne Wan Chang Albany ("Teledyne") from 1978 to 1991. *See Hall*, 104 F.3d 230, 231 (9th Cir. 1997). While employed, Hall voiced concerns that tubeshells Teledyne sold to the U.S. Government did not possess the certified corrosion resistance. *See id.* Thereafter, Teledyne fired Hall and Hall initiated a state court action against Teledyne, alleging, among other claims, retaliatory termination for his whistleblowing related to the defective tubeshells. *See id.* at 232. Teledyne and Hall settled the lawsuit, and executed a broadly worded release that Teledyne argued encompassed the subsequently filed *qui tam* action by Hall. Therefore, both *Northrop* and *Hall* involved releases that were executed in the context of a pending lawsuit, involving the plaintiff's termination of employment from the defendant.

However, the Settlement Agreement in this case was executed as a part of the purchase of the Business Defendants by Corey Sanchez, Jennifer Seymore and Jon Seymore from the Relator, and therefore, the Ninth Circuit's analysis in both *Northrop* and *Hall* does not apply. Indeed, other courts have declined to follow *Northrop* in different contexts. *See, e.g., United States ex rel. Gebert v. Transport Admin. Servs.*, 260 F.3d 909, 916 (8th Cir. 2001) ("[T]he *Northrop* court emphasized the point that enforcing the settlement agreement would provide a potential relator every incentive to settle out-of-court instead of bringing a *qui tam* claim. We find this argument has little application to a settlement agreement entered into in a bankruptcy proceeding."). Further, the Ninth Circuit's decisions in *Northrop* and *Hall* "must be regarded merely as data points on the broad spectrum of the *Rumery* federal common law test." *United States ex rel. Longhi v. Lithium Power Tech.*, 481 F.Supp.2d 815, 820 (S.D. Tex. 2007). The facts of this case merit further analysis than simply deciding the public policy prong on whether the Government was aware of

the alleged fraud prior to the execution of the release. Neither *Northrop* or *Hall*, nor any other case cited in Relator's Reply, involve a release whereby the releasing party **would have been the defendant in the qui tam suit** but for the release. Further, the Release in this case was executed as a part of a business transaction worth nearly $30 million, not as a part of a separate lawsuit (App'x_000036-37, Declaration of Corey S. Sanchez, ¶¶ 7-14).

The Ninth's Circuit's refusal to enforce the release in *Green* turned on the "public interest in learning about claims of government contractor fraud[.]" *Hall*, 104 F.3d at 233. However, this public interest should not be taken so far as to permit a would-be defendant to turn into a *qui tam* realtor. Relator is not the kind of person the FCA seeks to "empower and shelter," but instead she is like the "opportunistic plaintiff" coming forward with alleged fraud only after she profited in the amount nearing $30 million. *See Longhi*, 481 F.Supp. at 821; *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 507 (6th Cir. 2009).

### C. The Alleged *Qui Tam* Claims are Not Future Claims.

The Release included "any and all manner of actions" that "arise out of or are in anyway related to the Disputes, the Relationship, the Equity." (Doc. 122, App'x_0013). The "Disputes" include anything relating to the operation of the Companies, including the Business Defendants. *See id*. Relator attempts to argue that because Relator was allegedly unaware of the *qui tam* claims in 2014, the Disputes had not "arisen" and are therefore not encompassed by the Settlement Agreement or Release. (Doc. 132, at 15). However, the Release includes claims "known or unknown" at the time of its execution. (Doc. 122, App'x_0013). Relator's claims in this action involve the operational activities of the Business Defendants that occurred prior to the execution of the Settlement Agreement. (Doc. 104, First Amended Complaint, ¶¶166-68, 172, 182-85 (Ex. J), 196-97, 212-15 (Ex. L), 226, 228-33, 244, 250-51). Therefore, whether Relator was aware of

8

the *qui tam* claims in 2014 is irrelevant, and the claims asserted in the First Amended Complaint fall squarely within the Release

Finally, the case law cited by Plaintiff in support of her proposition that "parties cannot prospectively release claims for intentional torts" are inapposite, as again, Relator's claims in this action involve activities that occurred **prior to** the execution of the Settlement Agreement. *See id*.[4] Furthermore, Relator's argument completely ignores the fact that Relator also executed a Covenant Prohibiting Other Actions that does not release future claims, but bars Relator from "participat[ing] in, assist[ing] with, submit[ing], fil[ing] or permit[ing] to be filed on their behalf any claim or lawsuit related to the Disputes." (Doc. 122, App'x_0016). *See, e.g.*, *Dallas Gas Partners, L.P. v. Prospect Energy Corp.*, 733 F.3d 148, 158 (5th Cir. 2013) (upholding finding of liability based on breach of release and covenant not to sue); *Parker v. ClubCorp USA, Inc.*, No. 3:08-CV-1887-P, 2010 WL 11618392, at *2 (N.D. Tex. Oct. 25, 2010) (finding release and covenant not to sue enforceable). Relator's claims are barred by the Release and Covenant Prohibiting Other Actions and Defendants' Motion to Dismiss must be granted.

