IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* TINA HAIGHT, <br><br> Plaintiffs, <br><br> v. <br><br> RRSA (COMMERCIAL DIVISION), LLC, *et al.,* <br><br> Defendants. | Civil Action No. 3:16-CV-1975-S |

**UNITED STATES OF AMERICA'S**
**STATEMENT OF INTEREST**

Prefiling releases of False Claims Act *qui tam* actions are presumptively unenforceable because they are "against public policy." *See United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 474 (5th Cir. 2009). Enforcing such agreements without qualification would undermine a core purpose of the FCA, namely, to induce relators to bring allegations of fraud to the attention of the government. Thus, FCA releases should be enforced only if the relator's allegations of fraud are disclosed to the government independent of the filing of the *qui tam*. That rule protects the government's enforcement prerogatives, encourages parties to bring allegations of fraud to the government's attention, and is consistent with the federal policy favoring settlements.

**I.     Federal common law governs enforcement of prefiling releases of FCA claims.**

United States of America's Statement of Interest - Page 1

The FCA does not explicitly address whether a release of a *qui tam* action executed before the filing of that action is enforceable.  The statute does provide that after a *qui tam* action is filed the relator and the defendant may not settle (or at least may not voluntarily dismiss) an FCA qui tam action without the government's consent.  *See* 31 U.S.C. § 3730(b)(1); *Searcy v. Philips Elecs. N. Am. Corp.*, 117 F.3d 154, 155 (5th Cir. 1997).  But no provision addresses whether a prefiling release is enforceable.

Absent a specific provision addressing whether a release of a federal cause of action is enforceable, "[t]he question whether the policies underlying that statute may in some circumstances render the waiver unenforceable is a question of federal law." *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987).  More specifically, it is a question of "[f]ederal common law," which "may supplant state law . . .  when 'a significant conflict exists between [a] federal policy or interest and the operation of state law, or the application of state law would frustrate specific objectives of federal legislation.'" *United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1168 (10th Cir. 2009) (quoting *Boyle v. United Technologies Corp.*, 487 U.S. 500, 507 (1988)).  The Fifth Circuit has held that the federal common law test articulated by the Supreme Court in *Rumery* "establishes the framework for determining whether public policy prevents enforcement of [a] release and indemnification in the limited context of [a] *qui tam* case." *Longhi*, 575 F.3d at 474.  In this regard, federal common law instructs that the Court evaluate whether enforcing a release impairs the purposes of the FCA, and not apply a more general federal common law rule favoring the enforcement of contracts, or Texas state contract law.

**United States of America's Statement of Interest - Page 2**

## II.     Prefiling releases of FCA claims are presumptively unenforceable.

Congress' purpose in passing the FCA—to encourage whistleblowers to disclose fraud to the government—supports the Government's position that a prefiling *qui tam* release should only be enforced if the allegations of fraud were previously disclosed to the government.  The FCA's core purpose is to enlist relators to help the government to "encourage any individual knowing of Government fraud to bring that information forward." S. Rep. 99-345, at 2 (1986).  It contemplates that relators will do so by providing the government with notice of their allegations and an opportunity to proceed against the potential defendant.  One of the relator's obligations upon filing a *qui tam* action, for example, is to serve on the government a "copy of the complaint and written disclosure of substantially all material evidence and information the person possesses" related to the relator's claims.  31 U.S.C. § 3730(b)(2).  Similarly, a relator can be an "original source" of information underlying an FCA action - and thus eligible to bring a *qui tam* action arising out of publicly disclosed fraud allegations - if she has "voluntarily provided" to the government "the information" on which the *qui tam* lawsuit is based.  Id. § 3730(e)(4)(B).  Those provisions make clear that a central purpose of the FCA is to ensure that relators' allegations of fraud come to the government's attention and enable the government to determine whether to take enforcement action itself.

This basic purpose would be frustrated if relators and potential defendants could release *qui tam* claims without disclosing allegations of fraud to the government.  *See Green*, 59 F.3d at 965-66.  That unqualified rule would encourage defendants to buy the silence of relators by offering settlement payments in amounts less than what the

defendant would be required to pay the government in any *qui tam* action (or in any independent government lawsuit). *See id.*; *see also United States ex rel. Gebert v. Transp. Admin. Servs.*, 260 F.3d 909, 916 (8th Cir. 2001). Such settlements, if categorically enforced, would deter subsequent *qui tam* actions by relators, and the resulting disclosure of relators' allegations of fraud to the government, permitting defendants to evade independent government scrutiny of those allegations. That result would be inconsistent with the FCA, which contemplates that the government will have an independent opportunity to enforce the FCA and related antifraud provisions - through criminal or civil action - when a relator comes forward with allegations of fraud.

In fact, the United States has consistently asserted that such releases are unenforceable unless the government has knowledge of the fraud. The government has articulated that view in *amicus* briefs in the Tenth and Fourth circuits. In both cases, the Court agreed with the government's position and held the same. *See Richie*, 558 F.3d 1170; *United States v. Purdue Pharma, Inc.*, 600 F.3d 319, 327 (4th Cir. 2010). In each instance, the government took the position that the key touchstone concerning the enforceability of the release of an FCA claim was prior government knowledge of the facts and circumstances surrounding the alleged fraud.

