**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* TINA HAIGHT<br><br>                Plaintiff-Relator,<br><br>v.<br><br>RRSA (COMMERCIAL DIVISION), LLC, *et al.*,<br><br>                Defendants. | Civil Action No. 3:16-cv-1975-S |

**DEFENDANTS RRSA (COMMERCIAL DIVISION), LLC; ROOFING &
RESTORATION SERVICES OF AMERICA, LLC; RRSA COMMERCIAL ROOFING,
INC.; HAIGHT CONSTRUCTION MANAGEMENT SERVICES, INC.; COREY S.
SANCHEZ; JON R. SEYMORE; JENNIFER N. SEYMORE AND RONALD SCOTT
NICHOLS' OPPOSITION TO RELATOR'S MOTION AND BRIEF TO ENFORCE THE
SETTLEMENT TERM SHEET, FOR ENTRY OF JUDGMENT, AND FOR EXPEDITED
CONSIDERATION**

## **<u>TABLE OF CONTENTS</u>**

**Page**

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

BACKGROUND ............................................................................................................... 2

ARGUMENT ..................................................................................................................... 8

    I.      RELATOR HAS BREACHED THE TERM SHEET. ......................................... 8

    II.     RELATOR'S BREACH IS MATERIAL. ........................................................... 13

    III.    IN THE EVENT THE COURT ENFORCES THE TERM SHEET, RELATOR IS NOT ENTITLED TO INTEREST IN ACCORDANCE WITH 28 U.S.C. § 1961. ..................................................................................... 13

CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Campbell v. Fort Worth & W. R.R.*, No. 4:09-CV-037-Y, 2010 U.S. Dist. LEXIS 161794,
    at *6 (N.D. Tex. Mar. 24, 2010) ..................................................................... 12

*Case Corp. v. Hi-Class Bus. Sys. Of Am., Inc.*, 184 S.W.3d 760 (Tex. App.—Dallas 2005,
    *pet denied*) ................................................................................................. 9

*Cox v. PHH Mortg. Corp.*, No. 4:13-CV-919-O, 2014 U.S. Dist. LEXIS 113962, at *17
    (N.D. Tex. June 20, 2014) ............................................................................ 9

*E. Energy, Inc. v. unico Oil & Gas, Inc.*, 861 F.2d 1379, 1380 (5th Cir. 1988) ........................... 8

*Gray & Co. Realtors, Inc. v. Atl. Hous. Found., Inc.*, 228 S.W.3d 431 (Tex. App.--Dallas
    2007, *no pet.*) ............................................................................................. 12

*Gulf Pipe Line Co. v. Nearen*, 135 Tex. 50, 138 S.W.2d 1065 (Tex. 1940) ............................... 14

*Henderson v. Wells Fargo Bank, N.A.*, 974 F. Supp. 2d 993 (N.D. Tex. 2013) .......................... 13

*Howell v. Citimortgage, Inc.*, Civil Action No. 4:16-cv-00943-O-BP, 2016 U.S. Dist.
    LEXIS 181200, at *8-9 (N.D. Tex. Dec. 8, 2016) ........................................... 13

*In re Deepwater Horizon*, 786 F.3d 344 (5th Cir. 2015) ................................................... 8

*In re Serv. Corp. Int'l*, 355 S.W.3d 655 (Tex. 2011) ...................................................... 12

*Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195 (Tex. 2004) (*per curiam*) .......... 13

*Sundown Energy, L.P. v. Haller*, 773 F.3d 606 (5th Cir. 2014) ...................................... 8

*Taylor v. Henny*, No. 01-14-00650-CV, 2016 Tex. App. LEXIS 3622, at *13 (Tex. App.
    Apr. 7, 2016) ............................................................................................. 12

*Water Dynamics, Ltd. v. HSBC Bank USA, Nat. Ass'n*, 509 F. App'x 367 (5th Cir. 2013) ......... 13

**Statutes**

28 U.S.C. § 1961 ................................................................................................. 14

**Other Authorities**

*Meriam-Webster Dictionary*, https://www.merriam-
    webster.com/dictionary/expeditious#:~:text=adjective,or%20acting%20with%20p
    rompt%20efficiency .................................................................................. 12

ii

Defendants RRSA (Commercial Division), LLC; Roofing & Restoration Services of America, LLC; RRSA Commercial Roofing, Inc.; Haight Construction Management Services, Inc.; Corey S. Sanchez; Jon R. Seymore; Jennifer N. Seymore; and Ronald Scott Nichols (collectively, "Defendants") hereby file this Opposition to Relator's Motion and Brief to Enforce the Settlement Term Sheet, for Entry of Judgment, and for Expedited Consideration (Doc. 301) ("Motion to Enforce").

