# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* TINA HAIGHT<br><br>*Plaintiff-Relator,*<br><br>v.<br><br>RRSA (COMMERCIAL DIVISION), LLC, *et al.,*<br><br>*Defendants.* | Civil Action No. 3:16-cv-1975-S<br><br><br>JURY TRIAL DEMANDED |

## RELATOR'S REPLY IN SUPPORT OF MOTION TO ENFORCE THE SETTLEMENT TERM SHEET, FOR ENTRY OF JUDGMENT, AND FOR EXPEDITED CONSIDERATION

Defendants' Opposition [Dkt. 311] to Relator's Motion to Enforce the Settlement Term Sheet, for Entry of Judgment, and For Expedited Consideration [Dkt. 301] misstates the law, misstates the pertinent facts, and is meritless. Moreover, Defendants' staunch refusal to negotiate, to mediate, or to sign a Final Settlement Agreement as the Term Sheet required necessitated the filing of Relator's Motion. As the Defendants' Opposition makes entirely clear, Defendants' conduct constitutes bad-faith and warrants the imposition of attorneys fees, costs, interest, and any other relief the Court deems appropriate.

## BACKGROUND

Allegedly filed out of "frustration," Defendants' Opposition begins with yet another re-hash of how the parties in this case have been engaged in litigation "for almost a decade" over a "myriad of issues," and details how Defendants believe Relator to be a bad actor who has "escaped any real consequences" while the Defendants have "stood by and watched." [Dkt. 311 at 2]. For good measure, Defendants include a 142 page appendix, 59 pages of which are devoted to pleadings and orders from other cases, before announcing to this Court that they have "had enough." *Id.* at 3. However, the

history of this litigation and the Defendants' belated "about-face" on settlement tell a different story.

What is lost in the feigned fury of Defendants' Opposition is that the claims in this case belong to the United States, not Relator. And the claims here are entirely justified and meritorious. They warranted the filing of three separate Statements of Interest by the United States Attorneys' Office (USAO) [Dkt. 49, 76, 143], the participation of the USAO in numerous hearings, three separate mediations, and the commitment of significant resources over the last seven months to finalize a settlement agreement Defendants now refuse to sign. Nor does Defendants' Opposition recognize that it is quite the norm, not the exception, for a whistleblower or government informant to have an "axe to grind," which is precisely why evidence such as "motivation for bringing suit" by a relator is often excluded at trial. *See, e.g., U.S. ex rel. Landis v. Tailwind Sports Corp.*, 292 F. Supp. 3d 212, 215 (D.D.C., 2017).

Of course there will be no trial in this case because, with the assistance of their lawyers, the Defendants negotiated and signed a "binding and enforceable" Settlement Term Sheet with Relator on April 7, 2022. Defendants did so voluntarily, with full knowledge (and almost certainly in spite of) the "decade . . . of lawsuits" "over a myriad of issues" that they had with Relator. [Dkt. 311 at 2]. Knowing the parties' history and difficulty in reaching agreement, the Settlement Term Sheet expressly required the parties to "cooperate with the United States to expeditiously draft, revise, and finalize a Final Settlement Agreement" and "[i]n the event a dispute arises . . . that the parties cannot resolve" "to mediate the issue" [Dkt. 294, Appx. 003]. Within a matter of weeks, however, another dispute arose between Relator and Defendants. Rather than "mediate the issue" as the parties had agreed and Relator's Counsel requested, Defendants rushed to file a "Motion for Sanctions" on April 24, 2022, [Dkt. 259] that asked the Court to unwind the settlement and "dismiss" the case entirely. The Court summarily denied the motion on May 4, 2022 [Dkt. 266] before Relator could respond or the United States could file a statement of interest, which would have argued that Defendants' motion was itself

a breach of the Term Sheet. Defendants' Opposition ignores this history.

