**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* TINA HAIGHT,<br><br>            Plaintiff-Relator,<br><br>v.<br><br>RRSA (COMMERCIAL DIVISION), LLC, *et al*.,<br><br>            Defendants. | Civil Action No. 3:16-cv-1975-S |

**DEFENDANTS RRSA (COMMERCIAL DIVISION), LLC; ROOFING &
RESTORATION SERVICES OF AMERICA, LLC; RRSA COMMERCIAL ROOFING,
INC.; HAIGHT CONSTRUCTION MANAGEMENT SERVICES, INC.; COREY S.
SANCHEZ; JON R. SEYMORE; JENNIFER N. SEYMORE AND RONALD SCOTT
NICHOLS' OPPOSITION TO RELATOR'S MOTION TO ENJOIN, VACATE, AND/OR
STAY CERTAIN STATE COURT ORDERS, FOR ATTORNEYS' FEES, AND FOR
EXPEDITED CONSIDERATION**

1

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ................................................................................................................. 2

    **I.**     **RELATOR'S MOTION TO ENJOIN IS LARGELY MOOT.** ........................ 2

    **II.**    **THE DEPOSIT ORDER WAS NOT MEANT TO INTERFERE WITH THE SETTLEMENT AGREEMENT.** .................................................. 3

    **III.**   **THE SETTLEMENT AGREEMENT DID NOT WAIVE SANCHEZ'S RIGHT TO ENFORCE PRIOR JUDGMENTS OBTAINED AGAINST RELATOR.** ............................................................................... 5

    **IV.**   **RELATOR IS NOT ENTITLED TO AN INJUNCTION UNDER THE ALL WRITS ACT OR RULE 65(B).** .................................................... 8

        **A.**    **The In-aid-of Jurisdiction Exception Under the All Writ's Act Does Not Apply.** ......................................................................... 8

        **B.**    **Relator does not Meet the Requirements for Issuance of an Injunction Under Rule 65(b).** ..................................................... 11

    **V.**    **ANY EVIDENCE OF BAD FAITH IS ON BEHALF OF THE RELATOR.** ....................................................................................... 13

CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

## Case Law

*Phillips v. Charles Schreiner Bank*, 894 F.2d 127, 132 (5th Cir. 1990)..........................................8

*Texas v. United States*, 837 F.2d 184, 186−87 n.4 (5th Cir. 1988)....................................................8

*United States v. All Funds & Holdings on Deposit and Credited to Account #XXXXXX in Name of Asia Trust Limited as Trustee of Cyreal Trust*, 2009 WL 10703712, at \*3 (N.D. Tex. 2009)....8

*In re Vioxx Products Liability Litig.*, 869 F. Supp. 2d 719, 725 (E.D. La. 2012)............................8

*Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996) .....................................................8

*Winchester v. Fla. Farm Bureau Equities, Inc.*, 427 Fed. App'x. 833, 834–35 (11th Cir. 2011)...9

*In re VMS Ltd., P'ship Sec. Litig.*, No. 97-1617, 1998 U.S. App LEXIS 5531, at \* 2 (7th Cir. 1998) ...............................................................................................................................................9

*Does v. Déjá Vu Consulting, Inc. No. 2:16-cv-10877, 2020 U.S. Dist. LEXIS 265659, at \*3 (E.D. Mich. 2020)*....................................................................................................................................10

*United States Fallen Heroes Found. v. Am. Fallen Warrior Mem'l Found.*, No. 3:11-CV-00872-P, 2011 U.S. Dist. LEXIS 171502, at \*14 (N.D. Tex. Oct. 19, 2011)..........................................11

*Hopkins v. Cornerstone Am.*, No. 4:05-CV-332-Y, 2006 U.S. Dist. LEXIS 107934, at \*5 (N.D. Tex. Feb. 6, 2006) ......................................................................................................................11

*Ascencio-Guzman v. Chertoff*, No. B-94-215, 2009 U.S. Dist. LEXIS 32203, at \*41 (S.D. Tex. Apr. 15, 2009) ...............................................................................................................................11

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) ...................................................................12

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 70, 134 S. Ct. 584, 586 (2013) ............................12

*Coghlan v. Starkey*, 852 F.2d 806, 814-15 (5th Cir. 1988) ............................................................13

*Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 482 (N.D. Tex. 2016), *objections overruled sub nom. Orchestratehr, Inc. v. Trombetta*, No. 3:13-CV-2110-KS-BH, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016) ...........................................................................................13

*Carroll v. Jaques Admiralty L. Firm, P.C.*, 110 F.3d 290, 292 (5th Cir. 1997) ............................13

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 33, 111 S. Ct. 2123, 2126, 115 L. Ed. 2d 27 (1991).....13

**Statutes**

28 U.S.C. §§ 1651, 2238.................................................................................................8

Defendants RRSA (Commercial Division), LLC; Roofing & Restoration Services of America, LLC; RRSA Commercial Roofing, Inc.; Haight Construction Management Services, Inc.; Corey S. Sanchez; Jon R. Seymore; Jennifer N. Seymore; and Ronald Scott Nichols (collectively,  the "Defendants"), and specifically Defendant Corey S. Sanchez, file this Response in Opposition to Relator's Motion to Enjoin, Vacate, and/or Stay Certain State Court Orders, For Attorneys' Fees and for Expedited Consideration and Brief in Support (Doc. 334) (the "Motion to Enjoin"), and in support thereof, respectfully show the Court as follows:

## INTRODUCTION

Defendants do not claim, and have never claimed, that Relator Tina Haight "gets nothing" from the Settlement Agreement in this case.  To the contrary, Defendants all agree that Relator should be paid $471,846.95 as settlement of this matter.  However, just as Relator has filed multiple motions to ensure that she receives the settlement due to her in this case, Defendant Corey Sanchez has also taken steps to ensure that he receives the judgment due to him in a separate state court action.  The money – and where that money comes from – that Relator uses to satisfy the State Court Judgment[1] against her should respectfully (and as this Court noted during the March 6, 2023 status hearing) be of no concern to this Court.  All efforts the Relator has taken to request that this Court involve itself in the State Court Action should be denied and rejected, the Motion to Enjoin (and Motion to Enforce, Doc. 317) should be denied, and the Court should order this case dismissed once Relator receives her portion of the settlement funds.

## ARGUMENT

### I.     RELATOR'S MOTION TO ENJOIN IS LARGELY MOOT.

During a status conference on March 6, 2023, this Court ordered that all funds payable to

---

[1] Unless otherwise indicated herein, all capitalized terms shall have the same meaning as set forth in Defendants' related briefing on this issue, namely Doc. 320 and Doc. 329.

Relator pursuant to the Settlement Agreement be held in abeyance pending the outcome of Relator's Motion to Vacate Order Regarding Motion to Order Deposit of Funds Into Court Registry and Motion to Dismiss & Motion for Sanctions ("Motion to Vacate"), which is scheduled for hearing before the 40th Judicial District Court of Ellis County on March 20, 2023.  Essentially, the Court's ruling during the status conference denies the relief sought in the Motion to Enjoin, and specifically, that this Court vacate the Order to Deposit Funds into the Court Registry (the "Deposit Order"), as well as enjoin the State Court from enforcing the Deposit Order.  (Doc. 334-2, at 1).

However, assuming Relator will argue that her Motion to Enjoin is not moot unless Judge Carroll vacates the Deposit Order, Defendants maintain their position that any order from the State Court requiring Relator to pay all funds received pursuant to the Settlement Agreement into the registry of the state court does not violate the Settlement Agreement or this Court's jurisdiction over the same.  As previously set forth (Doc. 320, at 6-10; Doc. 329, at 10-18) and below, *infra* Part III, nowhere in the Settlement Agreement did Defendant Corey Sanchez release or give up the judgment he had obtained in that state court action months before the Settlement Agreement was executed.  As such, there is no basis for this Court to enjoin any order from the State Court, or otherwise get involved in the State Court Action.

II.   **THE DEPOSIT ORDER WAS NOT MEANT TO INTERFERE WITH THE SETTLEMENT AGREEMENT.**

Sanchez does not dispute that this Court has exclusive jurisdiction over this case and the Settlement Agreement.  As is clear from the Sanchez Motion, Sanchez never sought to withhold funds from Relator, but rather, upon distribution of the funds to Relator, requested that Relator be ordered to pay them into the Registry of the Court to satisfy his State Court Judgment against her. (Doc. 318, Appx.061) ("Using its inherent authority, the Court can protect the integrity of its order

granting partial summary judgment against Haight and order Haight to pay all funds *received by virtue of the Federal Settlement Agreement* into the registry of the court.") (emphasis added).

