# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA § <br> *ex rel.* TINA HAIGHT § <br> § <br> v. § <br> § <br> RRSA (COMMERCIAL DIVISION), § <br> LLC, et al. § | CIVIL ACTION NO. 3:16-CV-1975-S |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Relator Tina Haight's Motion to Enforce Settlement Agreement, for Injunctive Relief in Connection with State Court Litigation, for Attorneys' Fees and for Expedited Consideration ("Motion to Enforce") [ECF No. 317] and Motion and Brief to Enjoin, Vacate, and/or Stay Certain State Court Orders, for Attorneys' Fees, and for Expedited Consideration ("Motion to Vacate") [ECF No. 334]. Having reviewed and considered the Motions, the subsequent briefing, and all appendices in support of the parties' filings, the Court **DENIES** the Motions.

### I. BACKGROUND

#### A. *The Federal Case*

On July 6, 2016, Relator brought suit against, among others, RRSA (Commercial Division), LLC, Roofing & Restoration Services of America, LLC, RRSA Commercial Roofing, Inc., Haight Construction Management Services, Inc., Corey S. Sanchez, Jon R. Seymore, Jennifer N. Seymore, and Ronald Scott Nichols (collectively, "Defendants") pursuant to the False Claims Act, 31 U.S.C. § 3729, *et seq. See* Compl. [ECF No. 2]. Relator contended that Defendants devised a fraudulent scheme to obtain Government subcontracting opportunities that are reserved for eligible small business under the Small Business Act. First Am. Compl. [ECF No. 104] ¶¶ 1-4. In 2021, Defendants moved to dismiss Relator's First Amended Complaint, arguing both that Relator

did not have standing to pursue her claims because she signed a settlement agreement containing a release of claims and that Relator failed to state a claim. Defs.' Mot. to Dismiss First Am. Compl. [ECF No. 115] 1-3, 10. The Court denied the motion. The Court found that "it would be contrary to well-established public policy to enforce the Release for the purpose of barring Relator's *qui tam* claims" and rejected Defendants' argument that Relator failed to state a claim. Mem. Op. & Order [ECF No. 149] 11, 16.

Before the Court ruled on Defendants' Motion to Dismiss, Defendants' counsel sent Relator's counsel a letter titled "Indemnification Notice and Demand." Pl.-Relator Tina Haight's App. in Supp. of Relator's Mot. to Enforce ("Relator's App.") [ECF No. 318] 2-4. The subject line of the letter indicated that it was sent in connection with the federal False Claims Act case. *See id.* at 2. Citing a Purchase Agreement and the parties' June 6, 2014, Settlement and Mutual Release Agreement ("2014 Settlement Agreement"), counsel stated that "Relator agreed to indemnify and hold harmless . . . Sanchez . . . against any Adverse Consequences arising out of, or relating to, the breach of any covenant or obligation made by the Relator." *Id.* at 3. Counsel sought $1,009,800.61 in legal fees and costs that Defendants had "incurred in defending against Relator's claims in the *qui tam* action, as well as her claims filed in the State Court actions." *Id.* at 4. Relator did not acquiesce to this demand.

After extensive litigation, the parties notified the Court that they had entered into a binding Settlement Term Sheet on April 8, 2022. Notice of Settlement and Joint Mot. to Stay [ECF No. 257]. The settlement was repeatedly delayed, but the parties ultimately executed a Settlement Agreement with an effective date of November 28, 2022 ("Federal Settlement Agreement"). Relator's App. 6-24.

2

B. *The State Case*

Long before the parties settled this matter, on July 22, 2021, the 40th Judicial District Court, Ellis County, issued a ruling in a separate case involving Relator as one of the plaintiffs and Sanchez as one of the defendants. *See* App. in Supp. of Defs.' Opp'n to Relator Tina Haight's Mot. to Enforce ("Defs.' App.") [ECF No. 321] 1-2. The state court's order granted in part Sanchez's partial motion for summary judgment, in which Sanchez argued that Relator breached the 2014 Settlement Agreement. *See id.* at 2-3. In the 2014 Settlement Agreement, Relator agreed not to institute any lawsuit "arising out of or related to" the matters released in the agreement. *Id.* at 3-4. The state court ruled that Relator had breached the 2014 Settlement Agreement and that Sanchez "shall be entitled to an award of damages, in the form of reasonable and necessary attorneys' fees and litigation-related costs, . . . against [Relator] . . . in an amount to be determined at trial." *Id.* at 2.