### D. The Alleged Regulatory Non-Compliance and Fraudulent Conduct all Occurred Prior to the Execution of the Release.

Relator's sole allegation that any regulatory non-compliance occurred after the execution of the Release is Exhibit A to the First Amended Complaint, which purportedly shows that RRSA (Commercial) certified on the SAM registry that it was a small business. *See* Relator's Response, p.14 (Doc 132, at 18 (citing Doc. 104, ¶119-120, Doc. 104-1, at 61)). However, Exhibit A is inconsistent with the RRSA (Commercial)'s Federal Acquisition Regulation Report from RRSA

---

[4] Although the First Amended Complaint alleges wrongdoing "from at least 2011 to the present" (Doc. 104, ¶265), the specific allegations of fraud relate to contracts entered into prior to December 2013. (Doc. 104, ¶185, Ex. J; *see also* ¶¶166-68, 172, 182-84, 196-97, 212-15 (Ex. L), 226, 228-33, 244, 250-51). In the event this Court finds that any of Relator's Claims relate to activities after the execution of the Release, those claims that relate to activities prior to June 6, 2014, should be dismissed due to Relator's lack of Article III standing.

9

(Commercial)'s SAM account dated January 24, 2018. (Doc. 123-1, at 22, Declaration of Jon R. Seymore in Opposition to Plaintiff-Relator Tina Haight's Motion to Compel, ¶6, Doc. 123-1, at 29). Relator further argues that "[t]he first Amended Petition also contains allegations of false statements and a fraudulent course of conduct" outside the SAM certifications. *See* Relator's Response, p. 14 (Doc. 132, at 18). However, the allegations cited by Relator related to conduct prior to the execution of the Release,[5] and thus Relator lacks standing to assert these claims. Defendants' Motion to Dismiss must be granted.

## III. CONCLUSION

Based on the foregoing, as well as those arguments and authorities set forth in Defendants RRSA (Commercial Division), LLC; Roofing & Restoration Services of America, LLC; RRSA Commercial Roofing, Inc.; Haight Construction Management Services, Inc.; Corey S. Sanchez; Jon R. Seymore; Jennifer N. Seymore and Ronald Scott Nichols' Motion to Dismiss Relator Tina Haight's First Amended Complaint, Defendants respectfully request that their Motion to Dismiss be granted.

---

[5] Again, in the event this Court finds that any of Relator's Claims relate to activities after the execution of the Release, those claims that relate to activities prior to June 6, 2014, should be dismissed due to Relator's lack of Article III standing.

Dated: March 22, 2021

Respectfully submitted,

**DVORAK LAW GROUP, LLC**

By: */s/ Gretchen L. McGill*
    Heather S. Anson (*pro hac vice*)
    hvoegele@ddlawgroup.com
    Gretchen L. McGill (*pro hac vice*)
    gmcgill@ddlawgroup.com
9500 W. Dodge Rd., Ste. 100
Omaha, NE 68132
Telephone: (402) 934-4770
Telecopier: (402) 933-9630

and

**BELL NUNNALLY & MARTIN LLP**

    Christopher B. Trowbridge
    Texas State Bar No. 24008182
    christophert@bellnunnally.com
    Benjamin L. Riemer
    Texas State Bar No. 24065976
    briemer@bellnunnally.com
3232 McKinney Avenue
Dallas, Texas 75204
Telephone: (214) 740-1400
Telecopier: (214) 740-1499

**ATTORNEYS FOR DEFENDANTS RRSA (COMMERCIAL DIVISION), LLC; ROOFING & RESTORATION SERVICES OF AMERICA, LLC; RRSA COMMERCIAL ROOFING, INC.; HAIGHT CONSTRUCTION MANAGEMENT SERVICES, INC.; COREY S. SANCHEZ; JON R. SEYMORE; JENNIFER N. SEYMORE AND RONALD SCOTT NICHOLS.**

## CERTIFICATE OF SERVICE

   I hereby certify that on March 22, 2021, a true and correct copy of the foregoing document was served upon all counsel of record via the Court's CM/ECF filing system as indicated below:

| | |
|---|---|
| Darren P. Nicholson<br>Mallory Biblo<br>Burns Charest, LLP<br>900 Jackson Street, Suite 500<br>Dallas, TX  75202<br>dnicholson@burnscharest.com<br>mbiblo@burnscharest.com | Christopher A. Payne<br>Christina Alstrin<br>Payne Alstrin, PLLC<br>9101 LBJ Freeway, Suite 760<br>Dallas, TX  75243<br>Chris.Payne@Payne-Alstrin.com<br>Christina.Alstrin@Payne-Alstrin.com |

Gene R. Besen
Samuel T. Acker
Bradley Arant Boult Cummings LLP
4400 Renaissance Tower
1201 Elm Street
Dallas, TX  75270
gbesen@bradley.com
sacker@bradley.com

                 */s/ Gretchen L. McGill*
                 Gretchen L. McGill