**III.    Enforcing prefiling releases in FCA actions "would ignore the policy objectives expressly spelled out by Congress in the FCA."[1]**

*Qui tam* actions possess a public character that differs in kind from other federal causes of action. Most fundamentally, a *qui tam* relator asserts a fraud cause of action

---

[1] *Longhi*, 575 F.3d at 474.

that belongs to the government, not merely a cause of action personal to herself.  When a relator prevails, the government is entitled to the bulk of the recovery; indeed, a relator has standing to bring such an action at all only because a *qui tam* action is considered a partial assignment to a relator of a government cause of action.  *See Vermont  Agency of Nat'l Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000).

In *Rumery*, "the Supreme Court held that 'a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by the enforcement of the agreement.'" *Longhi*, 575 F.3d at 474 (quoting *Rumery,* 480 U.S. at 392, 107 S.Ct. 1187). In *qui tam* cases involving purported releases by a relator, the "public policy interest implicated . . . is the ability of the Government to obtain information from relators it could not otherwise obtain."  In other words, the public policy analysis in the *qui tam* context is not a free ranging review of the circumstances of the parties or their case, but rests on Congress' articulation of the public interests at stake in the form of the FCA.  As the Fifth Circuit stated in *Longhi*, "[i]t is in the Government's best interest to gain full information from the relator[,]" and to enforce a release in the context of qui tam litigation "would ignore the public policy objectives expressly spelled out by Congress in the FCA and would provide disincentives to future relators."

In *Longhi*, the Fifth Circuit affirmed a district court's ruling not to enforce a release by a *qui tam* relator on similar grounds.  While that relator only executed a release after filing the qui tam complaint—thus implicating the statutory bar in the FCA against such settlements and releases—the Fifth Circuit went out of its way to note that the release was also unenforceable on public policy grounds under *Rumery*.  The Fifth Circuit

**United States of America's Statement of Interest - Page 5**

joined its sister circuits in holding that the relevant public policy consideration has been "expressly spelled out by Congress" in the FCA—that whistleblowers must be permitted to report fraud unknown to the Government.

In contrast, Defendants seem to argue for a case by case public policy analysis based on the unique facts and circumstances of each case—and each relator. *See, generally*, (Doc. 141) at 7-8. As a result, Defendants have urged the Court to consider Relator's business relationship with Defendants (*see* Doc. 141 at 7), and whether Relator could have been a potential defendant in an FCA action under different circumstances (Doc. 141 at 7-8). In addition to undermining Congress' intent in passing the FCA and deviating from the extant case law, this newly proffered standard would also result in the government and the taxpayer suffering due to the alleged failings of individual whistleblowers. Rather than holding relators accountable for their alleged malfeasance—something expressly contemplated by the FCA itself[2]—Defendants would prevent the government from learning about and investigating fraud on the public fisc due to a relator's allegedly unclean hands. Defendants' novel approach runs counter to the language and purpose of the FCA, case law, and public policy. It should be rejected.

**IV.    Here, the government only learned of the alleged fraud after the filing of the *qui tam* action.**

---

[2] For example, to name a few mechanisms permitted by the FCA by which a relator's conduct can be addressed: 1) the government retains the right to dismiss an FCA action notwithstanding the objections of the person initiating the case (31 U.S.C. § 3730(c)(2)(A)); 2) the statute permits a reduction of relator's share if a relator is found to have planned or initiated a violation (31 U.S.C. § 3730(d)(3)); 3) a person convicted for criminal activity related to a claim is to be dismissed from the action and not share in any recovery (31 U.S.C. §§ 3730(d)(3)); and 4) a relator's share of any recovery can be reduced under 31 U.S.C. § 3730(d) in consideration of a variety of factors.

Here, the government has records of communication with Relator's counsel from June 2016. Those records indicate that a prior telephone call occurred as well, although the prior date of that call cannot be ascertained. Relator has represented in her pleading that this call occurred in January 2016. While the government cannot confirm that date, it also does not dispute it. There was no existing investigation of the alleged fraudulent conduct by the Defendants at that time. In fact, the government did not have an opportunity to investigate such claims until the Relator provided her Disclosure Statement to the United States Attorney's Office on June 30, 2016.

Respectfully submitted,

PRERAK SHAH
ACTING UNITED STATES ATTORNEY

*Clay R. Mahaffey*
CLAY R. MAHAFFEY
Assistant United States Attorney
Wyoming State Bar No. 6-3355
United States Attorney's Office
801 Cherry Street, Unit 4
Burnette Plaza, Suite 1700
Fort Worth, Texas 76102
Telephone: 817-252-8600
Facsimile: 817-252-5458
Email: clay.mahaffey@usdoj.gov

Attorneys for the United States

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2021, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the Electronic Case Filing System of the Court. I hereby certify that I have

served all counsel and parties of record electronically or by another manner authorized by Federal Rule of Procedure 5(b)(2).

*Clay R. Mahaffey*
Clay R. Mahaffey
Assistant United States Attorney