## BACKGROUND

As this Court is well aware, Defendants' Opposition to the Motion to Enforce is based on their contention that Relator has breached the Settlement Term Sheet (the "Term Sheet"). Defendants' contention is not only based on Relator's conduct the past seven months in which she has undisputedly delayed the settlement process.  Indeed, for almost a decade, Defendants have been subject to a campaign of lawsuits brought by the Relator, over a myriad of issues, including the execution of a settlement agreement related to the sale of RRSA (Commercial Division), LLC; Roofing & Restoration Service of America, LLC; RRSA Commercial Roofing, Inc.; Haight Construction Management Services, Inc., and related entities following the death of Relator's estranged spouse, Grady Martin Haight.  (App.000001-4, 5-24, 25-59).  Defendants have stood by and watched Relator fire (and then sue) countless attorneys, abuse the judicial process, destroy evidence, and disregard the Court's directives.  (App.000060-65; Doc. No. 276; Doc. No. 282; App.000081-82, 16:18-17:3, 22:2-6, 24:18-20, 29:14-19).  So far, for reasons inexplicable to Defendants, Relator has escaped any type of real consequences for her behavior.  (Doc. Nos. 180, 206, 259, 266).  In this case alone, Relator delayed her deposition by claiming COVID concerns which were completely unfounded, threatened to blackmail the Defendants, continued to post on social media about this case when instructed through her counsel not to, fired (then unfired) her

attorneys and failed to provide comments to a settlement agreement until threatened by this Court. (Doc. Nos. 160, 180, 259, 282).

As such, Defendants have no confidence, despite Relator's representations to this Court, that she intends to execute and abide by a final settlement agreement in this case. Defendants have been here before, and understandably, have had enough. Relator presented no reason why she waited until October 31, 2022 to provide comments to the proposed settlement agreement. In comparison, any delay attributable to the Defendants (which they contend is none), was waiting for Relator to provide a draft with her comments. Relator should be held accountable for her actions in delaying the execution of the final settlement agreement in this matter, which has materially prejudiced the Defendants.

It is clear from the Relator's Motions, as well as the Court's comments during the November 21, 2022 status conference, that the parties had a much different interpretation of the status conference held on October 20, 2022. Relator argues that, during the status conference hearing on October 20, 2022, because Defendants did not object to the Court's comments regarding the Settlement Term Sheet (the "Term Sheet"), they somehow renounced their request that this Court set this case for trial. (Doc. 289, 305).[1] To put the Court's comments into context, as the Court likely recalls, the predominant subject matter of the October 20, 2022 status conference was Relator's Counsel's Opposed Motion for Leave to Withdraw (Doc. 276) ("Motion to Withdraw"), which had been filed less than 48-hours prior to the status conference. As such, the Court's two lone comments on the Term Sheet were in the context of the Motion to Withdraw:

---

[1] During the November 21, 2022 status conference, the Court also contended that Defendants' counsel, off the record during the October 20, 2022 settlement conference, indicated Defendants' consent to the Term Sheet. This is inconsistent with Defendants' counsel's recollection of the conversation that occurred off the record. (App.000106-107). It is Defendants' counsel's understanding that Relator actually recorded the off the record conversation, so if there is evidence contradicting Defendant's counsel's recollection, she is more than willing to review it.

So you have till the 31st, which is 11 days from now, to file a written response. You asked the Court in an improper way by writing my law clerk while you're being represented by a lawyer that the only reason you were going to withdraw - - you oppose this motion to withdraw was because you wanted to find a lawyer. So the Court is going to give you the balance of this week and all the way to the 31st to complete what you've been doing for, apparently, a really long time. You've been represented by another lawyer. You keep throwing out the name Todd. You contacted a Kentucky lawyer, who was advised of this hearing. It's readily apparent to the Court that you've been looking for a long time. And we need to put to bed this 2016 case, so . . .