Moreover, the Defendants' Opposition ignores that negotiations of the final documentation, diligently shepherded  by AUSA Mahaffey, yielded an agreement as to all additional terms sought by the parties and the Government, except for three. Of these, two bear only upon matters related to the "other litigations," which are the historical pretext of the Defendants' Opposition. Notably, the disagreements about those two positions arise from (1) the Defendants' insistence that Relator agree to representations about the ownership of the entities, which are factual issues hotly contested in the underlying state court litigations and (2) the Defendants' refusal to clarify release language to make it clear that the release in this case does not cover the claims in those state court litigations. In other words, the only "disputes" left between the parties are, on their face, motivated entirely by the Defendants' steadfast and unending attempts to improperly gain a litigation advantage in these "other litigations." Defendants refuse to articulate these "disagreements" in their Opposition precisely because they demonstrate bad faith. It is also abundantly clear, timed as it was just after Relator's counsel's Motion to Withdraw, that the Defendants' about face is designed to exploit a perceived procedural advantage, hoping they can either avoid their settlement obligations all together or provoke an intervention that would statutorily reduce Relator's recovery.

Instead of addressing any of the real motivating factors behind their "frustration" the Defendants put forward a "timeline" of emails from April 2022 to October 2022 to argue that while there have been myriad delays, "[t]he only delay by Defendants was directly related to not receiving any comments from Relator," and that Relator's "delay" was a "material breach" of the Term Sheet. [Dkt. 311 at 8]. Defendants' "timeline" does not establish a breach, much less a material one, by Relator, and only confirms their bad faith.

First, as Ms. McGill's declaration acknowledges, defense counsel _never raised_ an issue regarding the timeliness of Relator's revisions to the final settlement agreement with Relator's Counsel,

much less a request to mediate so the process could be sped up. Rather, defense counsel only:

> [c]ommunicated with Relator's counsel on two occasions. Once on April 22, 2022, during a meet and confer conference concerning Defendants' Motion to Reopen case and Motion for Sanctions (Doc 259) and a second time on October 18, 2022,  prior to the filing of Relator's counsel's Opposed Motion to Withdraw (Doc. 276).

[Dkt. 312 App.000107]. Nor would Relator's Counsel have expected a complaint from Defendants about the "timeliness," since delay was to the obvious detriment of Relator and the United States.

Second, while Defendants' "timeline" shows that they complained to AUSA Mahaffey about Relator, <u>Relator's Counsel were not included on those emails</u>. *See* Exhibits F, G, H, I, and L to McGill Declaration [Dkt. 312 App.000120-137,141]. And notwithstanding Defendants' complaints, never once in those emails did defense counsel raise with AUSA Mahaffey a concern about breach, the need to mediate, rising interest rates, a loss of funding, or Defendants' being harmed in any way by undue "delay."[1] Rather, they reflect Defendants' misguided belief that their bad-faith was justified.

Third, Relator's Counsel understands from AUSA Mahaffey – as he stated at the status conference held before the Court on November 21, 2022 – that defense counsel's recitation of their email communications in their November 18, 2022 filing [Dkt. 307] was incomplete and did not accurately reflect all of their email communications. Defendants' latest filing [Dkt. 312] apparently adds those additional emails, including AUSA Mahaffey's numerous complaints in August and September that the Defendants "consistently slow-walked everything for five+ years and are continuing that effort to the end" by refusing to provide any comments to the settlement agreement. [Dtk. 312 Appx. 000120]. Defendants' submission remains silent about their conference calls with the government. Relator's Counsel understand that the United States intends to introduce its own

---

[1] The Court should disregard the Declaration of Brian Ford, which contains no information relevant to the inquiry. [Dkt. 312, Appx. 000101-102]. Tellingly, Defendants' Opposition does not say that any defendant intends to use financing, obtained financing, lost financing, or had the terms of financing altered in the intervening months. Mr. Ford's Declaration only states he "discussed the terms of certain loans" with Corey Sanchez. Defendants refusal to submit their own declarations on this point speaks for itself.

evidence and argument at the hearing, and that their position remains that the Term Sheet is enforceable and there has been no material breach that prevents its enforcement.