The concern addressed by the Sanchez Motion and the Deposit Order is to ensure that Relator fulfills her obligation with respect to the State Court Judgment.  Regardless of whether Relator uses the funds she receives pursuant to the Settlement Agreement or funds obtained through other means, Relator is legally required to fulfill her obligation under the State Court Judgment to pay Sanchez attorney fees in an amount to be determined at trial.  *See* Section III below (discussing how the Settlement Agreement did not contemplate prior obtained judgments in its releasing language).  Had Judge Carroll not believed that there was ample evidence that Relator may divert funds that could be used to fulfill her obligation under the judgment, he would have not issued the Deposit Order.

Although Relator makes much to-do about this Court's Order to Show Cause,[2] Relator ignores the multiple findings by Judge Carroll himself throughout the State Court Action that alone provided a basis for Judge Carroll to be concerned about Relator satisfying her obligations pursuant to the State Court Judgment.  (Doc. 116, at APP'X_0140 ("The same Tina Haight who was previously removed as Administrator by the probate Judge is now, for some undisclosed reason, declining to sign for deposit a million dollar IRS refund check."); Doc. 318, Appx. 054; Doc. 321, at App.000622 ("[T]he Court has concluded that Haight has intentionally destroyed or suppressed the recordings, or in the alternative that she negligently permitted them to be lost or destroyed notwithstanding knowledge of their critical importance.")).  Moreover, there is precedence to the parties depositing disputed funds into the Registry of the Court in the State Court

---

[2] On March 6, 2023, a Supplement to Motion to Order Deposit of Funds into the Registry of the Court was filed, providing the state court with a copy of this Court's February 8, 2023 Order on the Order to Show Cause.  (App.003-008).

Action, as Defendant Sanchez did himself at the beginning of the case, based on Relator's allegations that the 2014 Settlement Agreement was not enforceable. (App.009-013). Since 2016, Judge Carroll has been regularly involved with Relator (and her litigation tactics) by way of the multiple state court actions (all initiated by Relator). (Doc. 116, at APP'X_0138 ("The law and the factual history involved with both lawsuits . . . are heavily disputed, significantly involved, and legally complex, and yet when you sue your numerous attorneys who provided you with legal advice, all the purchasers of the business entities, and a creditor financial institution including certain other attorneys, it is reasonable to ask, *What kind of dynamics are we dealing with?*) (emphasis in original); Doc. 321, at App.000614). There is more than enough evidence (without this Court's Order to Show Cause) to support Judge Carroll's ruling that steps were necessary to ensure that Relator satisfy the State Court Judgment against her.

Hypothetically speaking, Relator could have multiple creditors lining up to claim a right to the settlement amounts Relator is receiving in this matter. The Sanchez Motion was filed with the knowledge that Relator would be receiving a sum of money that would allow her to fulfill her legal obligations. Had Relator offered to deposit funds into the Registry of the Court that came from another source outside of the funds received from the Settlement Agreement, Sanchez would not have objected. Just as Relator wants to receive the funds she is owed pursuant to the Settlement Agreement, Sanchez seeks to ensure he receives the funds he is owed pursuant to the State Court Judgment. Respectfully, and as this Court indicated during the March 6, 2023 status conference, it is of no concern to this Court what measures the state court deems necessary to enforce its own judgment.

III.    **THE SETTLEMENT AGREEMENT DID NOT WAIVE SANCHEZ'S RIGHT TO ENFORCE PRIOR JUDGMENTS OBTAINED AGAINST RELATOR.**

Once again, Relator asserts that the Deposit Order violates Sanchez's representations and

warranties in the Settlement Agreement by seeking to indemnify Relator and enforcing the State

Court Judgment against Relator.  (Doc. 334, at 6).  Paragraph 16 of the Settlement Agreement

releases Relator from any "*claims* and counter-claims . . . against the Relator *related to the Qui*

*Tam Action* and the Relator's investigation, filing, and prosecution thereof" and that "RRSA

Defendants represent and warrant that they will not seek indemnity from Relator . . . for any costs,

attorneys' fees, or settlement payments *related to this Qui Tam Action or this Agreement*."