Less than two months after the effective date of the Federal Settlement Agreement in the instant action, Corey Sanchez filed a Motion to Order Deposit of Funds into the Registry of the Court ("Sanchez Motion") in the state court case. *See* Relator's App. 53. In the Sanchez Motion, Sanchez noted the state court's order awarding him attorney's fees. *Id.* at 56. Sanchez asked the state court to order Relator to deposit the payment she was to receive under the Federal Settlement Agreement in the instant action into the registry of the state court to guarantee that she would be able to pay any amount ultimately awarded to Sanchez. *Id.* at 53. In support of his request, Sanchez cited evidence of Relator's purported "lack of trustworthiness," including this Court's now-withdrawn Order to Show Cause. *Id.* at 54-55.

On February 21, 2023, the state court issued an order vacating and setting aside orders awarding specific amounts of attorney's fees to various defendants in the state court action, including Sanchez, and stating that the amount of attorney's fees to be awarded to each defendant

3

would be decided by a jury ("Trial Order"). App. in Supp. of Relator's Mot. to Vacate [ECF No. 335] 2-6. The court set the case for jury trial on July 17, 2023. *Id.* at 6. On the same day, the state court entered an order granting in part the Sanchez Motion ("Deposit Order"). *Id.* at 24-27. Relator moved to vacate the Deposit Order, and the state court granted that motion on March 24, 2023. *See* Order to Vacate Prior Order to Deposit Funds into the Ct. Registry [ECF No. 346-1]. The state court reaffirmed that the case was set for jury trial on July 17, 2023. *Id.* at 2.

### C. *The Motions to Enforce and Vacate*

In response to the Sanchez Motion, Relator filed the Motion to Enforce. She argues that Sanchez breached the Federal Settlement Agreement in multiple ways. Because of these alleged breaches, Relator asks the Court to enforce the Federal Settlement Agreement. Relator also requests that the Court issue an injunction requiring Sanchez to withdraw the Sanchez Motion, preventing other Defendants from filing similar motions, and preventing the state court from determining the Sanchez Motion. After the state court issued the Trial and Deposit Orders, Relator filed the Motion to Vacate. The Motion to Vacate is largely duplicative of the Motion to Enforce, but it is directed at the Trial and Deposit Orders, rather than the Sanchez Motion. The only additional relief sought by Relator in the Motion to Vacate is a request that the Court enjoin and/or vacate "the Trial Order as to Defendant Sanchez's claim for attorneys' fees"[1] and the Deposit Order. Mot. to Vacate 7. In both Motions, Relator also seeks the attorney's fees and costs she incurred in connection with filing the Motions. Defendants oppose all of Relator's requested relief and seek their attorney's fees and costs incurred in connection with responding to the Motions.

---

[1] Relator states that the Trial Order is "unclear" as to whether it also sets any claim by Defendants Jon and Jenny Seymore for trial. Mot. to Vacate 4 n.4. Although it appears to the Court that the Trial Order does not apply to these Defendants, the Court's analysis below would apply with equal force to Relator's request to enjoin the Trial Order as to Defendants Jon and Jenny Seymore.

4

In light of developments in the state court case after Relator filed the Motions, Relator concedes that the certain injunctions requested in the Motion to Enforce and the portion of the Motion to Vacate directed at the Deposit Order are now moot, but she contends that other aspects of the Motions remain pending. The Court now turns to those issues.

## II.     LEGAL STANDARD

"[A] district court has inherent power to . . . enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994) (citation omitted). The decision to enforce a settlement agreement is committed to the court's discretion. *See Deville v. United States ex rel. Dep't of Veterans Affs.*, 202 F. App'x 761, 762 (5th Cir. 2006) (citing *Bell*, 36 F.3d at 450). In determining a motion to enforce, "[t]he court may decide 'whether and under what terms' to enforce the settlement," *Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*, 23 F.4th 442, 452 (5th Cir. 2022) (quoting *Wise v. Wilkie*, 955 F.3d 430, 436 (5th Cir. 2020)), and may "rule that [a party] breached the settlement," *id.*

## III.    ANALYSIS

A court cannot "enforce a settlement without deciding whether and how it has been breached." *Id.* at 452. Therefore, the Court will first analyze the breaches alleged by Relator and then determine whether any of the alleged breaches require the Court to enforce the Federal Settlement Agreement. The Court will then turn to Relator's various requests for injunctive relief. Finally, the Court will consider the parties' respective requests for awards of attorney's fees and costs.