……

But, Mr. Mahaffey, all those things that you stated off the record that Ms. Haight recorded are - - appear to be viable options on behalf of the Government, including intervening, what happens if it's pro se, what happens if there's a lawyer that comes in, what happens to the settlement. I believe, Ms. McGill - - it could have been you, Mr. Mahaffey, and Ms. Haight also represented that everybody wants the terms sheet to go forward. But if there's a motion to enforce settlement agreement, the Court will certainly take that up.

So that's - - I'm not going to rule today. I'm going to give everybody an opportunity to file a written response.

Mr. Nicholson, that also gives you an opportunity -- I know that -- listen. I know that you would not have filed this motion until you felt like you had to. That's very clear. But it is not going to be viewed disfavorably by the Court between now and October 31st if everybody comes to a meeting of the minds and you withdraw this motion for leave to withdraw. And do not think of that as a directive from the Court or even a suggestion by the Court. I just want you to know that it is not something that will be viewed disfavorably, that's all.

……

I still have great hope from hearing from everybody today - - Ms. Haight, Mr. Mahaffey, Mr. Nicholson, and Ms. McGill on behalf of your team and - - that this can still happen. I keep hearing from the Defendants, from the Plaintiff's lawyers, from the Plaintiff, from the Government that everybody agrees to the term sheet.

(App.000089-91; 24:21-25:8; 25:15-26:11; 26:13-18). Likewise, on two separate occasions, the

Court made it clear that once the Motion to Withdraw was decided, this case would be set for trial:

One other thing I said, probably on the record, is once this issue is done - - and this is going to be decided very quickly after responses are filed - - this Court is going to set this case for trial.

……

4

What is most likely - - I'm going to read the responses and everything. What is most likely is the motion will be granted with some time for Ms. Haight to find counsel. And then the case - - the case will also be set for trial very quickly. And I'm thinking at the outside in January.

(App.000090, 98; 25:9-12, 33:8-12).

Directly after this statement by the Court, the Court asked all parties whether they had any questions, beginning with Ms. Haight, and all parties, including Relator's Counsel and Mr. Mahaffey, replied "no." (App.000098-99; 33:21-34:5). Neither Relator, her counsel, nor Mr. Mahaffey spoke up at that time and objected to the idea of this case being set for trial on the basis of an enforceable settlement agreement. As a result, to the contrary, it is Relator and her counsel who have now changed positions (once again) by asking this court to enforce the Settlement Term Sheet that Relator has so clearly breached.

For purposes of the Motion to Enforce, the relevant background is as follows:

- April 7, 2022 – Term Sheet Executed (App.000108-111).

- June 3, 2022 – Email correspondence from Clay Mahaffey ("Mr. Mahaffey") to Sarah Goetz ("Ms. Goetz") stating, "Once the Relator has provided input, the settlement agreement will be provided to the Defendants for their review and input." (App.000114).

- July 8, 2022 – Email from Mr. Mahaffey to Defendants' counsel stating, "Although this version does reflect input from Relator's counsel, it has not been finally approved by Tina Haight. Even in the absence of complete agreement on the terms from Relator, I felt that we could not postpone getting a draft of the settlement agreement to you and your clients any longer." (App.000116).

- July 11, 2022 – Email from Mr. Mahaffey to the Court stating, "Although the Relator had not completely agreed to the language in the current draft, the draft

was nonetheless provided to the Defendants for their review and input last Friday, July 8."  (App.000117).

- July 26, 2022 – Email from Mr. Mahaffey to Defendants' counsel stating:

  I just wanted to check in to see if you have an estimate as to when you would have a draft of your input to the RRSA Settlement Agreement.  I'm hesitant to pressure you at all, as I recognize that it took us a long time to get a draft to you.  Even so, as you know from prior experience, it may take some time to get Tina Haight prepared to sign a final version.

  (App.000126).