## ARGUMENT

Defendants' Opposition is frivolous and not submitted in good-faith.

- Defendants' Opposition concedes the Term Sheet is a binding and enforceable agreement. [Dkt 311 at 12]

- Defendants' Opposition does not contest that "the United States is an unassailable third-party beneficiary of the agreement with an independent right to enforce it." [Dkt 301 at 6]

- Defendants' Opposition does not contest that Relator signed and tendered a Final Settlement Agreement approved by the United States as required by the Term Sheet. [Dkt 301 at 3]

- Defendants' Opposition does not contest that the Final Settlement Agreement tendered by Relator was consistent with the Term Sheet and contained no material changes. [Dkt 301 at 4-5][2]

- Defendants' Opposition does not contest Relator's assertion that Defendants' refusal to sign the Final Settlement Agreement was a breach of the Term Sheet warranting enforcement. [Dkt 301 at 9]

Rather, the only argument raised by Defendants' Opposition is that that they are "excused" from all obligations under the Term Sheet – including the obligation to mediate – because, in their view, Relator breached the Term Sheet by not "cooperat[ing] expeditiously." [Dkt. 311 at 2-4]. Not surprisingly, Defendants do not cite a single case that adopts this circular and self-serving reasoning, which would render standard contractual requirements to give notice, opportunity to cure, or to mediate a nullity. *United States v. Stanley*, No. 3:16-CR-525-D, 2017 WL 11516003, at *2 n.4 (N.D. Tex. Dec. 12, 2017) (declining to search for authority where a defendant has not provided any citation). Nor does Defendants' Opposition address the binding cases applying the federal common law, the

---

[2] Defendants attempted to insert poison pill language into the final settlement agreement expressly designed to impact other litigation between the parties. Relator removed them. Defendants' refusal to articulate any reason why these three changes by Relator are allegedly "material" to the Term Sheet is not only a waiver of the issue but a demonstration of bad faith.

law that governs agreements to settle claims under the FCA, which gives the district court discretion to enforce settlement agreements. [Dkt. 301 at 5] (citing *Fisk Elec. Co. v. DQSI, L.L.C.,* 894 F.3d 645, 650 (5th Cir. 2018); *U.S. ex rel. Ubl. v. IIF Data Sols.,* 650 F.3d 445, 451–52 (4th Cir. 2011) cert. denied, 132 S. Ct. 526, 181 L. Ed. 2d 352 (2011)). Instead, Defendants cite a litany of Texas state law cases that are either inapposite on their face or cite other cases from this district and the Fifth Circuit that simply apply general principles of Texas contract law, without shedding light on any pertinent issue. *See, e.g., In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015) (noting federal common law and state contract law were largely indistinguishable).

## A.     There Was No Material Breach of the Term Sheet

The gravamen of Defendants' argument is that when one party commits a "material breach" to a contract, the other party automatically "is discharged or excused from further performance." [Dkt. 311 at 15] citing *Henderson v. Wells Fargo Bank, N.A.*, 974 F. Supp. 2d 993, 1005 (N.D. Tex. 2013) (citing *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (*per curiam*). Of course, the Texas Supreme Court's decision in *Mustang Pipeline* is readily distinguishable, as that case involved a construction contract requiring "100 percent completion of the pipeline system no later than April 30, 1997" and contained an express "time is of the essence" clause. 134 S.W.3d at 199. The Term Sheet here had neither a date certain deadline for completion of a Final Settlement Agreement, nor a "time is off the essence" clause. But even if Defendants' reliance on *Mustang Pipeline* were correct (it is not), the only "date certain" under the Term Sheet was Defendants' obligation to fund the settlement agreement "within thirty (30) days of this Term Sheet [May 7, 2022] or within thirty (30) days of a Final Settlement Agreement, whichever is later." [Dkt. 294, Appx. 004].