(Doc. 318, Appx. 016-17) (emphasis added).  The only released claims for attorneys' fees are for

attorneys' fees related to the *Qui Tam* action or the Settlement Agreement.  *Id.*  The Deposit Order

does not seek to indemnify Relator for any attorneys' fees related to this *Qui Tam* action.  The

state court action was filed by Tina Haight on March 28, 2016, alleging causes of action against

several defendants, including Sanchez, for claims arising out of the sale of her late husband's

business.  (Doc. 321, App.000594-613).  The state court claims are wholly different from a claim

asserting liability for submitting false claims to the government.  The judgment entered against

Relator by Judge Carroll was for attorney fees related to Sanchez's breach of contract action, which

is separate and distinct from attorney fees associated with defending the *Qui Tam* action.  (Doc.

321, App. 000001-2).  Because the attorney fees awarded by Judge Carroll are not related to this

*Qui Tam* action, the Deposit Order does not violate the representations and warranties in the

Settlement Agreement.  (Doc. 321, App.000003-000593).

Second, the Deposit Order does not violate the representations and warranties in the

Settlement Agreement because the Settlement Agreement did not release any prior judgments

Sanchez obtained against Relator, it only released "claims and counter-claims." (Doc. 318, Appx.

016-17).  On July 22, 2021, Judge Carroll entered partial summary judgment against Relator and

in favor of Sanchez.  (Doc. 321, App.000001-2).  The Settlement Agreement was executed on

December 1, 2022, 497 days after Judge Carroll's entry of judgment against Relator.  Further, the Deposit Order states "the trial court has previously granted a series of interlocutory summary *judgments* for an award of reasonably attorney's fees, as against Tina Haight[.]" (Doc. 335, Appx. 025) (emphasis added).  It is clear Relator's obligation to pay Sanchez attorney fees in the State Court Action is pursuant to a preexisting judgment, not a claim, and is therefore not contemplated or released under the Settlement Agreement.

The word "judgment" is included in the Settlement Agreement seventy-eight times. (Doc. 318, App'x. 008, 013-016, 026-028, 032-033).  In those seventy-eight references to "judgment," it is never once used to indicate that Sanchez waived or released his right to enforce a judgment obtained against Relator outside of the *Qui Tam* action.  *Id.*   "Judgment" is only used in contemplation of the dismissal and subsequent entry of judgment in the *Qui Tam* action.  *Id.* Had enforcement of any prior judgments been waived and released in the Settlement Agreement, the language would have reflected such intention.  Relator was clearly aware of her obligation to pay Sanchez attorney fees pursuant to the partial summary judgment order entered against her *497 days earlier*.  Yet, there is absolutely no language in the Settlement Agreement that indicates Relator was released from her obligations under the judgment.  Because the Settlement Agreement did not waive Sanchez's right to enforce prior judgments against Relator, the Deposit Order does not violate any representations or warranties in the Settlement Agreement.

By requiring Relator to deposit the funds into the Registry of the Court, the Sanchez Motion and Deposit Order merely ensure that Relator will fulfill her legal obligation to satisfy the partial summary judgment entered against her.  Because such obligation was clearly not waived or released, steps to ensure the enforcement of the State Court Judgment do not violate the Settlement Agreement.  Accordingly, Relator's Motion to Enjoin should be denied in its entirety.

## IV.   RELATOR IS NOT ENTITLED TO AN INJUNCTION UNDER THE ALL WRITS ACT OR RULE 65(B).

Contrary to Relator's assertion, the in-aid-of jurisdiction exception does not apply to the situation present here; therefore, Realtor is not entitled to an injunction pursuant to the All Writs Act.  (Doc. 334, at 8).; *see* 28 U.S.C. §§ 1651, 2238.  Because the in-aid-of jurisdiction does not permit the issuance of an injunction, the only other method for Relator to obtain an injunction of a state court proceeding in federal court is through Federal Rule of Civil Procedure 65(b).  However, Relator also fails to satisfy the requirements under Rule 65(b).   The Defendants respectfully request this court deny Relator's requests for injunction against Sanchez, any other defendant, and any order issued by the 40th Judicial District of Ellis County, Texas.