### A.     *Motion to Enforce*

Relator argues that Sanchez breached the Federal Settlement Agreement in five ways: (1) by using the Order to Show Cause as evidence of wrongful conduct; (2) by seeking indemnity

5

directly or indirectly from Relator[2]; (3) by preventing Relator from receiving the settlement funds within the time period contemplated by the Federal Settlement Agreement; (4) by rendering performance of the settlement payment obligations and dismissal of this case impossible; and (5) by seeking to have the state court, rather than this Court, resolve a dispute relating to the settlement funds. *See* Mot. to Enforce 5-6.

i. *Using the Show Cause Order as Evidence*

Paragraph 16 of the Federal Settlement Agreement provides that "[n]o evidence from this *Qui Tam* Action shall be used against Relator in any other case that is pending or yet to be filed to obtain compensation from Relator." Relator's App. 16. According to Relator, Sanchez breached this provision when he submitted the Court's Order to Show Cause in connection with the Sanchez Motion. The Court agrees.

"Evidence" is defined as "[s]omething . . . that tends to prove or disprove the existence of an alleged fact." *Evidence*, BLACK'S LAW DICTIONARY (11th ed. 2019). Contrary to Defendants' argument, nothing in this definition precludes a finding that "a public docket entry" may constitute evidence if it is used to prove or disprove an allegation. Defs.' Opp'n to Relator's Mot. to Enforce ("Resp.") [ECF No. 320] 4. Sanchez submitted the Order to Show Cause to the state court to try to prove "that [Relator] will likely quickly deplete any funds to which she gains access, regardless of whether it would impair her ability to pay her debts"; thus, he used it as evidence. Relator's App. 54. Further, the Court disagrees with Defendants' argument that "Sanchez is not using the Court's Order to Show Cause to 'obtain compensation from Relator,'" but rather to demonstrate

---

[2] This argument appears to have evolved over the course of Relator's briefing into two interrelated arguments: (1) that Sanchez improperly seeks indemnification; and (2) that Sanchez released his state court claims for attorney's fees in the Federal Settlement Agreement. *See, e.g.*, Relator's Reply in Supp. of Mot. to Vacate [ECF No. 344] 3 ("[T]he heart of the issue is that Defendant Sanchez expressly released his attorney's fees claims in Cause No. 94402 . . . under Paragraph 16 of the Settlement Agreement."). The Court considers both arguments together.

6

Relator's pattern of behavior to secure the state court judgment. Resp. 4-5. The goal of the Sanchez Motion was to require Relator to deposit her settlement payment into the registry of the state court so that Relator could pay "the damages that she will owe to Sanchez pursuant to the Court's Order." Relator's App. 54. In other words, Sanchez asked the state court to exert control over Relator's funds so that Relator would compensate Sanchez for his losses. Therefore, the Court concludes that Sanchez breached the Federal Settlement Agreement when he submitted the Order to Show Cause as evidence in connection with the state court case.

However, because this breach has already been adequately rectified, the Court sees no need to enforce the relevant provision of the Federal Settlement Agreement. Sanchez filed a Supplement to Motion to Order Deposit of Funds into the Registry of the Court on March 6, 2023, in which he notified the state court that this Court had withdrawn and terminated the Order to Show Cause. App. in Supp. of Defs.' Suppl. Briefing in Opp'n to Relator's Mot. to Vacate [ECF No. 342] 3-4. The Court concludes that this action provided adequate redress and that Relator is entitled to no further relief with respect to this breach.

  ii. *Release of Attorney's Fees and Prohibition on Seeking Indemnity*

Relator next argues that Sanchez violated the Federal Settlement Agreement by pursuing his demand for attorney's fees and costs in the state court case and by seeking indemnity from Relator. These arguments are premised on Paragraph 16 of the Federal Settlement Agreement, which states:

> The RRSA Defendants and their attorneys, agents, and assigns fully and finally release Relator from any claims and counter-claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that the RRSA Defendants have asserted, could have asserted, or may assert in the future against the Relator related to the *Qui Tam* Action and the Relator's investigation, filing, and prosecution thereof. . . . RRSA Defendants represent and warrant that they will not seek indemnity from Relator or any other person, directly or indirectly, for any costs, attorneys' fees, or settlement payments related to this *Qui Tam* Action or this Agreement. RRSA Defendants acknowledge that they have sued and/or asserted

claims or counter-claims against Relator in one or more of the following cases pending in the 40th Judicial District, Ellis County Texas (the "State Cases"):