- August 1, 2022 – Email from Gretchen McGill to Mr. Mahaffey stating, "Pursuant to your representations to the Court that Tina has not completely agreed to the language in this current draft of the settlement agreement, our clients are not interested in wasting time and money reviewing a draft that has not been approved by Tina.  Obviously any changes we may have will not move the needle closer to having Tina approve."  (App.000125).

- August 18, 2022 – Email from Mr. Mahaffey to Ms. McGill requesting comments to settlement agreement despite no final version from Relator. Lengthy back and forth exchange between Defendants' counsel and Mr. Mahaffey related to Relator's delays.  (App.000120-).

- August 29, 2022 – Email from Mr. Mahaffey to Susan Fox-Bowen stating, "We believe the last hurdle on the Relator's [sic] is about to be resolved, so that we can now turn our attention to the Defendants' comments to the settlement agreement, and finalizing the document."  (App.000129).

- September 15, 2022 – Email correspondence from Ms. McGill to Mr. Mahaffey following up on status of finalized settlement agreement.  Mr. Mahaffey

6

responds the same day.  (App.000133).

- September 16, 2022 – Defendants provide comments to proposed settlement agreement, despite having no comments from Relator.  (App.000132).

- September 27 and 30, 2022 – Two separate email correspondence from Ms. McGill to Mr. Mahaffey following up on status of Relator's comments to settlement agreement. (App.000131).

- September 30, 2022 – Email correspondence from Mr. Mahaffey to Stacey Hernandez ("Ms. Hernandez") stating, "Relator Tina Haight has not yet agreed to final settlement language.  Accordingly, I would request that she and her counsel be required to appear at the hearing in person to explain with particularity any outstanding issues that prevent their consummation of the settlement."  (App. 000138).

- October 5, 2022 – Additional email correspondence from Mr. Mahaffey to Ms. Hernandez stating again, no comments or developments from Relator on final settlement agreement. (App.000139).

- October 10, 2022 – Follow-up email correspondence from Ms. McGill to Mr. Mahaffey again asking about status of the settlement agreement. (App.000141).

- October 12, 2022 – Mr. Mahaffey responds to Ms. McGill's October 10 email, stating no developments from Relator. (App.000141).

- October 18, 2022 – Relator's counsel file Opposed Motion for Leave to Withdraw (Doc. 276).

- October 20, 2022 – Hearing on Relator's Opposed Motion for Leave to

Withdraw (App.000001-35).

- October 31, 2022 – Relator's counsel file Request to Hold Motion for Leave to Withdraw in Abeyance Pending Final Settlement Status Conference ("Relator's Request"). The appendix to Relator's Request is the first time Defendants received a redline version of the settlement agreement from Relator. (Doc. 284; App.000107).

Relator cannot dispute that the Defendants waited over six months for a settlement agreement containing comments by the Relator. The only delay by Defendants was directly related to not receiving any comments from Relator. Only after she was threatened with withdrawal by her attorneys and sanctions from this Court, did Relator produce one. Relator has not, and cannot, argue that she "cooperate[d] with the United States to expeditiously draft, revise, and finalize a Final Settlement Agreement" as required by the Term Sheet. (App.000109,111). The Motion to Enforce should be denied and this case should be set for trial.

## ARGUMENT

## I.     RELATOR HAS BREACHED THE TERM SHEET.

Although the enforceability of settlement agreements is determined by federal law where the substantive liabilities of the parties are derived from federal law, "federal contract law is largely indistinguishable from general contract principles under state common law." *In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015); *see also Sundown Energy, L.P. v. Haller*, 773 F.3d 606, 611 (5th Cir. 2014) ("'Although federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by the principles of state law applicable to contracts generally.'") (citing *E. Energy, Inc. v. unico Oil & Gas, Inc.*, 861 F.2d 1379, 1380 (5th Cir. 1988)).