Defendants' Opposition completely ignores the five-factor test for materiality this court delineated in *Henderson. Henderson*, 974 F. Supp. 2d at 1005-6 (citing *Restatement (Second) of Contracts* § 241 (1981)). Under the Restatement, to determine whether a party's failure to perform is material (i.e.

whether Relator's alleged failure to provide comments "expeditiously" is a material breach), the court should examine:

> (a) the extent to which [the Defendants] will be deprived of the benefit which [they] reasonably expected;
>
> (b) the extent to which [the Defendants] can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; [and]
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Id.* Defendants' Opposition put forward neither evidence nor argument applying the materiality standard of the Restatement, relying solely instead on their *ipse dixit* that delay was a "material breach" to the Term Sheet.

Similarly, Defendants' Opposition completely ignores that even a material breach <u>does not</u> automatically lead to discharge of the obligations by the other party under the Restatement. *Id.* (citing *Restatement (Second) of Contracts* § 242 (1981)). Indeed, the comments to the Restatement make plain that a <u>cured</u> material failure to perform does not ordinarily give rise to discharge. *Id.* cmt a ("Ordinarily there is some period of time between suspension and discharge, and during this period a party may cure his failure."). Of course, notice and the opportunity to cure is <u>precisely why</u> the parties agreed to mediate their disputes in the first place. The issue is not what the word "expeditious" means. [Dkt. 311 at 14] (citing Webster's Dictionary). The issue is whether the federal common law permits Defendants to claim discharge of a settlement agreement after the complained of breach was cured.

It obviously does not, and Defendants' conduct here demonstrates the absurdity and bad-faith nature of their argument. Having neither complained about timeliness nor requested meditation,

Defendants assert there was nevertheless a material, uncurable, and fatal breach of "delay" only after Relator cured the delay by tendering a signed Final Settlement Agreement approved by the United States. This sophism, which is unsupported in the federal common law, conveniently purports to relieve Defendants of all obligations under the Term Sheet, including the obligation to mediate, and to the express detriment of the United States.

## B.    The Court Should Award Costs, Attorney's Fees, and Interest

Defendants' refusal to negotiate, mediate, or sign the Final Settlement Agreement constitutes bad faith and warrants the imposition of attorney's fees, costs, and interest. As the Court knows, its power to protect the efficient and orderly administration of justice includes the inherent power to impose sanctions to control litigation before it by fashioning sanctions in response to conduct that abuses the judicial process. *In re Stone*, 986 F.2d 898,902 (5th Cir. 1993) (*per curiam*); *Portillo v. Cunningham*, 872 F.3d 728, 740 n.29 (5th Cir. 2017); *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45, (1991). That power extends beyond attorneys, reaching the parties where appropriate. *Chambers*, 501 U.S. at 50–51.

While some of Defendants' conduct in its filings could be sanctioned under the Rules, as in *Chambers v. NASCO, Inc.*, "[m]uch of the bad-faith conduct by [Defendants] . . . was beyond the reach of the Rules," thus meriting this Court's use of its inherent sanctioning power. *Id.* at 50–51. Here, while the parties have an express agreement to mediate their disputes, Defendants have steadfastly refused to mediate, returning to the Court on multiple occasions to file hyperbolic motions that are both unnecessary and meritless. [Dkt. 259, 289]. Defendants raised "objections" to three changes in the Final Settlement Agreement signed by Relator that were not only pretextual, but offered in bad faith and designed to impact other litigation between the parties. Even then Defendants refused to mediate or even discuss the "objections," necessitating Relator's filing a motion to enforce and compel mediation. [Dkt. 293]. And when the Court ordered mediation of its own accord [Dkt. 302],