### A.   The In-aid-of Jurisdiction Exception Under the All Writ's Act Does Not Apply.

Relator relies on the second enumerated exception to the Anti-Injunction Act, "where necessary in aid of its jurisdiction," to support her request for an injunction of the state court proceeding.  (Relator Brief 2/24, p. 8).  However, the in-aid-of jurisdiction exception only applies when "a state court proceeding 'threatens to dispose of property that forms the basis for federal *in rem* jurisdiction.'" *Phillips v. Charles Schreiner Bank*, 894 F.2d 127, 132 (5th Cir. 1990) (quoting *Texas v. United States*, 837 F.2d 184, 186−87 n.4 (5th Cir. 1988)); *United States v. All Funds & Holdings on Deposit and Credited to Account #XXXXXX in Name of Asia Trust Limited as Trustee of Cyreal Trust*, 2009 WL 10703712, at *3 (N.D. Tex. 2009).  As established in previous briefing, the *Qui Tam* action is an ordinary *in personam* action.  (Doc. 320, at 11-13).  Although the in-aid-of jurisdiction exception may apply in an *in personam* case if there are extraordinary circumstances, no such circumstances are present here.  *In re Vioxx Products Liability Litig.*, 869 F. Supp. 2d 719, 725 (E.D. La. 2012) (citing *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th

Cir. 1996)).  So as not to repeat the prior briefing as to all the reasons why the All Writ's Act does

not apply, in this briefing, Defendants will simply focus on the new cases used in support of

Relator's argument, while incorporating the prior arguments in Doc. No. 320, at pages 11-16.

Much like the Motion to Enforce (Doc. 317) in support of her argument that such

extraordinary circumstances are present here, Relator relies on case law that is inapplicable to the

facts of this Motion to Enjoin.  In *Winchester v. Fla. Farm Bureau Equities, Inc.*, a class of

shareholders filed a securities class action in the Northern District of Florida and reached a

settlement agreement whereby one of the defendants was required to issue a debenture to the class

of shareholders.  *Winchester v. Fla. Farm Bureau Equities, Inc.*, 427 Fed. App'x. 833, 834–35

(11th Cir. 2011).  The shareholders formed Plaintiff's Shareholders Corporation ("PSC") to hold

the debenture on their behalf; however, one of the defendants purchased the debenture from PSC,

and the shareholder plaintiffs filed two state court actions asserting claims alleging, among other

things, that the defendants breached the settlement agreement reached in the federal case.  *Id.* at

836.  Because resolution of those allegations would clearly require interpretation or enforcement

of the federal court's order that incorporated the settlement agreement, the federal court granted

the defendant's motion and enjoined the state court proceedings pursuant to the in-aid-of

jurisdiction exception.  *Id.* at 837–38.  Such clear-cut circumstances are not present here.  Neither

the Deposit Order, nor Relator's legal obligation to satisfy the judgment against her require the

state court to interpret or enforce of the Settlement Agreement.

Further, in *In re VMS Ltd., P'ship Sec. Litig.*, a group of defendants moved to enjoin a

group of plaintiffs from pursuing a state law claim when they belonged to a class of plaintiffs, who

had, pursuant to a settlement agreement in federal court, released such claims.  *In re VMS Ltd.,

P'ship Sec. Litig.*, No. 97-1617, 1998 U.S. App LEXIS 5531, at * 2 (7th Cir. 1998).  The plaintiffs

argued that the settlement agreement could not cover a claim they did not know about at the time of the settlement; however, the settlement agreement explicitly stated that it released all "'known and unknown' claims." *Id.* at *7–8.  As such, in part due to the plaintiffs' failure to adequately brief their arguments, the court held that the in-aid-of jurisdiction exception applied and granted the motion to enjoin the state court proceedings. *Id.*  Again, such clear-cut circumstances are not present here.  As argued in Section I, the releasing language does not encompass "judgments." Even if the Court does not find that assertion to be as evident as Defendants, the releasing language in the Settlement Agreement here is far more ambiguous and does not clearly include Sanchez's ability to enforce his judgment against Relator, as in the cases relied on by Relator.