    1 – Cause No. 91058
    2 – Cause No. 94402
    3 – Cause No. 14-E-2094-15CV1
    4 – Cause No. 16-C-3206
    5 – Cause No. 14-E-2094-18CV1
    6 – Cause No. 14-E-2094-18CV2

The RRSA Defendants expressly relinquish and waive any prior claim for direct or indirect indemnity for any costs, attorneys' fees, or settlement payments related to this *Qui Tam* Action, whether made in this *Qui Tam* Action, or the State Cases.

Relator's App. 16-17.

The Court applies federal common law to interpret the Federal Settlement Agreement. *See United States v. Seckinger*, 397 U.S. 203, 209-10 (1970) (holding that federal common law governs contracts entered into by the United States). Courts accord the terms of an unambiguous contract their plain meaning. *Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 822 (5th Cir. 2003) (citation omitted). "A contract is ambiguous only if its meaning is susceptible to multiple interpretations. The mere fact that the parties may disagree on the meaning of a contractual provision is not enough to constitute ambiguity." *Id.* at 821-22. When interpreting a contract, courts must give effect to the parties' intent. *Id.* at 822 (citation omitted). To ascertain that intent, courts "look to the plain language of the contract, its commercial context, and its purposes." *Id.*

The Court agrees with the parties that the Federal Settlement Agreement is unambiguous. The Court will review the plain meaning of each relevant portion of Paragraph 16 and then consider the paragraph's meaning as a whole.[3] First, the parties agreed that Defendants "release Relator from any claims and counter-claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that . . . Defendants have asserted, could have asserted, or may assert

---

[3] The Court omits the sentence of Paragraph 16 prohibiting the use of evidence from this case, as that issue has already been addressed above.

8

in the future against the Relator related to the *Qui Tam* Action and the Relator's investigation, filing, and prosecution thereof." Relator's App. 16. Relator argues that "the claim for recoupment of attorney[']s fees and costs for breaches of the 2014 Mutual Settl[e]ment and Release . . . were clearly claims Sanchez 'could have asserted' in this case." Relator's Suppl. Br. in Supp. of Mot. to Enforce [ECF No. 331] 13. Similarly, Relator contends that the Indemnification Notice and Demand "was a claim [Sanchez] 'could have asserted' in this case because that same document was the basis of . . . Sanchez's contemporaneous Motion to Dismiss." *Id.* at 13-14. Relator also argues that the state court case and this case are related to each other because the cases involve the same parties, involve "wrongful conduct concerning . . . the business relationships of RRSA," and "interpose the [2014 Settlement Agreement] as requested relief for Defendants," *id.* at 12, and because Defendants have filed documents from the state court case in this case, *id.* at 14.

Relator's arguments ignore the plain meaning of the Federal Settlement Agreement. The release contained in the first sentence of Paragraph 16 applies to claims and counterclaims that both: (1) were asserted, could have been asserted, or may be asserted and (2) are related to this case or the investigation, filing, and prosecution thereof.

As to the first requirement, Relator argues that Sanchez asserted or could have asserted his claim for costs and attorney's fees in this case. The Court disagrees. Sanchez did not bring and could not have brought a counterclaim in this Court based on Relator breaching the 2014 Settlement Agreement by filing the state court case. And Sanchez is only entitled to the costs and attorney's fees that he seeks in that case because the state court awarded them as a result of his successful partial summary judgment motion. The jury impaneled in the state court—not this Court—will determine the amount of the award at trial. This Court has no jurisdiction over Sanchez's counterclaim and could not award costs and attorney's fees based on that counterclaim.