Pursuant to well-settled contract principles, a breach of contract occurs when a party "fails to perform an act that [she] has expressly or impliedly promised to perform." *Cox v. PHH Mortg. Corp.*, No. 4:13-CV-919-O, 2014 U.S. Dist. LEXIS 113962, at *17 (N.D. Tex. June 20, 2014) (citing *Case Corp. v. Hi-Class Bus. Sys. Of Am., Inc.*, 184 S.W.3d 760, 769-70 (Tex. App.—Dallas 2005, *pet denied*)).  Paragraph six (6) of the Term Sheet requires the parties "to expeditiously draft, revise and finalize a Final Settlement Agreement."  (App.000040, 42).   It is clear from the timeline outlined above, as well as Relator's counsel's own filing on October 18, 2022 (over six months after the signing of the Term Sheet), that Relator has breached that obligation:

> As of the date of this filing, the United States and the Defendants have agreed to proposed final language of a Final Settlement Agreement.  Relator does not agree to the language proposed by the United States **but has not provided alternate language to which she will agree.**

(Doc. 276, at 2) (emphasis added).

Moreover, the communication between the United States and the Court, and the United States and the Defendants also establish that Relator did not abide by the terms of the Term Sheet. From June until September of 2022, Defendants (and the Court) were told on multiple occasions that Relator would be providing comments to a final settlement agreement.  (App.000037-38, 43-51).   Without receiving any comments to any settlement agreement, on September 16, 2022, Defendants provided their comments to a draft settlement agreement that had been provided by the Government.  (App.000132).  Defendants then followed up with the Government on four different occasions.  (App.000131,133,141).  Defendants received no comments to their draft until the underseal filing by Relator's counsel that accompanied Relator's Request on October 31, 2021. *Id*.

In the Motion to Enforce, Relator relies entirely on caselaw related to the enforceability of settlement term sheets.  (*See* Doc. 301, pp. 5-7).  Defendants do not dispute that the Term Sheet is

valid and enforceable.  In fact, Defendants contend the exact opposite – that the Term Sheet is binding, but Relator breached the Term Sheet, and therefore, Defendants are excused from their obligations thereunder.

Relator's first response to Defendants' claim that she has breached the Term Sheet is that the provision of the Term Sheet that requires the parties to cooperate to expeditiously draft, revise and finalize a Final Settlement Agreement "was expressly pledged to the United States."  (Doc. 301, at 7).  First and foremost, this position is at odds with Relator's Motion to Enforce as the payment obligation in the Term Sheet is also "owed to the United States of America." (App.000108,110).  Second, Relator's position is also at odds with the clear language of the Term Sheet which states it is "binding and enforceable **between the parties**," not the United States. (App.000109,111) (emphasis added).

Next, Relator argues that Defendants' complaints of timeliness are "at odds with their prior representations to the Court. . . . [a]t the October 20th hearing[.]" (Doc. 301, at 8).  However, upon review of the transcript of the October 20 hearing, the primary issue discussed was Relator's counsel's Opposed Motion for Leave to Withdraw (Doc. 276) (App.000070-99).  Although the Court mentioned the Term Sheet on two occasions, it also clearly stated on two occasions that this matter would be set for trial "quickly," and neither Relator's counsel, nor the Government, indicated an objection to trial based on an enforceable settlement agreement. (App. 000090,98; 25:9-12, 33:8-12).  As stated above, Defendants' counsel has no recollection of making any affirmative representations to the Court regarding the Term Sheet, and if Defendants' counsel is mistaken, she is more than willing to review such evidence.  (App.0000107).

Moreover, the communication between Defendants' counsel and the Government (to which Relator's counsel was not a party) clearly indicates that Defendants' counsel followed up

on four (4) separate occasions to inquire from Mr. Mahaffey what the status of the settlement documents were. (App.000131,133,141). On all four (4) occasions, Mr. Mahaffey told Defendants' counsel that Relator's comments were forthcoming. Instead of receiving any comments from Relator, her attorneys filed the Opposed Motion to Withdraw, leading the Defendants to believe that Relator was never going to provide comments to the settlement agreement.