Defendants refused to participate in good faith, maintaining the frivolous argument that they could unilaterally declare a material breach. Defendants' bad faith conduct forced the filing of the present Motion to Enforce, and caused Relator, the United States, and the Court to expend more resources to enforce an admittedly "binding and enforceable" settlement agreement Defendants signed six month ago. Accordingly, Relator should be awarded reasonable attorneys fees and costs from the filing of Defendants' Motion to Reconsider [Dkt. 289] on November 4, 2022 up to and including the November 28, 2022, hearing on Relator's Motion.[3]

In addition, the Court should award an additional sanction of prejudgment interest for the $4,000,000 Settlement Sum that was due "within thirty (30) days of this Term Sheet," which was May 7, 2022. [Dkt. 294 Appx. 002]. The appropriate amount of interest is set forth in, 28 U.S.C. § 1961, which provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court." While the statute applies specifically to the imposition of post-judgment interest, the Fifth Circuit has repeatedly held that it does <u>not</u> preclude an award of prejudgment interest where jurisdiction is predicated on a federal question. *Guidry v. Booker Drilling Co. (Grace Offshore Co.),* 901 F.2d 485, 488 (5th Cir. 1990). This federal question case and the Term Sheet at issue presents just such an instance where "the only way the wronged party can be made whole is to award him interest from the time he should have received the money." *Louisiana & A. Ry. Co. v. Exp. Drum Co.,* 359 F.2d 311, 317 (5th Cir. 1966) (enforcing prejudgment interest under § 1961). That interest should begin thirty days after the term sheet's signing, on May 7, 2022, when the Settlement Sum was due in full. [Dkt. 294, Appx. 002 ¶ 3].

In sum, Defendants have acted in "bad faith, vexatiously, wantonly, or for oppressive reasons" by repudiating their obligations under the Term Sheet. *Chambers,* 501 U.S. at 45-46 (citation omitted).

---

[3] Relator's counsel will be prepared to make a submission of reasonable attorneys fees and costs at the November 28, 2022 hearing.

Defendants showed "bad faith by delaying or disrupting the litigation" by not advising the Court, Relator, or the United States of their position in multiple status conferences, by forcing the parties and the Court to expend resources addressing frivolous pleadings and ancillary issues, and by openly defying the Court's order to mediate in good-faith. *Id.* at 46 (citation omitted). For these reasons, and any other reasons the Court finds proper, the Court should sanction Defendants in the form of attorney's fees, costs, and pre-judgment interest.

## CONCLUSION

For these reasons set forth above and for any that may appear to the Court, Relator's Motion to Enforce the Settlement Term Sheet, for Entry of Judgment, and For Expedited Consideration [Dkt. 301] should be granted.

Dated: November 23, 2022

Respectfully Submitted,

*/s/ Darren P. Nicholson*

Darren P. Nicholson
State Bar No. 24032789
dnicholson@burnscharest.com
Robert M. Hill
State Bar No. 24125624
bhill@burnscharest.com
BURNS CHAREST, LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 458-9890
Facsimile: (469) 444-5002

Christopher A. Payne
State Bar No. 15651500
Chris.Payne@Payne-Asltrin.com
Christina Alstrin
State Bar No. 24068019
Christina.Alstrin@Payne-Alstrin.com
PAYNE ALSTRIN, PLLC
9330 LBJ Freeway, Suite 1165
Dallas, Texas 75243
Telephone: (214) 945-1022
Facsimile: (214) 945-1023

Mitchell Madden
State Bar No. 12789350
mmadden@hjmmlegal.com
Melissa Johnson
State Bar No. 19142900
melissa@hjmmlegal.com
HOLMGREN JOHNSON: MITCHELL MADDEN, LLP
12801 North Central Expressway, Suite 140
Dallas, Texas 75243

**Counsel for Plaintiff-Relator Tina Haight**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served on this day of November 23, 2022, via ECF to all counsel of record.

*/s/ Darren P. Nicholson*
Darren P. Nicholson