Similarly, in *Does v. Déjá Vu Consulting, Inc.*, a group of plaintiffs alleged that the defendants violated the Fair Labor Standards Act and state wage-and-hour laws, and the parties entered into a settlement agreement.  No. 2:16-cv-10877, 2020 U.S. Dist. LEXIS 265659, at *3 (E.D. Mich. 2020).  The plaintiff then brought an action against the defendants in California state court, alleging violations of various California wage-and-hour retaliating claims. *Id.*  However, the settlement agreement reached in federal court specifically listed and released defendants "from any and all claims pursuant to the California Labor Code and claims under California Business and Professions Code," which were the exact same claims the plaintiff brought in state court, and fell squarely within the preclusive scope of the approved final settlement agreement. *Id.* at *5, 7–8 (stating "[i]n fact, there is an even stronger case for an injunction in the present case because [the plaintiff's] state court claims are expressly enumerated in the settlement agreement as released claims."). As such, the federal court held that the relitigation exception to the Anti-Injunction Act applied, as the claim or issue raised in state court was "previously presented to and actually decided by a federal court." *Id.* at *6.  The court further held that, because the relitigation exception

10

applied, enjoining the state court proceeding was also warranted under the in-aid-of jurisdiction exception. *Id.*

As with the other cases Relator asserts to support her request for an injunction under the in-aid-of jurisdiction exception, *Does* is distinguishable from the facts present here.  It is clear that the Settlement Agreement does not explicitly enumerate that Sanchez is prohibited from seeking enforcement of the previously entered State Court Judgment against Relator.  If it were so clear that the Settlement Agreement precluded the actions taken in state court, Relator would be arguing that the relitigation exception applies, not the in-aid-of jurisdiction exception.  Relator has made no assertions, likely due to the fact that it is evident the Settlement Agreement does not so clearly preclude Sanchez's actions in state court as Relator purports to assert.

Because Relator is going to receive full payment pursuant to the terms of the Settlement Agreement, and thereafter, this case is ripe to be dismissed, there will be no interference with the Settlement Agreement.  As such, the in-aid-of jurisdiction exception does not apply, as no extraordinary circumstances are present to justify the issuance of an injunction; therefore, the Motion to Enjoin should be denied in its entirety.

**B.      Relator does not Meet the Requirements for Issuance of an Injunction Under Rule 65(b).**

None of the exceptions to the Anti-Injunction Act apply; therefore, the only avenue for Relator to receive an injunction is under Rule 65 of the Federal Rules of Civil Procedure. Injunctions are extreme remedies and a "high bar must be reached in order for it to be granted." *United States Fallen Heroes Found. v. Am. Fallen Warrior Mem'l Found.*, No. 3:11-CV-00872-P, 2011 U.S. Dist. LEXIS 171502, at *14 (N.D. Tex. Oct. 19, 2011); *Hopkins v. Cornerstone Am.*, No. 4:05-CV-332-Y, 2006 U.S. Dist. LEXIS 107934, at *5 (N.D. Tex. Feb. 6, 2006); *Ascencio-Guzman v. Chertoff*, No. B-94-215, 2009 U.S. Dist. LEXIS 32203, at *41 (S.D. Tex. Apr. 15,

11

2009).  For the extreme remedy of an injunction to be granted, Relator must show that (1) there is an extreme likelihood she will prevail on the merits; (2) there is a substantial likelihood that Relator will suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to Relator; and (4) the issuance of the injunction will not disserve the public interest.  *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).  Relator has failed to reach the high bar required for the Court to grant injunctive relief.

First, Relator is not substantially likely to prevail on the merits.  Relator is still entitled to receive the funds owed to her under the Settlement Agreement, and Defendants have no objection.  Once she has received the funds owed, all terms of the Settlement Agreement have been satisfied, and this case is ripe to be dismissed.  Further, the Settlement Agreement did not contemplate the release of judgments, so the state court's issuance of the Deposit Order is not prohibited or barred by the Settlement Agreement.  Second, once Relator receives the funds owed to her, there is no threat of irreparable harm.  Alleging that some of the money received under the Settlement Agreement may be used to satisfy the judgment against her is not a showing of irreparable harm.  Whether Relator used funds received from the Settlement Agreement, or funds received elsewhere, Relator still has a legal obligation to satisfy the State Court Judgment.