Relator's contention that Sanchez could have asserted his claim for attorney's fees in this case because he cited the 2014 Settlement Agreement in his Motion to Dismiss does not change this outcome. Merely citing the same document in support of a request for damages in state court and a motion in federal court does not mean the former claim was (or could have been) asserted in federal court. As such, the Court disagrees with Relator that Sanchez asserted or could have asserted his damages claim in this case.[4]

As to the second requirement, Sanchez's state court claim for attorney's fees in connection with his counterclaim for breach of contract is not related to this case or the investigation, filing, and prosecution of this case. As Relator herself argues, "the phrase 'related to this *Qui Tam* Action . . .' refers to something connected in some way or having a relationship to this lawsuit." *Id.* at 12. Put simply then, Defendants agreed to release actual and potential claims and counterclaims connected in some way or having a relationship to this False Claims Act case and Relator's investigation, filing, and prosecution thereof. The attorney's fees Sanchez seeks in the state court case are not connected or related to this lawsuit. In the state court case, Sanchez argued that he was entitled to partial summary judgment on his breach of contract counterclaim because Relator breached the promise she made in the 2014 Settlement Agreement not to sue him. *See* Defs.' App. 3. The court agreed and awarded Sanchez attorney's fees and costs in an amount to be determined at trial. *Id.* at 2. Neither Sanchez's counterclaim for breach of contract nor his attempt to secure the damages awarded to him for prevailing on that counterclaim are related to this False Claims Act lawsuit, in which Relator accused Defendants of devising a fraudulent scheme to illegitimately obtain Government subcontracting opportunities. The fact that Defendants also

---

[4] The Court notes that the Settlement Agreement does not specify that claims must have been asserted or could potentially be asserted *in this case*. However, for the sake of thoroughness, the Court addresses these arguments because they were made by Relator.

10

moved to dismiss the instant action based on the releases in the 2014 Settlement Agreement, without more, does not establish a relationship between Sanchez's state court claims and this case.

Relator also argues that Sanchez's claim for attorney's fees is related to this case because the Indemnification Notice and Demand was served in the federal case and because in the letter, Defendants sought, in part, indemnification for their state court attorney's fees. But the indemnity sought in that letter is not the same as the attorney's fees Sanchez seeks in state court. In the letter, Defendants sought attorney's fees arising from the indemnification obligation in the Purchase Agreement (which was incorporated into the 2014 Settlement Agreement). *See* Relator's App. 3. By contrast, the award Sanchez seeks in state court is the "damages, in the form of reasonable and necessary attorneys' fees and litigation-related costs," resulting from Relator's breach of contract. Defs.' App. 2. Moreover, the Indemnification Notice and Demand was sent on February 12, 2021—more than five months before the state court ruled in Sanchez's favor on his partial summary judgment motion—and thus did not encompass the actual award of attorney's fees and costs in the state court case. Therefore, the release in the first sentence of Paragraph 16 does not cover Sanchez's request for attorney's fees in the state court case.

Second, Paragraph 16 provides that Defendants "represent and warrant that they will not seek indemnity from Relator or any other person, directly or indirectly, for any costs, attorneys' fees, or settlement payments related to this *Qui Tam* Action or this Agreement." Relator's App. 16. The parties also agreed that Defendants "expressly relinquish and waive any prior claim for direct or indirect indemnity for any costs, attorneys' fees, or settlement payments related to this *Qui Tam* Action, whether made in this *Qui Tam* Action, or the State Cases." *Id.* at 17. According to Relator: (1) the Sanchez Motion seeks indemnification because it specifically targets Relator's settlement payments, Mot. to Enforce 6; and (2) Sanchez's claim for attorney's fees in state court is "related

11

to this *Qui Tam* Action or this Agreement because he made the [indemnification] demand in this case," Relator's Suppl. Br. 13 (internal quotation marks omitted). The Court disagrees because the Sanchez Motion does not seek indemnity and because the relief sought by Sanchez in the state court case is not related to this case or the Federal Settlement Agreement.[5]

Indemnity means "[a] duty to make good any loss, damage, or liability incurred by another" or "[r]eimbursement or compensation for loss, damage, or liability in tort." *Indemnity*, BLACK'S LAW DICTIONARY (11th ed. 2019). Therefore, Defendants agreed: (1) not to seek reimbursement from Relator for costs, attorney's fees, or settlement payments related to this case or the Federal Settlement Agreement; and (2) to release all prior claims for reimbursement of costs, attorney's fees, or settlement payments related to this case. In other words, Defendants agreed to give up all past, present, and future demands for reimbursement of costs, attorney's fees, and payments related to this case or the Federal Settlement Agreement.