Furthermore, following the October 20, 2022 hearing, Defendants clearly understood that Relator's counsel would be withdrawing and this case would be set for trial, based on representations from both Relator and Relator's counsel:

> THE COURT: Have you terminated the representation of Mr. Nicholson and his team?
>
> MS. HAIGHT: Over - - over the last year? Yes.
>
> THE COURT: I guess I'm unclear on what - - your qualification "over the last year" is. So, have you basically fired Mr. Nicholson and his team from representing you?
>
> MS. HAIGHT: For cause, I have done it a few times. I've said, "You're fired."
> …..
>
> MR. NICHOLSON: Ms. Haight, since March of last year, had the assistance of separate outside counsel regarding the settlement term sheet and an amendment to our fee agreement. That attorney continued to represent her up and until the end of September. On two occasions this past summer, Ms. Haight sent correspondence to the effect that our representation was terminated. In each instance, her separate lawyer contacted us in writing and rescinded the termination and requested that we not file motions to withdraw because he was working on consummating and finalizing the settlement agreement.
> ….
>
> In our view, the information we received from Ms. Haight, along with the course of conduct, **certainly indicated to us that we were discharged**.

App.000084-85; 19:10-21; 20:3-21) (emphasis added). As such, it is Relator and Relator's counsel who have now taken action which is at odds with their prior representations to the Court. Relator's

self-serving actions to finally provide comments to a settlement agreement (after six months), while insisting on three "non-material" changes to the same, does not cure her prior breach of refusing to abide by her obligations under the Term Sheet.

Third, Relator argues Defendants' reliance on *Mustang Pipeline* is misplaced.  In so arguing, Relator claims that "expeditiously" is not tantamount to a "time is of the essence clause." However, as defined by the Merriam-Webster dictionary, expeditious means "marked by or acting with prompt efficiency," also synonymous with "fast, rapid, swift, fleet, quick, speedy, hasty."[2] When words are not defined in a contract, courts interpret them according to their "plain and ordinary meaning."  *Campbell v. Fort Worth & W. R.R.*, No. 4:09-CV-037-Y, 2010 U.S. Dist. LEXIS 161794, at *6 (N.D. Tex. Mar. 24, 2010) (citing *Gray & Co. Realtors, Inc. v. Atl. Hous. Found., Inc.*, 228 S.W.3d 431, 434 (Tex. App.--Dallas 2007, *no pet.*)) (utilizing dictionary definitions to ascertain plain meaning of term "other lawful deductions" in agreement).

Relator attempts to circumvent this well-settled contract principle by arguing that the parties did not include an explicit time is of the essence clause.  (Doc. 301, p. 8).  However, in order to determine the intent of the parties, courts will "examine the entire writing and strive to harmonize and give effect to *all* provisions in the contract, *so that no provision is rendered meaningless*."  *Taylor v. Henny*, No. 01-14-00650-CV, 2016 Tex. App. LEXIS 3622, at *13 (Tex. App. Apr. 7, 2016) (citing *In re Serv. Corp. Int'l*, 355 S.W.3d 655, 661 (Tex. 2011) (emphasis added).  By Relator's argument, the requirement that the parties work "expeditiously" to prepare final settlement documents would be rendered meaningless.  Rather, this Court should interpret

---

[2] *Meriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/expeditious#:~:text=adjective,or%20acting%20with%20prompt%20efficiency.

the Term Sheet by its plain and ordinary meaning, giving effect to all of its terms, and find that the Relator breached the Term Sheet.  Accordingly, Relator's Motion to Enforce should be denied.

## II.   RELATOR'S BREACH IS MATERIAL.

As a part of the Term Sheet, Defendants had thirty (30) days to secure acceptable third-party financing to fund the Settlement Sum.  (App.000108-110).  As Relator failed to expeditiously execute a final settlement agreement, the terms of any financing available to the Defendants today is completely different, and more costly, than the terms of financing the Defendants discussed with their lenders in April of 2022.  (App.000102).  The terms of any loans to the Defendants would be materially different today than they would have been in April of 2022, due to the interest rate increases by the Federal Reserve, as well as other factors affecting borrowing costs.  *Id*.  Under Texas law, "when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance."  *Henderson v. Wells Fargo Bank, N.A.*, 974 F. Supp. 2d 993, 1005 (N.D. Tex. 2013) (citing *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (*per curiam*)).  Defendants' performance under the Term Sheet is excused by Relator's material breach, and the Motion to Enforce should be denied.

## III.   IN THE EVENT THE COURT ENFORCES THE TERM SHEET, RELATOR IS NOT ENTITLED TO INTEREST IN ACCORDANCE WITH 28 U.S.C. § 1961.