Finally, if the Motion to Enjoin is granted, both Defendants and Judge Carroll believe there is a significant threat that Relator will not satisfy the State Court Judgment, thus justifying the issuance of the Deposit Order.  If an injunction is granted and Relator does not satisfy the judgment, it will present a significant disservice to the public interest and will prohibit the state court's ability to perform its judicial functions, the most important of which is enforcing its judgments.  *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 70, 134 S. Ct. 584, 586 (2013).  Because none of the exceptions to the Anti-Injunction Act apply and Relator has failed to reach

the high bar required to issue an injunction under Rule 65(b), Relator's Motion to Enjoin must be denied.

## V.     ANY EVIDENCE OF BAD FAITH IS ON BEHALF OF THE RELATOR.

The latest motion filed by Relator is yet another bad-faith attempt by Relator to persuade this Court to protect her from the judgment entered against her by Judge Carroll.  Relator cannot possibly, in good-faith, believe that Sanchez gave up a previously issued judgment in his favor when the word "judgment" does not exist in any of the release paragraphs of the Settlement Agreement.  (Doc. 318, App'x. 016-17).  Therefore, sanctions should be assessed against Relator for the Defendants' costs and fees in responding to this motion.  *See Coghlan v. Starkey*, 852 F.2d 806, 814-15 (5th Cir. 1988) ("Thus it is not bad faith that establishes frivolity of appeal, but that an unreasonable legal position is advanced without a 'good faith belief that it is justified.'") (citations omitted).

Specifically included in the Court's inherent power is "the power to levy sanctions in response to abusive litigation practices."  *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 482 (N.D. Tex. 2016), *objections overruled sub nom. Orchestratehr, Inc. v. Trombetta*, No. 3:13-CV-2110-KS-BH, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016).  Moreover, "[w]hen a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions."  *Carroll v. Jaques Admiralty L. Firm, P.C.*, 110 F.3d 290, 292 (5th Cir. 1997) (internal citations omitted).  Accordingly, district courts may fashion the appropriate sanction to punish conduct that abuses the judicial process.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33, 111 S. Ct. 2123, 2126, 115 L. Ed. 2d 27 (1991).  Any evidence of bad-faith and sanctionable litigation practices is on behalf of the Relator, not Defendants.  Defendants respectfully request that Relator be ordered to pay their

attorney fees for responding to the Motion to Enjoin and the Motion to Enforce.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court deny Relator's Motion to Enjoin, Vacate, and/or Stay Certain State Court Orders, for Attorneys' Fees and for Expedited Consideration and Brief in Support (Doc. 334).  Further, Defendants respectfully request that the Court award Defendants their attorney fees in responding to the Motion to Enjoin, Motion to Enforce, and for such other and further relief as this Court deems just and equitable.

Dated:  March 7, 2023

DVORAK LAW GROUP, LLC

By: /s/ Gretchen l. McGill
        Heather S. Anson (*pro hac vice*)
        hvoegele@ddlawgroup.com
        Gretchen L. McGill (*pro hac vice*)
        gmcgill@ddlawgroup.com
        Claire E. Monroe (*pro hac vice*)
        cmonroe@ddlawgroup.com
        9500 W. Dodge Rd., Ste. 100
        Omaha, NE 68132
        Telephone:  (402) 934-4770
        Telecopier:  (402) 933-9630

and

BELL NUNNALLY & MARTIN LLP

        Christopher B. Trowbridge
        Texas State Bar No. 24008182
        christophert@bellnunnally.com
        Benjamin L. Riemer
        Texas State Bar No. 24065976
        briemer@bellnunnally.com
        Troy (T.J.) Hales
        Texas State Bar No. 24099011
        thales@bellnunnally.com
        2323 Ross Ave., Ste. 1900
        Dallas, Texas  75201
        Telephone:  (214) 740-1400
        Telecopier:  (214) 740-1499

**ATTORNEYS FOR DEFENDANTS RRSA (COMMERCIAL DIVISION), LLC; ROOFING & RESTORATION SERVICES OF AMERICA, LLC; RRSA COMMERCIAL ROOFING, INC.; HAIGHT CONSTRUCTION MANAGEMENT SERVICES, INC.; COREY S. SANCHEZ; JON R. SEYMORE; JENNIFER N. SEYMORE AND RONALD SCOTT NICHOLS.**

15

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2023, a true and correct copy of the foregoing document was served upon all counsel of record via the Court's CM/ECF filing system.


*/s/ Gretchen L. McGill*
Gretchen L. McGill