"Related," in turn, means "[c]onnected in some way; having relationship to or with something else." *Related*, BLACK'S LAW DICTIONARY (11th ed. 2019). Though Relator makes much of the purported relationship between the state court case and this lawsuit, the plain language of the Federal Settlement Agreement reveals that is not the relationship to be explored. Rather, the Federal Settlement Agreement prohibits Defendants from seeking indemnity for costs, attorneys' fees, or settlement payments related to this lawsuit or the Federal Settlement Agreement. Thus, the demand for indemnity and/or the costs, attorney's fees, or settlement payments at issue must be connected in some way to this lawsuit or the Federal Settlement Agreement.

---

[5] Although the Sanchez Motion has been denied, as discussed above, the Court addresses this claim because: (1) Relator seeks a finding by the Court that Sanchez breached the Federal Settlement Agreement by filing the Sanchez Motion; and (2) part of the relief Relator seeks is an injunction preventing "each Defendant from filing any motion in any action seeking the same or similar relief to that sought in the Sanchez Motion." Mot. to Enforce 1.

Neither the Sanchez Motion nor Sanchez's pending claim for attorney's fees in state court constitutes a request for indemnification for any costs, attorneys' fees, or settlement payments related to this case or the Federal Settlement Agreement, and the damages Sanchez seeks are not related to this lawsuit or the Federal Settlement Agreement. Sanchez does not ask Relator to make good his liability under the Federal Settlement Agreement or to reimburse him for any costs, attorneys' fees, or settlement payments related to this case or the Federal Settlement Agreement. Instead, Sanchez asked the state court to order Relator to deposit her settlement funds into the registry of the state court to satisfy an award of attorney's fees and costs that is untethered from the instant case or the Federal Settlement Agreement. The state court awarded those damages to Sanchez after he prevailed on a motion for partial summary judgment on a breach of contract claim predicated on Relator's breach of the 2014 Settlement Agreement. The fact that the source of that state court award may ultimately have been Relator's settlement payment does not change this analysis.

In support of her claim that Sanchez released his pending claim for attorney's fees, Relator focuses heavily on the fact that the Indemnification Notice and Demand was served in the federal case and that in the letter Defendants sought, in part, indemnification for their state court attorney's fees. For the reasons set forth above, the attorney's fees Sanchez seeks do not constitute a prior claim for indemnity and are not related to the instant lawsuit.

In sum, read as a whole, Paragraph 16 accomplishes three things: (1) releases all claims related in any way to this False Claims Act case that were brought, could have been brought, or may be brought by Defendants; (2) prohibits Defendants from seeking reimbursement from Relator for the settlement payment or any other costs or attorney's fees that are related to this case or the Federal Settlement Agreement; and (3) releases any already existing indemnification

13

demands for costs, attorney's fees, or settlement payments related to this case. Paragraph 16 does not impact monetary awards to which Defendants, including Sanchez, are entitled in separate, ongoing litigation between the parties. And this conclusion makes sense in light of the purpose and context of the Federal Settlement Agreement. The purpose of the Federal Settlement Agreement was to settle the instant False Claims Act lawsuit. *See, e.g.*, Relator's App. 8 ("To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above [False Claims Act] claims . . . the Parties agree and covenant as follows . . . ."). The settlement was not a global settlement of all cases involving Relator and Defendants. There is no indication in the Federal Settlement Agreement that the parties intended to settle and dismiss all of the state court cases pending between them involving the 2014 Settlement Agreement.[6]

Relator argues that she "would never have settled this case . . . if she would get nothing." Mot. to Vacate 1. But Relator will not get "nothing"—she will get the payments owed to her under the Federal Settlement Agreement. Relator knew when she settled this case that there was a pending award of attorney's fees and costs against her in state court. The state court entered its order awarding Sanchez attorney's fees and costs in an amount to be determined on July 22, 2021. The parties did not sign the binding Settlement Term Sheet until April 8, 2022, and the effective date of the Federal Settlement Agreement was November 28, 2022. If Relator wanted to avoid liability for the pending award of attorney's fees and costs in the state court case, she could have, for example, insisted on language in the Federal Settlement Agreement stating that the requests for attorney's fees and costs in state court are related to this action or explicitly stating that the

---

[6] Relator herself seems to recognize this fact, noting that "the parties did not release the underlying state court claims." Reply in Supp. of Mot. to Enforce 3 n.2. But taking Relator's arguments to their logical conclusion would mean that Sanchez did not release his underlying claim for breach of contract but did release his ability to pursue the damages he sought in connection with that claim—attorney's fees and costs. *See* Defs.' App. 2.