By citing to an email from Defendants' counsel alleging that *Relator* breached the Term Sheet, Relator again confounds the words of Defendants' counsel to support Relator's argument that Defendants have breached the Term Sheet.  Relator, by her own breach, has waived any right to claim any breach by Defendants.  *See Howell v. Citimortgage, Inc.*, Civil Action No. 4:16-cv-00943-O-BP, 2016 U.S. Dist. LEXIS 181200, at *8-9 (N.D. Tex. Dec. 8, 2016) ("[A] party in default cannot assert a claim for breach against the other party.") (citing *Water Dynamics, Ltd. v.*

13

*HSBC Bank USA, Nat. Ass'n*, 509 F. App'x 367, 369 (5th Cir. 2013)); *see also Gulf Pipe Line Co. v. Nearen*, 135 Tex. 50, 138 S.W.2d 1065, 1068 (Tex. 1940) ("It is also elementary that a party to a contract who is himself in default cannot maintain a suit for its breach.").

Moreover, under no circumstances would Relator be entitled to interest. Pursuant to the Term Sheet, "[p]ayment of the Settlement Sum shall be due within thirty (30) days of this Term Sheet **or within thirty (30) days of the Final Settlement Agreement, whichever is later**." (App.000108,110) (emphasis added). Even if this Court is inclined to enforce the Term Sheet (which it should not), interest should not be awarded as of May 7, 2022, as Relator requests. *See* 28 U.S.C. § 1961 ("Such interest shall be calculated from the date of entry of the judgment.").

## CONCLUSION

For all of the foregoing reasons, the Defendants respectfully request that the Court deny Relator's Motion and Brief to Enforce the Settlement Term Sheet, for Entry of Judgment, and for Expedited Consideration (Doc. 301).

Dated:  November 22, 2022

DVORAK LAW GROUP, LLC

By:   */s/ Gretchen L. McGill*
     Heather S. Anson (*pro hac vice*)
     hvoegele@ddlawgroup.com
     Gretchen L. McGill (*pro hac vice*)
     gmcgill@ddlawgroup.com
     Claire E. Monroe (*pro hac vice*)
     cmonroe@ddlawgroup.com

     9500 W. Dodge Rd., Ste. 100
     Omaha, NE 68132
     Telephone:  (402) 934-4770
     Telecopier:  (402) 933-9630

     and

BELL NUNNALLY & MARTIN LLP

> Christopher B. Trowbridge
> Texas State Bar No. 24008182
> christophert@bellnunnally.com
> Benjamin L. Riemer
> Texas State Bar No. 24065976
> briemer@bellnunnally.com
> Troy (T.J.) Hales
> Texas State Bar No. 24099011
> thales@bellnunnally.com

2323 Ross Ave., Ste. 1900
Dallas, Texas  75201
Telephone:  (214) 740-1400
Telecopier:  (214) 740-1499

**ATTORNEYS FOR DEFENDANTS RRSA (COMMERCIAL DIVISION), LLC; ROOFING & RESTORATION SERVICES OF AMERICA, LLC; RRSA COMMERCIAL ROOFING, INC.; HAIGHT CONSTRUCTION MANAGEMENT SERVICES, INC.; COREY S. SANCHEZ; JON R. SEYMORE; JENNIFER N. SEYMORE AND RONALD SCOTT NICHOLS.**

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2022, a true and correct copy of the foregoing document was served upon all counsel of record via the Court's CM/ECF filing system as indicated below:

Darren P. Nicholson
Bobby Hill
Burns Charest, LLP
900 Jackson Street, Suite 500
Dallas, TX  75202
dnicholson@burnscharest.com
bhill@burnscharest.com

Christopher A. Payne
Christina Alstrin
Payne Alstrin, PLLC
9330 LBJ Freeway, Suite 1165
Dallas, TX  75243
cpayne@cappc.com
Christina.Alstrin@Payne-Alstrin.com

Mitchell Madden
Melissa Johnson
Holmgren Johnson Mitchell Madden, LLP
12801 North Central Expressway, Suite 140
Dallas, TX 75243
mmadden@hjmmlegal.com
melissa@hjmmlegal.com

*/s/ Gretchen L. McGill*
Gretchen L. McGill

16