14

parties were releasing all preexisting awards in the state court cases between them. This she did not do. Instead, after listing the pending state court cases involving the parties to this action, the Federal Settlement Agreement explicitly limits the release to "any prior claim for direct or indirect indemnity for any costs, attorneys' fees, or settlement payments *related to this* **Qui Tam** *Action*." Relator's App. 16-17 (emphasis added). The Court declines to broaden the scope of this release solely because Relator disagrees with its plain meaning.

For the reasons set forth above, the Court concludes that Sanchez did not breach Paragraph 16 of the Federal Settlement Agreement and thus finds that there is no need for the Court to enforce that provision.

      iii.    *Preventing Receipt of Funds and Rendering Dismissal Impossible*

Relator's next arguments are interrelated. She contends that the Sanchez Motion violates several provisions of the Federal Settlement Agreement calling for her to receive a settlement payment: (1) Paragraph 4, which provides, in part, that "[w]ithin seven days of receipt of these funds by Relator's counsel, Relator shall receive her 60% portion of the Relator's Share"; (2) Paragraph 5, which provides, in part, that "[w]ithin seven days of receipt of these funds by Relator's counsel, Relator shall receive $23,846.95"; and (3) Paragraph 20, which requires that "[w]ithin 10 days of receipt of the payment described in Paragraphs 1 and 5, above, the Parties shall sign and file in the *Qui Tam* Action a Joint Stipulation of Dismissal of the *Qui Tam* Action pursuant to Rule 41(a)(1)." Relator's App. 9, 19.

According to Relator, the Sanchez Motion violated Paragraphs 4 and 5 because those paragraphs state that Relator "shall receive" the settlement funds owed to her, and the Sanchez Motion "[threw] Relator's receipt of payment into dispute." Mot. to Enforce 14. Sanchez's actions did not interfere with these provisions. Defendants' counsel confirmed on the record at the January 19, 2023, hearing that Defendants intended to fund per the Federal Settlement Agreement

15

on January 27, 2023. Counsel later clarified that funding would be complete by February 10, 2023. Indeed, after briefing was completed on Relator's Motions, the Court entered an order permitting the United States and Relator's counsel to disburse the settlement funds to Relator. *See* Order [ECF No. 348]. No impediments to Relator's receipt of settlement funds remain.

In a similar vein, Relator contends that the Sanchez Motion renders dismissal of this case, as contemplated by the Federal Settlement Agreement, "impossible," Mot. to Enforce 6, because dismissal is predicated on Relator's receipt of the settlement payment. But again, the Sanchez Motion in no way prevented Relator from receiving the payment. It only sought to control what happened to the payment after it was received. And regardless, the deadline for dismissal is currently stayed only to permit the Court sufficient time to rule on Relator's Motions—not because of the Sanchez Motion or because Relator will not receive the settlement payments owed to her. The Court concludes that Sanchez has not breached Paragraphs 4, 5, and 20 of the Federal Settlement Agreement.

      iv.  *Asking the State Court to Resolve the Dispute*

Next, Relator argues that Sanchez breached Paragraph 23 of the Federal Settlement Agreement. Paragraph 23 provides, in relevant part: "The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Northern District of Texas." Relator's App. 19. According to Relator, Sanchez breached this provision by asserting that the settlement funds are "in dispute" and "seek[ing] to have the state court resolve the dispute in Sanchez's favor, not this Court." Mot. to Enforce 6 (quoting Relator's App. 56).

As the Court stated on the record at the January 19, 2023, hearing, the Court questions whether Sanchez properly characterized the funds that Relator is to receive under the Federal Settlement Agreement as being in dispute. Nevertheless, the state court dispute between Sanchez and Relator does not relate to the Federal Settlement Agreement. Again, "related" means

16

"[c]onnected in some way; having relationship to or with something." Relator's Suppl. Br. 11 (quoting *Related*, BLACK'S LAW DICTIONARY (11th ed. 2019)). The Sanchez Motion is disconnected from the Federal Settlement Agreement. Sanchez did not dispute the validity, enforceability, or terms of the Federal Settlement Agreement and, for the reasons stated above, did not argue that Relator is not entitled to receive the funds due to her under the Federal Settlement Agreement. Rather, Sanchez asked the state court to exercise control over the funds after Relator received them to satisfy her obligations in a separate lawsuit. Ruling on the Sanchez Motion did not require the state court to interpret or rule on any portion of the Federal Settlement Agreement. For all the reasons stated above, the state court's ruling on the Sanchez Motion did not impact the Federal Settlement Agreement in any way. Therefore, the Court determines that Sanchez did not breach Paragraph 23.

For the foregoing reasons, the Court determines that Sanchez either did not breach the Federal Settlement Agreement or, with respect to the use of the Order to Show Cause, has already rectified the breach. As such, the Court finds no basis for entering an order enforcing the Federal Settlement Agreement and denies Relator's Motions with respect to the request for enforcement of the Federal Settlement Agreement.[7]

### B. *Motion for Injunction*

First, the Court finds that the following forms of injunctive relief requested by Relator are now moot in light of developments in the state court case after the Motion to Enforce and Motion to Vacate were filed: (1) an injunction requiring Sanchez to withdraw the Sanchez Motion; (2) an injunction preventing the state court from deciding the Sanchez Motion; and (3) an injunction

---

[7] Because the Court declines to enter an order enforcing the Federal Settlement Agreement, the Court by extension denies Relator's request that it include within such order a reservation of jurisdiction over implementation of the settlement, fee and cost petitions, all settling parties, and enforcement of the releases set forth in the Federal Settlement Agreement. *See* Mot. to Enforce 7-8.

17

precluding enforcement of the Deposit Order. The state court has denied the Sanchez Motion and vacated the Deposit Order, so injunctive relief is no longer warranted with respect to those filings.

Next, the Court turns to the two remaining live requests for injunctive relief, which are Relator's requests that the Court enjoin Defendants from filing motions like the Sanchez Motion and that the Court enjoin the state court trial on attorney's fees. Because the Court finds that Sanchez did not breach any provisions of the Federal Settlement Agreement solely by filing the Sanchez Motion and that the Federal Settlement Agreement does not preclude maintenance of the state court attorney's fees actions, Relator is not entitled to the injunctions she seeks. Relator has neither established a basis for this Court to enjoin state court proceedings, nor has she succeeded on the merits. *See Mitchell v. Sec. Am., Inc.*, No. 3:11-CV-1948-N, 2014 WL 12833923, at *2 (N.D. Tex. Apr. 15, 2014) (setting forth limited circumstances in which federal courts may enjoin state court proceedings); *Hill v. Washburne*, 953 F.3d 296, 309 (5th Cir. 2020) (stating that a party must "succeed[] on the merits" to be entitled to an equitable injunction). As such, an injunction is not warranted.

### C.   *Request for Attorney's Fees*

Both parties ask the Court to award them their respective attorney's fees under the Court's inherent power. *See Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292 (5th Cir. 1997). Before invoking its inherent power, the Court must find that bad faith exists. *Id.* Relator argues that she is entitled to attorney's fees because, among other things, Sanchez "surreptitiously fil[ed] a state court motion without informing this Court, the United States, or Relator's counsel" and the Sanchez Motion "could only have been filed with conscious disregard of the Settlement Agreement or awareness of its terms but intent to harass or delay." Mot. to Enforce 15. Defendants contend that they are entitled to attorney's fees because, among other things, the Motion to Enforce

is "frivolous" and "a waste of judicial resources," Resp. 15-16, and the Motion Vacate was filed in bad faith, Defs.' Opp'n to Relator's Mot. to Vacate [ECF No. 341] 13.

The Court finds that neither Relator nor Defendants have shown that the opposing party acted in bad faith. Therefore, the Court orders the parties to bear their own attorney's fees incurred in connection with the Motions.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Relator Tina Haight's Motion to Enforce Settlement Agreement, for Injunctive Relief in Connection with State Court Litigation, for Attorneys' Fees and for Expedited Consideration [ECF No. 317] and Motion and Brief to Enjoin, Vacate, and/or Stay Certain State Court Orders, for Attorneys' Fees, and for Expedited Consideration [ECF No. 334]. The Court also **DENIES** Defendants' request for attorney's fees.

Additionally, the Court **LIFTS** the stay on the deadline set forth in the Federal Settlement Agreement for the parties to file dismissal documents. The Court **ORDERS** the parties to sign and file a joint stipulation of dismissal by no later than **May 15, 2023**.

**SO ORDERED.**

SIGNED May 4, 2023.

_____
**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**